**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                   No. CR 14-3609 JB

BENTLEY A. STREETT,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before Court on the Defendant's Objections to the Presentence Report, filed July 2, 2021 (Doc. 257)("Objections).  The primary issues are: (i) whether Defendant Bentley Streett knowingly had online contact with several people with the intent to engage in sexual activity; (ii) whether Streett traveled to Illinois in July, 2013, for the purpose of engaging in illicit sexual contact with Jane Doe 1; (iii) whether, on or about July 31, 2013, to August 4, 2013, Streett tried to get on top of Jane Doe 1; (iv) whether, in May, 2013, Jane Doe 1 provided to Streett a photograph of her breasts; (v) whether Streett threatened to expose John Doe as gay; (vi) whether ¶¶ 27 and 28, at 8, of the Presentence Investigation Report, filed February 14, 2019 (Doc. 188)("PSR"), are repetitive; (vii) whether there were 127 images of minors engaged in sexually explicit conduct saved to Streett's laptop computer or whether those images were merely bookmarked; (viii) whether Streett asked for nude photographs from a girl in Minnesota while knowing that the girl was a minor; (ix) whether PSR ¶¶ 34 and 35, at 10 omit information about Streett's cooperation with law enforcement and his acceptance of responsibility; (x) whether PSR ¶ 37, at 10 is unnecessary, repetitive, or belongs in a different part of the PSR, and whether Streett was communicating with Jane Doe 1 with a computer or telephone; (xi) whether the Court should

exclude PSR ¶ 38, at 10-11, because it is unnecessary and repetitive; (xii) whether the Court can apply a 2-level sentencing enhancement pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2G1.3(b)(2)(B), because Streett unduly influenced Jane Doe 1 to engage in prohibited sexual conduct; (xiii) whether the Court can apply a 2-level sentencing enhancement pursuant to U.S.S.G. § 2G1.3(b)(4)(A), because Streett used a telephone and not a computer to communicate with Jane Doe l; (xiv) whether the PSR incorrectly states Street's adjusted offense level, because his actual adjusted offense level is 26; (xv) whether the PSR groups improperly Counts 8 and 11 for the purposes of calculating Streett's offense level, because Streett's distribution of child pornography (Count 8) is a "separate offense" from his possession of child pornography (Count 11), Objections at 8; (xvi) whether, for Count 8, (a) the Court can apply a 2-level sentencing enhancement pursuant to U.S.S.G. § 2G2.2(b)(2), because Streett did not plea to distributing prepubescent child pornography, (b) the Court can apply a 7-level sentencing enhancement pursuant to U.S.S.G. § 2G2.2(b)(3)(E), because there is direct connection between Streett requesting images and the minor sending images, (c) the Court can apply a 5-level sentencing enhancement pursuant to U.S.S.G. § 2G2.2(b)(5), because doing so does not require prohibited double-counting, (d) the Court can apply a 2-level sentencing enhancement pursuant to U.S.S.G. § 2G2.2(b)(6), because Streett used a telephone and not a computer to possess and distribute child pornography, (e) the Court can apply a 2-level sentencing enhancement pursuant to U.S.S.G. § 2G2.2(b)(7)(A), because there is no evidence that Streett distributed at least ten images of child pornography, and, therefore, (f) Streett's adjusted offense level is 27 and not 40; (xvii) whether, for Count 11, (a) the Court must calculate Streett's offense level by considering Count 11 independently and, pursuant to U.S.S.G. § 2G2.2(a)(1), Streett's base offense level for

Count 11 is 18, (b) the Court can apply a 2-level sentencing enhancement pursuant to U.S.S.G. § 2G2.2(b)(2), because there is no evidence that Streett distributed prepubescent child pornography, (c) the Court can apply a 5-level sentencing enhancement pursuant to U.S.S.G. § 2G2.2(b)(5), because doing so does not require prohibited double-counting, (d) the Court can apply a 2-level sentencing enhancement pursuant to U.S.S.G. § 2G2.2(b)(7)(A), because there is no evidence Streett distributed at least ten images of child pornography, and, therefore, (e) Streett's adjusted offense level is 27, and not 40; (xviii) whether Streett's multiple-count adjustment is 5, because count 8 must be treated independently from count 11; (xix) whether Streett's greater of the adjusted offense level is 36 and not 40; (xx) whether Streett's total offense level is 42, and not 43; (xxi) whether Streett's guideline range is 360 or 2,640 months, because the PSR applies incorrectly the U.S.S.G.; and (xxii) whether there are any factors that warrant a departure from the applicable sentencing guidelines.  See Objections at 1-18.  The Court concludes that: (i) Although Streett knowingly had online contact with several people with the intent to engage in sexual activity, not all of his online activity was for this purpose; (ii) Street traveled to Illinois in July, 2013, for the purpose of engaging in illicit sexual contact with Jane Doe; (iii) During at least one of the trips to Sycamore, Illinois, Streett removed all his clothing and tried to get on top of Jane Doe 1; (iv) Jane Doe 1 provided Streett a photograph of her breasts in May, 2013; (v) Streett threatened to out John Doe as gay; (vi) PSR ¶¶ 27 and 28, at 8, are not repetitive, because they describe separate incidents; (vii) Streett has 127 images on his computer that depict possible child pornography, at least ten of which depict minors engaged in sexually explicit conduct; (viii) Streett asked the "girl in Minnesota" for nude photographs while knowing that she was a minor; (ix) Streett cooperated with law enforcement and accepts responsibility for his actions; (x) PSR

¶ 37, at 10, is not unnecessarily repetitive and states correctly that Streett used a computer, because a cellular telephone is a "computer" under U.S.S.G. § 2G2.1; (xi) PSR ¶ 38, at 10, is not unnecessarily repetitive and does not include incorrect information; (xii) the Court will apply U.S.S.G. § 2G1.3(b)(2)(B)'s 2-level sentencing enhancement; (xiii) the Court will apply U.S.S.G. § 2G1.3(b)(3)'s 2-level sentencing enhancement; (xiv) PSR ¶ 51, at 12, states correctly Streett's adjusted offense level; (xv) the PSR groups properly Count 8 and Count 11; (xvi) the PSR calculates properly Count 8's offense level, because (a) the Court will apply U.S.S.G. § 2G2.2(b)(2)'s 2-level sentencing enhancement, (b) the Court will apply U.S.S.G. § 2G22(b)(3)(E)'s 7-level sentencing enhancement, (c) the Court will apply U.S.S.G. § 2G2.2(b)(5)'s 5-level sentencing enhancement, (d) the Court will apply U.S.S.G. § 2G2.2(b)(6)'s 2-level sentencing enhancement, (e) the Court will apply U.S.S.G. § 2G2.2(b)(7)(A)'s 2-level sentencing enhancement, and (f) PSR ¶ 96, at 15, states correctly Count 8's adjusted offense level; (xvii) the PSR calculates properly Count 11's offense level, because (a) the PSR states correctly Count 11's base-offense level, (b) the Court will apply U.S.S.G. § 2G2.2(b)(2)'s 2-level sentencing enhancement, (c) the Court will apply U.S.S.G. § 2G2.2(b)(5)'s 5-level sentencing enhancement, (d) the Court will apply U.S.S.G. § 2G2.2(b)(7)(A)'s 2-level sentencing enhancement, and (e) PSR ¶ 96, at 15, states correctly Count 11's adjusted offense level; (xviii) PSR ¶ 97, at 15-16, states correctly the combined offense level's number of units; (xix) Streett's greatest adjusted offense level is 40; (xx) Streett's total offense level is 43; (xxi) Streett's U.S.S.G. range is 2,640 months; and (xxii) the Court will not depart downward based on Streett's criminal history, childhood struggles, community ties, post-offense rehabilitation, or any overlapping enhancements.  Accordingly, the Court will sustain

Streett's Objections in part as to Objections 1, 7, and 9, but will overrule the rest of the Objections.

## FINDINGS OF FACT

The Court takes its facts from the PSR, the Objections, the Addendum to the Presentence Investigation Report, filed October 29, 2020 (Doc. 231)("First Addendum"), the Second Addendum to the Presentence Investigation Report, filed November 4, 2020 (Doc. 233)("Second Addendum"), the United States' Response to Defendant's Objections to the Presentence Report, filed July 26, 2021 (Doc. 257)("Response"), and the Third Addendum to the Presentence Investigation Report, filed August 3, 2021 (Doc. 260)("Third Addendum"), and the Conditional Plea Agreement, filed December 7, 2018 (Doc. 184)("Plea Agreement"). The Court makes its findings of fact by a preponderance of the evidence. See United States v. Williams, No. CR. 17-2556 JB, 2020 WL 4016108, at *6 (D.N.M. July 16, 2020)(Browning, J.)(citing United States v. Olsen, 519 F.3d 1096, 1105 (10th Cir. 2008)). Accord United States v. Zapata, 546 F.3d 1179, 1192 (10th Cir. 2008). The Court may rely on hearsay if the hearsay is reliable. See United States v. Banda, 168 F. App'x 284, 289 (10th Cir. 2006)(unpublished)("[T]here is no prohibition on considering hearsay testimony at sentencing, provided it bears indicia of reliability.").[1] The

---

[1]United States v. Banda is an unpublished opinion, but the Court can rely on a United States Court of Appeals for the Tenth Circuit unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A)("Unpublished decisions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court concludes that United States v. Banda, 168 F. App'x 284 (10th Cir. 2006)(unpublished), United States v. Schmidt, 353

evidence and information upon which the Court relies must have sufficient indicia of reliability. See U.S.S.G. § 6A1.3 ("In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.").

1.      In May, 2013, Jane Doe 1, a fourteen-year-old girl in the eighth grade, was dating an unidentified man.  See PSR ¶ 21, at 7.

2.      The unidentified man introduced Jane Doe 1 to Streett in May, 2013, via Twitter. See PSR ¶ 21, at 7.

3.      Between about May 20, 2013, and September 15, 2013, Streett communicated with Jane Doe 1 via Twitter and text messages.  See PSR ¶ 17, at 6.

4.      Streett initially told Jane Doe 1 that he was a teenager but continued to increase his age until he finally admitted that he was in his thirties.  See PSR ¶ 21, at 7.

5.      Streett pressured Jane Doe 1 to send him nude photographs of her.  See PSR ¶¶ 17, 21, at 6-7.

6.      Streett sent Jane Doe 1 nude photographs of himself, including "some from the waist down when he was in the shower."  PSR ¶ 21, at 7.

7.      Jane Doe 1 sent Streett a photograph of her wearing a bra.  See PSR ¶ 17, at 6.

---

F. App'x 132 (10th Cir. 2009)(unpublished), United States v. Batres, 284 F. App'x 584 (10th Cir. 2008)(unpublished), and United States v. Castellon, 213 F. App'x 732 (10th Cir. 2007)(unpublished) have persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

8.      Jane Doe 1 sent Streett a photograph of her breasts.  See PSR ¶ 21, at 7.[2]

9.      Streett knew that Jane Doe 1 was fourteen years old.  See PSR ¶ 21, at 7.

10.     On July 11, 2013, Streett traveled from Albuquerque, New Mexico, to Sycamore, Illinois, at least in part for the purpose of engaging in sex acts with Jane Doe 1.  See PSR ¶ 18, at 6; Response at 5-6; Third Addendum at 1.[3]

11.     Streett picked up Jane Doe 1 on the morning of July 12, 2013, and brought her to a hotel room at a Quality Inn that he had rented in Sycamore, Illinois.  See PSR ¶¶ 18-20, at 6.

---

[2]Streett objects to the PSR, alleging that Jane Doe 1 did not send Streett photographs of her breasts, because, in his Plea Agreement, Streett states that Jane Doe 1 provided Streett only "non-explicit" photographs of her.  Objections at 3.  The United States responds that the Plea Agreement uses the term "non-explicit," because it is "meant to distinguish breasts from sexually explicit conduct," because 18 U.S.C. § 2256(2)(A)(v) does not include breasts within its definition of sexually explicit conduct.  Response at 7.  The USPO states that the PSR's information that Jane Doe 1 sent Streett photographs of her breasts is "derived from multiple sources."  Third Addendum at 2.  Although the USPO's information is vague and unspecific, because Streett's only basis for objecting to it is that the information was not in his Plea Agreement, the Court concludes, by a preponderance of the evidence, that Jane Doe 1 sent Streett a photograph of her breasts.  The Court, therefore, overrules Streett's Fourth Objection.

[3]Streett objects to the PSR, alleging that it states incorrectly that Streett traveled from Albuquerque, New Mexico, to Sycamore, Illinois, "for the purpose of engaging in illicit sexual conduct with Jane Doe 1 (age 14)."  PSR ¶ 18, at 6.  See Objections at 2-3.  Streett contends that he took the trip "for business purposes and [the] in-person meeting with Jane Doe 1 arose out of that."  Objections at 2.  In the Response, the United States notes that, in Streett's Plea Agreement, Streett admits that his July 31, 2013, trip was "for the purpose of engaging in illicit sexual conduct with" Jane Doe 1.  Plea Agreement at 7.  Response at 5.  Moreover, the United States alleges that, during his plea colloquy, Streett admitted specifically that his July 31, 2013, trip's purpose was to engage in sex acts with Jane Doe 1, whom Streett knew to be fourteen years old.  See Response at 5.  Although Streett's contention that his first Sycamore trip, on July 11-13, was not solely for the purpose of engaging in sex acts with Jane Doe 1, the United States Probation Office ("USPO") states that there is "no proof that legitimate business was conducted" in Illinois during that trip.  Third Addendum at 1.  Moreover, the USPO notes that "[i]t is the victim's belief that [Streett] told her he was in the state for business to provide the appearance of credibility."  Third Addendum at 1.  The Court, therefore, overrules Streett's Second Objection.

12.    In the hotel room, Streett performed oral sex on Jane Doe 1, penetrated Jane Doe 1's vagina with his fingers, and "had Jane Doe 1 touch his penis with her hand and masturbate him."  PSR ¶ 18, at 6.

13.    Streett flew back to Albuquerque on July 13, 2013.  See PSR ¶ 18, at 6.

14.    On or about July 31, 2013, to August 3, 2013, Streett again traveled to Sycamore for the purpose of engaging in sex acts with Jane Doe 1.  See PSR ¶¶ 18-20, at 6.

15.    Streett again reserved a room at the Quality Inn, and Streett again performed sex acts on Jane Doe 1.  See PSR ¶¶ 18-20, at 6.

16.    During at least one of the trips to Sycamore, Streett removed all his clothing and tried to get on top of Jane Doe 1.  See PSR ¶ 20, at 7.[4]

17.    On or about September 15, 2013, Streett began to communicate with Jane Doe 2 on Twitter and via text messaging.  See PSR ¶ 25, at 8.

18.    Streett knew that Jane Doe 2 was sixteen years old.  See PSR ¶ 25, at 8.

19.    Streett asked Jane Doe 2 to "send images of genitals."  PSR ¶ 25, at 8.

20.    Streett persuaded Jane Doe 2 "to engage in sexually explicit conduct for the purpose

---

[4]Streett objects to the PSR, alleging that he did not "forcibly 'try to get on top of Jane Doe 1.'"  Objections at 3 (no citation for quotation).  Streett argues that the final sentence of the PSR's paragraph twenty should be excluded, because it was "not adopted by the plea agreement and is uncorroborated."  Objections at 3.  The United States contends that the PSR's sentence at issue – "Investigation revealed Streett removed all of his clothing and tried to get on top of Jane Doe 1," PSR ¶ 20, at 7 -- does not imply "force," Response at 6.  The United States also argues that this conduct is properly included in the PSR, because it is "relevant conduct" within U.S.S.G. § 1B1.3's definition.  Response at 6.  The USPO declines to adjust the PSR in response to Streett's objection, because the information "was derived from a statement provided by the victim and the information is introduced as the victim's statement."  Third Addendum at 2.  Because Streett offers no reason to doubt the accuracy of the USPO's information, and because the conduct falls within U.S.S.G. § 1B1.3's broad definition of relevant conduct, the Court overrules Streett's Third Objection.

- 8 -

of producing a visual depiction of such conduct."  PSR ¶ 25, at 8.

21.     Streett and Jane Doe 2 stopped communicating on December 24, 2013.  See PSR ¶ 25, at 8.

22.     On October 31, 2013, a confidential informant alerted the National Center for Missing and Exploited Children[5] that Streett solicited a nude photograph of Jane Doe 1 online. See PSR ¶ 15, at 6.

23.     "The tip was forwarded to the New Mexico Attorney General's Internet Crimes Against Children Task Force and a subpoena was issued for" Streett's T-Mobile phone number. PSR ¶ 15, at 6.

24.     A search warrant "was executed on [Streett's T-Mobile account] which revealed there were 136 text messages between Streett and Jane Doe 1."  PSR ¶ 15, at 6.

25.     For several days beginning on or around November 13, 2013, Streett communicated via Twitter, Skype, and text messages, with John Doe.  See PSR ¶ 22, at 7.

26.     Streett knew that John Doe was fourteen years old.  See PSR ¶ 23, at 7.

27.     Streett persuaded John Doe to "engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct."  PSR ¶ 22, at 7.

28.     "Streett asked John Doe to send [Streett] a photograph of [John Doe's] penis after he masturbated, which he did."  PSR ¶ 22, at 7.

---

[5]The National Center for Missing & Exploited Children is a non-profit 501(c)(3) corporation "whose mission is to help finding missing children, reduce child sexual exploitation, and prevent child victimization.  NMEC works with families, victims, private industry, law enforcement, and the public to assist with preventing child abductions, recovering missing children, and providing services to deter and combat child sexual exploitation."  About Us, National Center for Missing & Exploited Children, https://www.missingkids.org/footer/about (last visited Nov. 1, 2021).

29.     Streett sent nude photographs of himself to John Doe.  See PSR ¶ 23, at 7.

30.     Streett threatened to out John Doe on Twitter "as being gay if he did not send pictures."[6]  PSR ¶ 23, at 7.

31.     Streett gave John Doe a "'bad vibe.'"  PSR ¶ 23, at 7 (no citation for quotation).

32.     John Doe sent Streett "nude pictures of himself."  PSR ¶ 23, at 7.

33.     On or about December 6, 2013, Streett met Jane Doe 4 through Twitter, when Streett followed her Twitter account.  See PSR ¶ 24, at 7.

34.     Jane Doe 4 was seventeen years old.  See PSR ¶ 24, at 7.

35.     Streett knew that Jane Doe 4 was seventeen years old.  See PSR ¶ 24, at 7.

36.     Until about January 12, 2014, Jane Doe 4 communicated with Streett through Twitter, Skype, Kik, and text messages.  See PSR ¶ 24, at 7.

---

[6]Streett objects, contending that he did not threaten John Doe.  See Objections at 3.  Streett alleges that, although John Doe told law enforcement that Streett "would Tweet that the two were communicating," John Doe's allegation is false.  Objections at 3.  Streett argues that the "interviewing agent interjected the term 'threat', not John Doe" and that "John Doe appears to attempt to correct the interviewing agent . . . when he suggests that it was part of John Doe's questioning of his own sexuality and was not coerced."  Objections at 3.  The United States acknowledges that John Doe "reported that at the time he was communicating with [Streett], he was questioning his sexuality," but contends that "it is clear that John Doe is describing a threat by [Streett]."  Response at 7.  The United States alleges that John Doe told Streett that "he would 'out' [John Doe] on Twitter if [John Doe] did not send photos."  Response at 7 (no citation for quotation).  The USPO states that the information about the alleged threat was "derived from a statement provided by the victim."  Third Addendum at 2.  In the interview, John Doe states: "I questioned my sexuality.  And [Streett] knew that, and he said if I didn't send [the photo] he would out me on Twitter."  United States' Notice of Lodging (Sealed Sentencing Exhibit 4) at 21:18, filed November 4, 2021 (Doc. 268)("John Doe Interview").  John Doe also says that Streett "knew he didn't feel comfortable with [sending photos]."  John Doe Interview at 21:49.  Because John Doe states that Streett used John Doe's questioning of his sexuality to leverage him for explicit photographs, the Court concludes by a preponderance of the evidence that Streett threatened John Doe.  The Court, therefore, overrules Streett's Fifth Objection.

37.     Streett "communicated with Jane Doe 4 about sex and asked her to send nude photos of herself."  PSR ¶ 24, at 7.

38.     Street asked Jane Doe 4 to send him nude photographs of her, "would not leave her alone," and was "sexually aggressive towards her."  PSR ¶ 24, at 7.

39.     Streett persuaded Jane Doe 4 to "engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct."  PSR ¶ 24, at 7.

40.     Jane Doe 4 sent Streett photographs "depicting a close-up view of her genitals." PSR ¶ 24, at 7.

41.     Jane Doe 4 never met Streett in person.  See PSR ¶ 24, at 7.

42.     Streett sent Jane Doe 4 "an International Balloon Fiesta calendar and a silver necklace with her initials."  PSR ¶ 24, at 7.

43.     Jane Doe 4 still has both the calendar and the silver necklace.  See PSR ¶ 24, at 8.

44.     Beginning November 4, 2013, Streett began to exchange text messages with Jane Doe 3, who was listed as "Micky14 El Paso" in Streett's phone.  PSR ¶ 26, at 8.

45.     Streett sent a text message to Jane Doe 3 that says: "Asking 14 year old girls for nekky pics (naked pictures)???"  PSR ¶ 26, at 8.

46.     Streett described to Jane Doe 3 a photograph that she previously had sent to him "of her in a red bra on the bed and asked if she had kept" the photographs.  PSR ¶ 26, at 8.

47.     Streett texted Jane Doe 3 that he remembers the photo and that she sent it "'on the day you sent me the pics of that boy's penis!!'"  PSR ¶ 26, at 8 (no citation for quotation).

48.     Jane Doe 3 was either 14 or 15 years old at the time.  See PSR ¶¶ 26-28 at 8.

49.     Streett also communicated with Jane Doe 3 through Twitter.  See PSR ¶ 27, at 8.

50.     Streett asked Jane Doe 3 to "masturbate and take a photo of her fingers that she used to penetrate herself and to take a picture of her vagina as well, if she wants to." [7]  PSR ¶ 27, at 8.

51.     "On November 9, 2013, Streett sent [Jane Doe 3] a photo showing her what he wanted her to do, which was to digitally penetrate herself and take a photo of the fingers after with the genitalia in the background."  PSR ¶ 27, at 8.

52.     After Jane Doe 3 went shopping for basketball shoes on November 9, 2013, Streett asked her to take a photograph of herself while wearing the basketball shoes.  See PSR ¶ 27, at 8.

53.     Jane Doe 3 asked Streett how she should pose in the photograph.  See PSR ¶ 27, at 8.

54.     Streett said to Jane Doe 3: "'You would be totally nekky with your shoes on and sitting on the floor in front of the mirror with the bottoms of your shoes against the glass and your knees bent.'"  PSR ¶ 27, at 8 (no citation for quotation).

55.     Later that same day, Streett "again asked Jane Doe 3 . . . to send a photograph of her fingers after she masturbated" and sent her a photograph "of how he wanted the photograph to look."  PSR ¶ 27, at 8.

---

[7]Streett objects, arguing that PSR ¶¶ 27 and 28, at 8 are "repetitive," because "[b]oth paragraphs contain reference[s] to a request for a photograph of fingers post-masturbation which are unnecessarily repetitive."  Objections at 3-4.  The United States contends that these paragraphs are "referencing different communications on the same day" and that these paragraphs are repetitive "only in the sense that [Streett] repeated his request to Jane Doe 3."  Response at 8.  The USPO states similarly that PSR ¶¶ 27 and 28, at 8 "provide details of the defendant's actions towards Jane Doe 3, which occurred on separate occasions."  Third Addendum at 2.  Because PSR ¶¶ 27 and 28, at 8 describe two separate instances of Streett making a similar request to Jane Doe 3, they are not repetitive.  The Court, therefore, overrules Streett's Sixth Objection.

56.     "On November 30, 2013, Streett sent Jane Doe 3 a photograph depicting a close up of two fingers spreading a vagina."  PSR ¶ 28, at 8.

57.     When Jane Doe 3 asked Streett the age of the girl in the photograph, Streett stated that she was fifteen years old.  See PSR ¶ 28, at 8.

58.     Streett told Jane Doe 3 that "the girl in the photograph had shaved and took the picture especially for him for his birthday."  PSR ¶ 28, at 8.

59.     Streett told Jane Doe 3 that "only girls under 18 send him pictures."  PSR ¶ 28, at 8.

60.     On January 20, 2014, Streett used a Nokia Lumia 920 cellular phone to send to Jane Doe 3 a set of photographs "depicting nude female and male bodies," including "close up photographs of vaginas, close up photographs of fingers spreading vaginas, close up photos of penises, bare breasts, and photographs of young girls who appear to be under the age of 18."  PSR ¶ 28, at 8.

61.     One of the files containing "images depicting minors engaged in sexually explicit conduct" that Streett sent to Jane Doe 3 "was titled wp_ss_20140120_0002.png" and included at least one photograph of a "minor engaged in sexually explicit conduct."  PSR ¶ 30, at 9.

62.     "In total, [Streett] possess a color gallery with 20 image thumbnails," several of which "depicted close up views of genitalia and breasts."  PSR ¶ 30, at 9.

63.     Several of the photographs Streett sent to Jane Doe 4 "were pictures of Jane Doe 4 and R.L."  PSR ¶ 28, at 8.

64.     "One of the images was a sexually explicit image of Jane Doe 4, a minor."  PSR ¶ 30, at 9.

65.     Streett stopped communicating with Jane Doe 3 on January 29, 2014.  See PSR ¶ 26, at 8.

66.     On February 14, 2014, the Federal Bureau of Investigation contacted Jane Doe 3 about her contact with Streett.  See PSR ¶ 28, at 8.

67.     Between approximately June 26, 2013, and February 25, 2014, Streett had an Apple Macbook Pro laptop with 127 saved images depicting "'possible child pornography,' [which indicates that] the investigator -- based on his training and experience -- identified 127 images that depicted minors engaged in sexually explicit conduct."[8]  Third Addendum at 2.  See PSR ¶ 31, at 9.

_____

[8]Streett objects, contending that, in the PSR, the USPO inaccurately states that Streett has "'127 images of minors engaged in sexually explicit conduct.'"  Objections at 4 (quoting PSR ¶ 31, at 9).  Streett alleges that "[t]his is an inaccurate description of the report contained in discovery and relied upon by the Probation Office as support for this statement."  Objections at 3.  According to Streett, the report on which the USPO relies "*actually* states that 127 files were 'Bookmarked . . . as "possible child pornography images."'"  Objections at 4 (emphasis in original)(no citation for quotation).  Streett asserts that there "is a significant difference between 'bookmarked as possible child pornography images' and the definitive statement of '127 images of minors engaged in sexually explicit conduct.'"  Objections at 4 (no citation for quotation).  In response, the United States acknowledges that Streett is "correct that the investigative report indicates 127 files were '[b]ookmarked as "possible child pornography images."'"  Response at 8 (quoting PSR ¶ 31, at 8).  The United States contends, however, that Streett's objection is "premised on a misunderstanding of the investigative process involving images of child sexual abuse material."  Response at 8.  According to the United States, although "the ultimate factual question of what the material depicts is for the judge and/or the jury," it does not object to a revised PSR ¶ 31, at 8 which would state: "'During the investigation, law enforcement bookmarked 127 images as depicting 'possible child pornography,' indicating the investigator -- based on his training and experience -- identified 127 images that depicted minors engaged in sexually explicit conduct.'"  Response at 8 (no citation for quotation).  The USPO amends the PSR to reflect the United States' preferred revision.  See Third Addendum at 2.  The United States has not submitted the images to the Court, so there is not currently a way for the Court to verify what all 127 images depict.  The Court agrees with Streett that the PSR's language is imprecise.  The Court, therefore, sustains Streett's Seventh Objection to the extent it objects to the PSR's imprecision.  The Court, therefore, includes the information from the Third Addendum in its Findings of Fact.  See Third Addendum at 2.

68.     Streett's MacBook Pro "contained numerous images of child pornography, which Streett obtained online and from minors," including one file titled BXGk-u- IIAAx3ZX.jpg, which depicts a "prepubescent female" "using her hands to spread her labia and the focus of the image is the lascivious exhibition of the child's genitals."  PSR ¶ 31 at 9.

69.     Streett possessed at least 10, but fewer than 127, images of child pornography.[9]

70.     Streett had a "very organized filing system on his computer," which included folders that "identified the minor victim by name, age, or Twitter handle."  PSR ¶ 32, at 9.

71.     There were photographs of Jane Doe 4 and John Doe on Streett's MacBook Pro. See PSR ¶ 32, at 9.

72.     There were photographs of Jane Doe 4 and John Doe on Streett's Yellow Nokia Lumia cellular telephone.  See PSR ¶ 32, at 9.

73.     Streett has a "somewhat open relationship with" his girlfriend.  PSR ¶ 32, at 9.

74.     Streett has two Twitter accounts: one for personal use and one for work.  See PSR ¶ 32, at 9.

75.     Streett's work Twitter account is @captainbentleys; Streett's personal Twitter

---

[9]The Court cannot verify exactly how many images Streett possessed.  There is no contention that Streett possessed more than 127 images of child pornography, as defined in 18 U.S.C. § 2256(8).  See 18 U.S.C. § 2256(8).  At a minimum, Streett possessed "numerous" child pornography images, see Objections at 4; Plea Agreement at 8, two "galleries of images depicting minors engaged sexually explicit conduct," Plea Agreement at 8, PSR ¶ 30, at 9, one of which includes "20 image thumbnails," "several" of which depict "close up views of genitalia and breasts," and one of which is a "sexually explicit image of Jane Doe 4," PSR ¶ 30, at 9, "sexually explicit images," Plea Agreement at 7, from John Doe, and "sexually explicit images," Plea Agreement at 7, from Jane Doe 4.  Although the Court cannot be sure exactly how many images fit 18 U.S.C. § 2256(8)'s child pornography definition, the Court concludes, by a preponderance of the evidence, that Streett possessed at least ten images of child pornography.

account is @thebigguy69.  See PSR ¶ 32, at 9.

76.    Streett "uses his personal Twitter account to meet and interact with women and girls."  PSR ¶ 32, at 9.

77.    Streett asks his Twitter followers "to be at least 18 years of age."  PSR ¶ 32, at 9.

78.    Streett uses Twitter to send telephone numbers and text "to some of the girls he meets on his cellular telephone."  PSR ¶ 32, at 9.

79.    Streett interacted with "a couple of users that he knew were under 19 years of age, one being the name 'McKayla' or 'McKayla-Jane.'"  PSR ¶ 33, at 10.

80.    Despite these users' age, Streett "'got close' to some of them and continued to stay in contact with them over the phone," and "asked some of the girls under age 18 for nude photographs of themselves."  PSR ¶ 33, at 10.

81.    Streett communicated with another minor girl in Minnesota, M.Y., and asked her to send him nude photographs of her.[10]  See PSR ¶ 33, at 10.

---

[10]Streett objects to this statement, alleging that he did not know that the unnamed girl in Minnesota was a minor and that he "may have asked her for a nude picture in response to her public statements on Twitter that she provides nude pictures."  Objections at 4.  Streett is "adamant he did not realize she was a minor."  Objections at 4.  In response, the United States contends that the "content of his messages with the 'girl in Minnesota' -- recovered from [Streett's] phone -- indicated that he knew" the girl was a minor.  Response at 9.  The United States notes that Streett

> refers to her as "kiddo"; states, "[I]f I was your age, I would have the biggest crush on your!!!"; and later states, "This is the first holidays [sic] I have been single since I was younger than you!!!  I have never been single for more than 2 or 3 weeks at a time since I was 14!"

Response at 9 (quoting Text Message Contacts with M.Y. at 1-9, filed July 26, 2021 (Doc. 259-1)("Minnesota Texts")([sic] in Response)).
The USPO states that the text messages between Streett and "the girl in Minnesota" make it "apparent" that Streett "knew the individual was a minor."  Third Addendum at 3.  The Court agrees that the messages that Streett and "the girl in Minnesota" exchanged indicate that Streett

82.     On February 25, 2013, Officers from the Bernalillo County Sheriff's Office ("BCSO") executed a search warrant on Streett's house.  See PSR ¶¶ 32, 34 at 9, 10.

83.     Streett answered the door.  See PSR ¶ 32, at 9.

84.     BSCO officers escorted Streett "un-handcuffed to an unmarked vehicle."  PSR ¶ 32, at 9.[11]

85.     Streett cooperated with law enforcement, "consented to searches of his property and electronics and also sat for extended interviews with law enforcement in which he explained where to find photographs he kept."  Third Addendum at 3.

_____

knew he was talking to a minor.  In particular, On October 21, 2013, Streett stated:

> Well, if I asked you for a nude (remember you're too young to send those me lol ! 😊) but I would just be honest about it.  Now I think you know I would never complain if you DID send me a nude . . . and I WOULD totes appreciate and cherish it, but I'm not asking . . . K?

Minnesota Texts at 6.  Because Streett states that he knew that "the girl in Minnesota" was too young to send him nude photographs, the Court concludes by a preponderance of the evidence that Streett knew she was a minor.  Third Addendum at 3.  The Court, therefore, overrules Streett's Eighth Objection.

[11]Streett alleges that the PSR omits "relevant and material information from Paragraphs 34 and 35."  Objections at 4.  Streett argues that, in the PSR, the USPO does not "accurately portray[] the extent of his cooperation with authorities," and that he was "extremely cooperative with law enforcement, consented to searches of his property and electronics, and also sat for extended interviews with law enforcement in which he explained where to find photographs he kept." Objections at 5.  Streett also objects that the PSR does not include "the extent to which Mr. Streett accepted responsibility *and* extricated himself from the activity subject to this case immediately after the February intervention and before the October arrest."  Objections at 5 (emphasis in original).  In response, the United States notes that it does not object to "inclusion of information that [Streett] was 'cooperative' in the sense he agreed to speak with law enforcement and consented to searches of his property."  Response at 9 (no citation for quotation).  The USPO agrees and amends the PSR to reflect Streett's cooperation.  See Third Addendum at 3.  The Court sees no sound reason to conclude that Streett was not cooperative.  The Court, therefore, sustains Streett's Ninth Objection and includes the additional information in its findings of fact.

- 17 -

86.     After Streett's first contact with law enforcement, he "deleted his social media accounts, cut off contact with others, and ceased the activity which had led to law enforcement contacting him."  Third Addendum at 3.

87.     "Streett accepted responsibility for his actions and was glad law enforcement intervened."  Third Addendum at 3.

88.     On February 24, 2014, Streett was charged in the Bernalillo County Metropolitan Court, State of New Mexico, with Solicitation of a Minor by a Communication Device, but was released on a $1,000.00 bond on the same day; the charge was dismissed on September 5, 2014. See PSR ¶ 34, at 10.

89.     On September 18, 2014, the BCSO sent a report about Streett to the Federal Bureau of Investigation.  See PSR ¶ 16, at 6.

90.     The BCSO report indicated that Streett "knowingly had sexually-charged online contact with several minors, including communications with the intent to obtain sexually explicit material from several minors, and communication with the intent to engage in sexual activity with at least one minor."[12]  Third Addendum at 1.

_____

[12]Streett objects to PSR ¶ 16, at 6, contending that it states incorrectly that he "knowingly had online contact with several females 'with the intent to engage in sexual activity.'"  Objections at 1 (no citation for quotation).  Streett states that, although his Plea Agreement "included a count in which that element was included," he "denies all communications were 'with the intent to engage in sexual activity' as suggested by Paragraph 16" of the PSR.  Objections at 1.  Streett also alleges that the USPO errs by characterizing incorrectly the Bernalillo County Sheriff's Office report, because the report only "indicates a single minor female with whom Mr. Streett engaged in sexual activity," and that "attempts to procure pornography does not qualify as 'sexual activity.'"  Objections at 2 (no citation for quotation).

    The United States "agrees that not all of [Streett's] online communications were aimed at engaging in physical sexual activity with minors."  Response at 4.  The United States notes that it has no objection to modifying the PSR's language to state: "According to the report, Streett knowingly had sexually-charged online contact with several minors, including communications

- 18 -

91.     Streett was arrested at his house in Albuquerque on October 3, 2014.  See PSR ¶ 35, at 10.

92.     Streett's girlfriend was Pamela Lesiak.  See PSR ¶ 36, at 10.

93.     Lesiak did not know any of the people in the photographs from Streett's cellular telephone that law enforcement showed her.  See PSR ¶ 36, at 10.

## PROCEDURAL BACKGROUND

On December 7, 2018, Streett pled guilty to: (i) one count of travel to engage in illicit sexual conduct, in violation of 18 U.S.C. § 2423(b); (ii) two counts of production of a visual depiction of a minor engaging in sexually explicit, conduct, in violation of 18 U.S.C. § 2251(a); (iii) three counts of attempted production of a visual depiction of a minor engaging in sexually explicit conduct, in violation of 18 U.S.C. § 2251(a); (iv) one count of distribution of visual depictions of minors engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(2); and (v) one count of possession of visual depictions of minors engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252A(a)(5)(B).  See Plea Agreement at 5-6.  The USPO calculates Streett's total offense level to be 43, because, "[p]ursuant to [U.S.S.G.] Chapter 5, Part

---

with the intent to obtain sexually explicit material from several minors, and communications with the intent to engage in sexual activity with at least one minor."  Response at 4-5.  The USPO agrees with the United States and amends the PSR to state: "Streett knowingly had sexually-charged online contact with several minors, including communications with the intent to obtain sexually explicit material from several minors, and communications with the intent to engage in sexual activity with at least one minor."  Third Addendum at 1.  The Court agrees with the USPO's PSR amendment, because it reflects more precisely the BCSO report's contents.  See Bernalillo County Sheriff's Office Initial Detective Report at 1-15, filed November 8, 2021 (Doc. 269-1)("BCSO Report").  The Court, therefore, will sustain Streett's First Objection to the extent only that the Third Amendment reflects Streett's First Objection.

A (comment n.2), in those rare instances where the total offense level is calculated in excess of 43, the offense level will be treated as a level 43."  PSR ¶ 104, at 16.

On October 29, 2020, the USPO amended the PSR by including a victim impact statement from Jane Doe 2.  See First Addendum at 1-5.  Just a few days later, on November 4, 2020, the USPO again amended the PSR by proposing additional conditions of supervised release.  See Second Addendum at 1-6.  Streett objected to the PSR on July 2, 2021.  See Objections at 1-19. Streett lists twenty-two objections to the PSR, two of which have sub-objections.  See Objections at 1-19.  The United States responded on July 26, 2021.  See Response at 1.  In the Response, the United States agrees in part with three of Streett's requested PSR modifications -- Objections One, Seven, and Nine -- but argues that the Court should overrule the remaining Objections in their entirety.  See Response at 1-25.

In response to Streett's Objections, the USPO again amended the PSR.  See Third Addendum at 1-6.  With three exceptions, the USPO disagrees with Streett's Objections.  See Third Addendum at 1-6.  The USPO agrees with the United States that the PSR should be amended to reflect part of Streett's First, Seventh, and Ninth Objections.  See Third Addendum at 1-6.  The USPO also notes, in response to Streett's Twenty-Second Objection, that "a downward variance has been recommended."  Third Addendum at 6.

## LAW REGARDING RELEVANT CONDUCT FOR SENTENCING

In calculating an appropriate sentence, the Guidelines consider a defendant's "offense of conviction and all relevant conduct under § 1B1.3 (Relevant Conduct) unless a different meaning is specified or is otherwise clear from the context."  U.S.S.G. § 1B1.1, n.1(H).  In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court of the United States of America notes:

Congress' basic statutory goal -- a system that diminishes sentencing disparity -- depends for its success upon judicial efforts to determine, and to base punishment upon, the *real conduct* that underlies the crime of conviction. That determination is particularly important in the federal system where crimes defined as, for example, "obstruct[ing], delay[ing], or affect[ing] commerce or the movement of any article or commodity in commerce, by . . . extortion," . . . can encompass a vast range of very different kinds of underlying conduct.

543 U.S. at 250-51 (emphasis in original)(quoting 18 U.S.C. § 1951(a)). The Supreme Court's

reasoning in United States v. Booker suggests that the consideration of real conduct is necessary

to effectuate Congress' purpose in enacting the Guidelines.

Section 1B1.3(a) provides that the base offense level under the Guidelines "shall be

determined" based on the following:

> (1)
>
>   (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
>
>   (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;
>
>  (2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction;
>
>  (3) all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions; and
>
>  (4) any other information specified in the applicable guideline.

U.S.S.G. § 1B1.3(a)(1)-(4). The Guidelines "allow courts to consider conduct which is not

- 21 -

formally charged or is not an element of the offense of conviction." United States v. Tagore, 158 F.3d 1124, 1128 (10th Cir. 1998). Conduct is relevant when it is "the same type of conduct" or part of "the same scheme or plan" as the conviction offenses. United States v. Custodio, 39 F.3d 1121, 1126 (10th Cir. 1994). The conduct that a sentencing court may consider, therefore, "comprises more, often much more, than the offense of conviction itself, and may include uncharged and even acquitted conduct." United States v. Allen, 488 F.3d 1244, 1254-55 (10th Cir. 2007). "Section 1B1.3 embodies the principle that the sentence should reflect the offense's seriousness, and so courts should consider all conduct relevant to determining that seriousness." United States v. Nissen, 492 F. Supp. 3d 1254, 1272 (D.N.M. 2020)(Browning, J.)(citing United States v. Allen, 488 F.3d at 1255).

Pursuant to U.S.S.G. § 6A1.3's commentary, evidentiary standards lower than beyond a reasonable doubt are permitted to show relevant conduct. See U.S.S.G. § 6A1.3. The court may rely upon reliable hearsay, so long as the evidence meets the preponderance-of-the-evidence standard. See United States v. Vigil, 476 F. Supp. 2d 1231, 1245 (D.N.M. 2007)(Browning, J.), aff'd, 523 F.3d 1258 (10th Cir. 2008). Accord United States v. Schmidt, 353 F. App'x 132, 135 (10th Cir. 2009)(unpublished)("The district court's determination of 'relevant conduct' is a factual finding subject to a preponderance of the evidence standard, and clear error review."). The evidence and information upon which the court relies, however, must have sufficient indicia of reliability. See U.S.S.G. § 6A1.3 ("In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.").

Supreme Court precedent on relevant conduct consists primarily of two cases: Witte v. United States, 515 U.S. 389 (1995), and United States v. Watts, 519 U.S. 148 (1997). In Witte v. United States, the Supreme Court upheld the use of uncharged conduct at sentencing against a double-jeopardy challenge. See 515 U.S. at 404-06. The defendant in Witte v. United States had been involved in an unsuccessful attempt to import marijuana and cocaine into the United States in 1990, and in an attempt to import marijuana in 1991. See 515 U.S. at 392-93. In March 1991, a federal grand jury indicted the defendant for attempting to possess marijuana with intent to distribute in association with the defendant's latter attempt to import narcotics. See Witte v. United States, 515 U.S. at 392-93. At sentencing, the district court concluded that, because the 1990 attempt was part of the continuing conspiracy, it was relevant conduct under U.S.S.G. § 1B1.3, and thus calculated the defendant's base offense level based on the aggregate amount of drugs involved in both the 1990 and 1991 episodes. See Witte v. United States, 515 U.S. at 394.

In September, 1992, a second federal grand jury indicted the defendant for conspiring and attempting to import cocaine in association with his activities in 1990. See Witte v. United States, 515 U.S. at 392-93. The defendant moved to dismiss the indictment, contending that he had already been punished for the cocaine offenses, because the court had considered those offenses relevant conduct at the sentencing for the 1991 marijuana offense. See Witte v. United States, 515 U.S. at 395. The district court agreed and dismissed the indictment, holding that punishment for the cocaine offenses would violate the prohibition against multiple punishments in the Double Jeopardy Clause of the Fifth Amendment to the Constitution. See Witte v. United States, 515 U.S. at 395. The United States Court of Appeals for the Fifth Circuit reversed and held that "the use of relevant conduct to increase the punishment of a charged offense does not punish the offender for

the relevant conduct."  United States v. Witte, 25 F.3d 250, 258 (5th Cir. 1994).  In reaching this

holding, the Fifth Circuit acknowledged that its conclusion was contrary to other United States

Courts of Appeals opinions, including a United States Court of Appeals for the Tenth Circuit

opinion, that had previously considered this question.  See United States v. Witte, 25 F.3d at 255

n.19 (citing United States v. Koonce, 945 F.2d 1145 (10th Cir. 1991)).

The Supreme Court granted certiorari to resolve the conflict between the Courts of Appeals

and affirmed the Fifth Circuit decision.  See United States v. Witte, 515 U.S. at 395.  In holding

that a district court's consideration of the defendant's relevant conduct did not punish the

defendant for that conduct, the Supreme Court concluded that "consideration of information about

the defendant's character and conduct at sentencing does not result in 'punishment' for any offense

other than the one of which the defendant was convicted."  See United States v. Witte, 515 U.S. at

401.  The Supreme Court reasoned that sentencing courts had always considered relevant conduct

and "the fact that the sentencing process has become more transparent under the Guidelines . . .

does not mean that the defendant is now being punished for uncharged relevant conduct as though

it were a distinct criminal offense."  See United States v. Witte, 515 U.S. at 402.  Sentencing

enhancements do not punish a defendant for uncharged offenses; rather, they reflect Congress'

policy judgment "that a particular offense should receive a more serious sentence within the

authorized range if it was either accompanied by or preceded by additional criminal activity."  See

United States v. Witte, 515 U.S. at 403.

In United States v. Watts, the Supreme Court, in a per curiam opinion, relied upon Witte

v. United States and upheld, against a double-jeopardy challenge, a sentencing judge's use of

conduct for which the defendant had been acquitted.  See United States v. Watts, 519 U.S. at 149.

The Supreme Court noted that its conclusion was in accord with every United States Court of Appeals -- other than the Court of Appeals for the Ninth Circuit -- and that each had previously held that a sentencing court may consider conduct for which the defendant had been acquitted, if the government establishes that conduct by a preponderance of the evidence.  See United States v. Watts, 519 U.S. at 149 (citing, e.g., United States v. Coleman, 947 F.2d 1424, 1428-29 (10th Cir. 1991)).  The Supreme Court began its analysis with 18 U.S.C. § 3661: "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."  United States v. Watts, 519 U.S. at 151 (quoting 18 U.S.C. § 3661).  According to the Supreme Court, 18 U.S.C. § 3661 embodies the codification of "the longstanding principle that sentencing courts have broad discretion to consider various kinds of information" and that "the Guidelines did not alter this aspect of the sentencing court's discretion." United States v. Watts, 519 U.S. at 151-52.

Tenth Circuit caselaw adheres closely to the Supreme Court's results in Witte v. United States and United States v. Watts.  See United States v. Andrews, 447 F.3d 806, 810 (10th Cir. 2006)(applying Witte v. United States' holding to affirm that a career-offender enhancement does not violate the Fifth Amendment's Double Jeopardy Clause).  In United States v. Banda, 168 F. App'x at 284, the Tenth Circuit rejected a defendant's argument that it was "structural error" for a district court to find sentencing factors "by a preponderance of the evidence rather than the jury applying a beyond-a-reasonable-doubt standard."  168 F. App'x at 290.  The Tenth Circuit explained that "'[i]t is now universally accepted that judge-found facts by themselves do not violate the Sixth Amendment.  Instead, the constitutional error was the court's reliance on judge-

found facts to enhance the defendant's sentence mandatorily.'" United States v. Banda, 168 F.

App'x at 290 (quoting United States v. Lauder, 409 F.3d 1254, 1269 (10th Cir. 2005)).

In United States v. Coleman, the defendant appealed the district court's sentence

enhancement for firearms possession after he was convicted of conspiracy to possess and

possession of a controlled substance with intent to distribute but was acquitted of using or carrying

a firearm during and in relation to a drug trafficking crime.  See 947 F.2d at 1428.  The Tenth

Circuit acknowledged that courts had taken various positions on whether a sentence may be

enhanced for firearms possession despite a defendant's acquittal on firearms charges.  See United

States v. Coleman, 947 F.2d at 1428-29 (citing United States v. Duncan, 918 F.2d 647, 652 (6th

Cir. 1990)("[A]n acquittal on a firearms carrying charge leaves ample room for a district court to

find by the preponderance of the evidence that the weapon was possessed during the drug

offense."); United States v. Rodriguez, 741 F. Supp. 12, 13-14 (D.D.C. 1990)(Green, J.)(refusing

to apply 2-level enhancement for firearms possession, because "[t]o add at least 27 months to the

sentence for a charge of which the defendant was found not guilty violates the constitutional

principle of due process and the ban against double jeopardy")).  Without discussion related to the

standard of proof a sentencing court should use to make factual findings, the Tenth Circuit held

that the district court did not err in enhancing the defendant's sentence for possession of a firearm.

See United States v. Coleman, 947 F.2d at 1429. The Tenth Circuit based its conclusion on

evidence that: (i) individuals at the arrest scene handled the weapons at will; (ii) the weapons were

handled at will by individuals who lived at the house; and (iii) the weapons were kept for the

protection of conspiracy participants and the narcotics involved.  See United States v. Coleman,

947 F.2d at 1429. The Tenth Circuit summarized that, in reviewing relevant federal case law, it

found "persuasive the decisions that have allowed a sentencing court to consider trial evidence that was applicable to a charge upon which the defendant was acquitted."  947 F.2d at 1429.

In United States v. Washington, 11 F.3d at 1510, the defendant argued that the United States needed to prove drug quantities used as relevant conduct to establish a defendant's offense level by clear-and-convincing evidence, rather than by a preponderance of the evidence.  See 11 F.3d at 1512.  The defendant objected to his sentencing, because the drug quantity that the district court considered as relevant conduct, and which the court found by a preponderance of the evidence, increased his Guidelines sentencing range from 210-262 months to life in prison.  See United States v. Washington, 11 F.3d at 1515.  The defendant argued "that because the additional drug quantities effectively resulted in a life sentence a higher standard of proof should be required." United States v. Washington, 11 F.3d at 1515.  Although the Tenth Circuit in United States v. Washington "recognize[d] the strong arguments that relevant conduct causing a dramatic increase in sentence ought to be subject to a higher standard of proof," it held that "the Due Process Clause does not require sentencing facts in the ordinary case to be proved by more than a preponderance standard." 11 F.3d at 1516 (citing McMillan v. Pennsylvania, 477 U.S. 79, 84 (1986)). See United States v. Sangiovanni, No. CR 10-3239 JB, 2014 WL 4347131, at *22-26 (D.N.M. Aug. 29, 2014)(concluding that a sentencing court can cross reference from the Guidelines that correspond to the defendant's crime of conviction to the Guidelines for another, more harshly punished crime, if it can be established by a preponderance of the evidence that the defendant committed the more serious crime); United States v. Cervantes-Chavez, 59 F. Supp. 3d 1295, 1319 (D.N.M. 2014)(Browning, J.)(cross-referencing from the guideline for being an illegal alien in possession of a firearm to the drug-possession guideline after finding by a preponderance of the evidence that

the defendant committed a drug-possession crime).

The Court has held previously that it may consider a defendant's refusal to answer questions for the PSR, while not drawing an adverse inference from the refusal. See United States v. Goree, No. CR 11-0285 JB, 2012 WL 592869, at *11 (D.N.M. Feb. 13, 2012)(Browning, J.). The Court has also held that, although it can consider a defendant's silence about information regarding herself or others engaging in criminal conduct, it will not rely on that silence to increase the defendant's sentence.  See United States v. Chapman, No. CR 11-0904 JB, 2012 WL 2574814, at *13 n.5 (D.N.M. June 22, 2012)(Browning, J.).  Finally, the Court has held that a defendant's "aggression towards other individuals, and the murder he may have attempted to orchestrate while incarcerated" is relevant information which the Court can consider in fashioning a proper sentence. United States v. Romero, No. CR 09-1253 JB, 2012 WL 6632493, at *23 (D.N.M. Dec. 6, 2012)(Browning, J.).  See United States v. Tapia, No. CR 12-3012 JB, 2017 WL 6417610, at *10-15 (D.N.M. Dec. 14, 2017)(Browning, J.).

## LAW REGARDING U.S.S.G. § 2G1.3

18 U.S.C. § 2423(a) provides:

> A person who knowingly transports an individual who has not attained the age of 18 years in interstate or foreign commerce, or in any commonwealth, territory or possession of the United States, with intent that the individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, shall be fined under this title and imprisoned not less than 10 years or for life.

18 U.S.C. § 2423(a).  U.S.S.G. § 2G1.3(a)(3) provides a base offense level of 28 "if the defendant was convicted under 18 U.S.C. §§ 2422(b) or 2423(a)."  U.S.S.G. § 2G1.3(a)(3).  U.S.S.G. § 2G1.3(b)(2) provides: "If (A) the offense involved the knowing misrepresentation of a participant's identity to persuade, induce, entice, coerce, or facilitate the travel of, a minor to

engage in prohibited sexual conduct; or (B) a participant otherwise unduly influenced a minor to engage in prohibited sexual conduct, increase by 2 levels." U.S.S.G. § 2G1.3(b)(2).   Application note 3(B) to this guideline provides in relevant part:

> In determining whether subsection (b)(2)(B) applies, the court should closely consider the facts of the case to determine whether a participant's influence over the minor compromised the voluntariness of the minor's behavior.   The voluntariness of the minor's behavior may be compromised without prohibited sexual conduct occurring.
>
> . . . .
>
> In a case in which a participant is at least 10 years older than the minor, there shall be a rebuttable presumption that subsection (b)(2)(B) applies.   In such a case, some degree of undue influence can be presumed because of the substantial difference in age between the participant and the minor.

U.S.S.G. § 2G1.3 cmt n. 3(B).

U.S.S.G. § 2G1.3(b)(4) provides: "If (A) the offense involved the commission of a sex act or sexual contact; or (B) subsection (a)(3) or (a)(4) applies and the offense involved a commercial sex act, increase by 2 levels."   U.S.S.G. § 2G1.3(b)(4).   Application note 1 to this guideline provides: "'Sexual act' has the meaning given that term in 18 U.S.C. § 2246(2)." U.S.S.G. § 2G1.3 cmt. n.1.   18 U.S.C. § 2246(2) provides:

> [T]he term "sexual act" means --

(A)    contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however, slight;

(B)    contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;

(C)    the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or

(D)    the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person . . . .

18 U.S.C. § 2246(2).

## LAW REGARDING U.S.S.G. § 2G2.2

For certain child pornography offenses, U.S.S.G. § 2G2.2(b)(4) authorizes a 4-level enhancement to a defendant's base offense level "[i]f the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence." U.S.S.G. § 2G2.2(b)(4). The application note to this subsection provides: "Subsection (b)(4) applies if the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence, regardless of whether the defendant specifically intended to possess, access with intent to view, receive, or distribute such materials." U.S.S.G. § 2G2.2 cmt. n.2. The New Oxford American Dictionary defines sadistic as "deriving pleasure from inflicting pain, suffering, or humiliation of others." New Oxford American Dictionary 1537 (A. Stevenson & C. Lindberg eds., 3d ed. 2010). The New Oxford American Dictionary defines masochism as "the tendency to derive pleasure, esp. sexual gratification, from one's own pain or humiliation." New Oxford American Dictionary, supra, at 1075.

The United States Court of Appeals for the Tenth Circuit has held that the existence of images that "depict anal or vaginal penetration of <u>prepubescent</u> children by <u>adults</u>" is normally sufficient to support a 4-level enhancement under this provision.  <u>United States v. Kimler</u>, 335 F.3d 1132, 1143 (10th Cir. 2003)(emphasis in original).  As support for its conclusion, the Tenth Circuit quoted a portion of the district court's opinion and "agree[d] with those findings and conclusions by the [district court]":

> The court concludes that the some [sic] of the images submitted by the Government are sufficient to qualify for this enhancement, particularly those showing adults engaging in vaginal or anal intercourse with prepubescent minors.  The court concludes that one or more such depictions in this case portrays "sadistic conduct" within the meaning of the guideline, in that the depictions include and are intended to portray the infliction of pain and humiliation on very young minor victims as a means of giving sexual gratification to individuals with pedophilic tendencies.

<u>United States v. Kimler</u>, 335 F.3d at 1143 (alteration in <u>Kimler</u>).  The Tenth Circuit also concluded that expert testimony was not necessary to justify an enhancement under U.S.S.G. § 2G2.2(b)(4) -- then U.S.S.G. § 2G2.2(b)(3):

> Kimler next contends that the district court erred in enhancing his sentence for sadism without expert testimony on the matter.  Kimler cites no case in support of this argument.  To the contrary, the Fifth and Eleventh Circuits have held that expert testimony is not required to justify an enhancement under 2G2.2(b)(3).  <u>United States v. Lyckman</u>, 235 F.3d 234, 239 n. 22 (5th Cir. 2000)("One hardly requires a medical degree to ascertain that vaginal intercourse with an adult male would involve pain, both physical and emotional, for a young girl."); <u>United States v. Caro</u>, 309 F.3d 1348, 1352 (11th Cir. 2002)("[W]e hold that the district court erred in its interpretation that, in order to support a sadistic conduct enhancement, the government is required to present expert medical testimony."); <u>see also United States v. Delmarle</u>, 99 F.3d 80, 83 (2d Cir. 1996)(holding that "it was within the court's discretion to conclude that the subjection of a young child to a sexual act that would have to be painful is excessively cruel and hence is sadistic within the meaning of 2G2.2(b)(3)").  We agree with those authorities, and conclude that expert testimony was not required.

<u>United States v. Kimler</u>, 335 F.3d at 1143-44.  The Tenth Circuit similarly concluded that expert

evidence is not automatically required to determine if the children depicted in images are prepubescent if "[t]he images themselves provide[] sufficient evidence of prepubescence to support the sentence enhancement."  United States v. Kimler, 335 F.3d at 1144.

In a later unpublished opinion, the Tenth Circuit reiterated some of the principles from United States v. Kimler:

> In Kimler, we held that an image of an adult sexually penetrating a prepubescent child portrays conduct from which a court can presume that pain and humiliation were inflicted upon the child as a means to give sexual gratification to the viewer of the image and, thus, is inherently sadistic or violent for purposes of § 2G2.2(b)(4).  Contrary to Batres's arguments, there is no further burden on the part of the Government to prove that the adult in the image derived sexual pleasure from the act.  We also reject Batres's argument that the facial expressions of the child victims or the staging of the photograph to present these heinous acts in a "positive light" is relevant to the inquiry.  Once the district court has found that the images depict the sexual penetration of young children by adults, the enhancement may be properly applied.

United States v. Batres, 284 F. App'x 584, 586 (10th Cir. 2008)(unpublished)(citations omitted). The Tenth Circuit did not specify in United States v. Batres what form of penetration was involved in the images in question.  See 284 F. App'x at 284-86.  The United States Court of Appeals for the Fifth Circuit has held that, in a case involving oral-genital sexual penetration as well as other penetrations, "penetration of the orifices of prepubescent children" was sufficient to "portray sexual violence and masochistic conduct":

> In the presentence report (PSR), the probation officer concluded that the images forming the bases for counts 1 and 2 warranted the § 2G2.2(b)(3) four-level increase.  The image in count 1 depicts a nude female minor, hanging upside down while engaging in oral sex with two adult males; in count 2, sexual intercourse with a nude adult male.  Over Terry's objections, the district court adopted the PSR's findings and conclusions.  The court reasoned that the penetration of a child amounted to torture, as well as sadistic and masochistic conduct.

> Terry claims the § 2G2.2(b)(3) increase was not warranted, absent evidence the children were being tortured or otherwise made to suffer pain.  The district court

did not clearly err in finding that the photographs -- depicting penetration of the orifices of prepubescent children -- portray sexual violence and sadistic and masochistic conduct.

The contention that application of the enhancement constitutes "double enhancement", because the depiction of "prepubescent children engaged in sexual acts with adult males is what made the photographs pornographic in the first place", is without merit.  Obviously, child pornography can depict sexually explicit conduct without also depicting sexual penetration.

United States v. Terry, 233 F.3d 574, 2000 WL 1468662, at *1-2 (5th Cir. 2000)(unpublished table decision).  The United States Court of Appeals for the Eighth Circuit has held that "images of an adult attempting" anal or vaginal penetration of a minor girl by an adult male is "per se sadistic or violent":

This circuit recently ruled that images involving the sexual penetration of a minor girl by an adult male and images of an adult male performing anal sex on a minor girl or boy are per se sadistic or violent within the meaning of U.S.S.G. § 2G2.2(b)(3).  Today, we hold that images of an adult attempting such acts are likewise "sadistic" or "violent" for the purpose of U.S.S.G. § 2G2.2(b)(3).  Such images portray conduct sufficient to presume the infliction of mental or physical coercion or abuse upon a minor.  They also bespeak a sadistic intent to achieve sexual pleasure through the necessarily violent depiction of a minor as either a sexual object ripe for or deserving of sexual exploitation, or as a sexual subject desirous of and complicit in his or her own sexual exploitation.

United States v. Belflower, 390 F.3d 560, 562 (8th Cir. 2004).

U.S.S.G. § 2G2.2(b)(5) provides: "If the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor, increase by 5 levels."   U.S.S.G. § 2G2.2(b)(5).  Application note 1 to this guideline provides:

"Pattern of activity involving the sexual abuse or exploitation of a minor" means any combination of two or more separate instances of the sexual abuse or sexual exploitation of a minor by the defendant, whether or not the abuse or exploitation (A) occurred during the course of the offense; (B) involved the same minor; or (c) resulted in a conviction for such conduct.

U.S.S.G. § 2G2.2 cmt. n.1.  This application note also provides:

"Sexual abuse or exploitation" means any of the following: (A) conduct described in 18 U.S.C. § 2241, § 2242, § 2243, § 2251(a)-(c), 2251(d)(1)(B), § 2251A, § 2260(b), § 2421, § 2422, or § 2423; (B) an offense under state law, that would have been an offense under any such section if the offense had occurred within the special maritime or territorial jurisdiction of the United States; or (c) an attempt or conspiracy to commit any of the offenses under subdivisions (A) or (B). "Sexual abuse or exploitation" does not include possession, accessing with intent to view, receipt, or trafficking in material relating to the sexual abuse or exploitation of a minor.

U.S.S.G. § 2G2.2 cmt. n.1.

## LAW REGARDING DOWNWARD DEPARTURES

The Guidelines "place essentially no limit on the number of potential factors that may warrant a departure." Koon v. United States, 518 U.S. 81, 106 (1996). See United States v. Coleman, 188 F.3d 354, 358 (6th Cir. 1999)(en banc)(stating that there are a "potentially infinite number of factors which may warrant a departure"); 18 U.S.C. § 3661 (stating that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence").  A departure is warranted if the case is "unusual enough for it to fall outside the heartland of cases in the Guideline."  Koon v. United States, 518 U.S. at 92.  Accord United States v. Lewellen, No. CR 11-1524 JB, 2012 WL 2175769, at *5 (D.N.M. June 5, 2012)(Browning, J.).

It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.  We do not understand it to have been the congressional purpose to withdraw all sentencing discretion from the United States district judge.

Koon v. United States, 518 U.S. at 113.

- 34 -

For example, in United States v. Jim, 877 F. Supp. 2d 1018 (D.N.M. 2012)(Browning, J.), the Court did not grant a defendant's request for a downward departure under U.S.S.G. § 4A1.3(b), where the defendant argued that his criminal history category over-represented the seriousness of his criminal history and the likelihood that he would commit other crimes. See 877 F. Supp. 2d at 1044-45. The Court noted that Jim's criminal history included: (i) two DWI convictions; (ii) a conviction for Roadway Laned Traffic; and (iii) Abandonment or Abuse of a Child. See 877 F. Supp. 2d at 1044-45. The Court concluded that a criminal history category of II did not over-represent Jim's criminal history, explaining that Jim's previous convictions involved alcohol and driving, demonstrating a pattern of aberrant use of alcohol also seen in the offense for which he was sentenced -- sexual assault -- as Jim asserted that both he and the victim were intoxicated at the time he assaulted the victim. See 877 F. Supp. 2d at 1022-23, 1044-45. The Court noted that it "does not take much for a defendant to qualify for a criminal history category of II" and that the Court could not distinguish Jim's criminal history from that of other defendants that the Court regularly sees who also have a criminal history category of II, and thus denied Jim's request for a downward departure under U.S.S.G. § 4A1.3. 877 F. Supp. 2d at 1044-45.

In United States v. Jager, No. CR 10-1531 JB, 2011 WL 831279 (D.N.M. Feb. 17, 2011)(Browning, J.), the Court denied a defendant's request for a downward departure, under U.S.S.G. § 5H1.11, based upon the defendant's eleven years of military service. See 2011 WL 831279, at *3. Even though Jager had received exemplary reviews in his performance reports, earning either the highest or second highest ratings possible, during his military career, the Court concluded that his service was not present in an unusual degree or distinguishable from other cases which the Guidelines cover. The Court noted that in many child pornography cases, such as

Jager's, the defendant leads an exemplary life publicly, while engaging in a sordid secret life privately. Jager's case was thus not distinguishable from other defendants sentenced under the Guidelines. Additionally, Jager was not in intense combat during his military career, most of his time was spent in the support role of a mechanic. The Court concluded, thus, that Jager's military service did not distinguish his case from those of many other defendants who commit child pornography, and the Court denied Jager's request for a downward departure. See 2011 WL 831279, at *10-11.

### LAW REGARDING VARIANCES FROM THE SENTENCING GUIDELINES

After United States v. Booker, 543 U.S. 220 (2005), the sentencing guideline ranges are now advisory and are one of several factors set out in 18 U.S.C. § 3553(a). Although appellate courts are allowed to assume that within-guidelines sentences are reasonable, subject to rebuttal, see Gall v. United States, 552 U.S. 38, 50-51 (2007), the Supreme Court has made it clear that no presumption of reasonableness attaches at the district court level to the sentence the Guidelines suggest, see Gall v. United States, 552 U.S. at 50 (explaining that a sentencing judge "may not presume that the Guidelines range is reasonable"); Rita v. United States, 551 U.S. 338, 351 (2007)("In determining the merits of [the parties'] arguments, the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply.").

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than necessary" to comply with four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

(A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

- 36 -

    (B)      to afford adequate deterrence to criminal conduct;

    (C)      to protect the public from further crimes of the defendant; and

    (D)      to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

18 U.S.C. § 3553(a)(2)(A)-(D). Section 3553(a) also directs sentencing courts to consider: (i) the nature of the offense and the defendant's character; (ii) the available sentences; (iii) the Sentencing Guidelines and policy statements that the Sentencing Commission has promulgated; (iv) a policy favoring uniformity in sentences for defendants who commit similar crimes; and (v) the need to provide restitution to victims. See 18 U.S.C. § 3553(a)(1), (3)-(7).

## ANALYSIS

Streett lists twenty-two Objections, two of which contain sub-Objections. See Objections at 1-19. Streett objects to the PSR on both factual and legal grounds. See Objections at 1-19. The Court will sustain Streett's Objections in part as to Objections One, Seven, and Nine, but will overrule the rest of the Objections.

## I.    NOT ALL OF STREETT'S ONLINE COMMUNICATION WAS DONE WITH THE INTENT TO ENGAGE IN SEXUAL ACTIVITY.

Streett argues that PSR ¶ 16, at 6, errs, "to the extent it states affirmatively that Mr. Streett knowingly had online contact with several females 'with the intent to engage in sexual activity.'" Objections at 1 (no citation for quotation). Streett notes that his Plea Agreement specifically includes "a count in which that element was included," but he "denies all communications were 'with the intent to engage in sexual activity' as suggested by Paragraph 16." Objections at 1 (no citation for quotation). In addition, Streett argues that PSR ¶ 16, at 6, "incorrectly indicates that the BCSO report references alleged online contact with 'several minor females' for the purpose of

engaging in sexual activity," because the BCSO report only "indicates a single minor female with whom Mr. Streett engaged in sexual activity," because "attempts to procure pornography does not qualify as 'sexual activity.'"  Objections at 2 (no citation for quotation).

In Response, both the United States and the USPO agree that PSR ¶ 16, at 6, should be amended to state: "Streett knowingly had sexually-charged online contact with several minors, including communications with the intent to obtain sexually explicit material from several minors, and communications with the intent to engage in sexual activity with at least one minor."  Response at 4-5; Third Addendum at 1.  Neither Streett nor the United States notes what the Bernalillo County Sheriff's Office report says.  See Objections at 2; Response at 4-5.

Streett's objection that PSR ¶ 16, at 6, incorrectly states that Streett "knowingly had online contact with several females 'with the intent to engage in sexual activity'" is mystifying.  Objections at 1.  Streett contends that PSR ¶ 16, at 6, is wrong to "suggest[]" that "all communications were 'with the intent to engage in sexual activity.'"  Objections at 1.  First, Streett pled guilty to numerous counts of communicating online with minors about sex and asking for sexual images.  See Plea Agreement at 7-8.  Second, PSR ¶ 16, at 6, does not state either that Streett knowingly had contact with several females online with the intent to engage in sexual activity, or that all his communications were with the intent to engage in sexual activity.  PSR ¶ 16, at 6, in its entirety states:

> On September 18, 2014, the FBI received a report from the Bernalillo County Sheriff's Office (BCSO) regarding an individual by the name of Bentley A. Streett. According to the report, Streett knowingly had online contact with several girls under the age of 18, with the intent to engage in sexual activity.

PSR ¶ 16, at 6.  There is no suggestion that all of Streett's communications online were done with

the intent to engage in sexual activity.  Further, Streett's contention that asking children to take photos of their genitals and send them to him is not sexual activity is inapposite.  Objections at 2. Even so, talking to children online about sex and then asking them for photos of their genitals is sexual activity.  PSR ¶ 16, at 6 does not state that all of Streett's communication online was done "with the intent to engage in sexual activity," Objections at 1.  Nevertheless, the Court agrees with the United States and the USPO that PSR ¶ 16, at 6, should be amended to better reflect the BCSO's report.  For the reasons stated in Footnote 12 supra, as well as because Streett misreads PSR ¶ 16, at 6, the Court, therefore, will sustain in part and overrule in part Streett's First Objection.

## II.   STREETT TRAVELED TO ILLINOIS IN JULY, 2013, FOR THE PURPOSE OF ENGAGING IN ILLICIT SEXUAL CONTACT WITH JANE DOE 1.

Streett alleges that his trip to Sycamore on or about July 11, 2013, until July, 13, 2013, was done "for business purposes and in-person meeting with Jane Doe 1 arose out of that."  Objections at 2.  According to Streett, he did not take the trip with a "specific intent to engage in sexual conduct with Jane Doe 1."  Objections at 2.  The United States argues and the USPO notes that Street traveled to Sycamore between July 11, 2013, and July 13, 2013, with the purpose to engage in sexual contact with Jane Doe 1.  See Response at 5; Third Addendum at 1.  In both his Plea Agreement and his plea colloquy, Streett states that the purpose of his July 31, 2013, to August 4, 2013, Sycamore trip was to engage in sexual conduct with Jane Doe 1.  See Plea Agreement ¶ 7, at 7; Response at 5.  In his Plea Agreement, Streett states: "From on or about July 31, and continuing to on or about August 4, 2013, I, Bentley Streett, traveled . . . to Sycamore, Illinois, for the purpose of engaging in illicit sexual conduct with" Jane Doe 1.  Plea Agreement ¶ 7, at 7.

Streett's Plea Agreement does not admit that the purpose of the July 11, 2013, trip to Sycamore was to engage in sex acts with Jane Doe 1. <u>See</u> Plea Agreement at 7. The USPO states, however, that "there is no travel history which indicates [Streett] was conducting legitimate business in Illinois." Third Addendum at 1. The USPO notes that it is the "victim's belief that [Streett] told her he was in the state for business to provide the appearance of credibility." Third Addendum at 1. Moreover, before his July 11, 2013, trip, Streett had been communicating with Jane Doe 1 and asked her to "send images of nude photographs of herself." PSR ¶ 17, at 6. On this first, July 11, 2013, visit, Streett drove Jane Doe 1 to a hotel room that he had just rented. <u>See</u> PSR ¶ 17, at 6. The Court, concludes, therefore, by a preponderance of the evidence, that Streett traveled to Sycamore between July 11, 2013, and July 13, 2013, at least in part for the purpose of engaging in sex acts with Jane Doe 1, and will overrule Streett's Second Objection.

## III.   STREETT REMOVED ALL HIS CLOTHES AND TRIED TO GET ON TOP OF <u>JANE DOE 1</u>.

Streett contends that he did not remove all his clothes and "'try to get on top of Jane Doe 1.'" Objections at 3 (no citation for quotation). Streett argues that he did not take off all his clothes and try to get on top of Jane Doe 1, because this statement "was not adopted by the plea agreement and is uncorroborated." Objections at 3. The United States disputes that the statement in PSR ¶ 20, at 7, that "Streett also removed all of his clothing and tried to get on top of Jane Doe 1" "implies force." Response at 6. The United States notes that "any sexual activity between Jane Doe 1 (14 years old) and [Streett] is, by its nature, non-consensual." Response at 6. Moreover, the United States argues that it does not matter what Streett's Plea Agreement states, because it is still "properly included as relevant conduct" under U.S.S.G. § 1B1.3. The USPO states that the

information that Streett removed his clothes, and tried to get on top of Jane Doe 1, "was derived from a statement provided by [Jane Doe 1] and the information is introduced as [Jane Doe 1's] statement." Third Addendum at 2. Because U.S.S.G. § 1B1.3's relevant conduct definition does not require that it be included in the plea agreement or corroborated by the defendant, and, because there is no sound reason to doubt Jane Doe 1's version of events, the Court will overrule Streett's Third Objection.

## IV.   JANE DOE 1 PROVIDED STREETT A PHOTOGRAPH OF HER BREASTS IN MAY, 2013.

Streett objects to the PSR's statement that Jane Doe 1 provided him with a photograph of her breasts, because this fact is not in his Plea Agreement. See Objections at 3. Streett contends that Jane Doe 1 never sent him a photograph of her breasts, because his Plea Agreement states only that Jane Doe 1 sent "'non-explicit images of herself.'" Objections at 3 (no citation for quotation). In the Response, the United States argues that the PSR's reference to "non-explicit" images is "meant to distinguish breasts from sexually explicit conduct," as 18 U.S.C. § 2256(a)(A)(v) does not include breasts in its definition of sexually explicit conduct. Response at 7. The United States, therefore, contends that "Jane Doe 1's breasts are properly labeled 'non-explicit' within the meaning derived from the statutory definition." Response at 7. The USPO states that the assertion that Jane Doe 1 sent Streett a photograph of her breasts "is derived from multiple sources, beyond the written plea agreement." Third Addendum at 2. The USPO notes, moreover, that U.S.S.G. § 1B1.3's definition of relevant conduct does not require that it be included in the plea agreement. See Third Addendum at 2. Because U.S.S.G. § 1B1.3's definition of relevant conduct does not require that it be included in a defendant's plea, and because "multiple

sources" corroborate that Jane Doe 1 sent Streett a photograph of her breasts, the Court concludes, by a preponderance of the evidence, that Jane Doe 1 sent Streett a photograph of her breasts. Third Addendum at 2. The Court, therefore, will overrule Streett's Fourth Objection.

## V.        STREETT THREATNED TO OUT JOHN DOE AS GAY.

Streett objects to the PSR ¶ 23, at 7, contending that he never threatened to out John Doe as gay. See Objections at 3. According to Streett, the word "threat" was not John Doe's word, but the "interview agent['s]" word, because "John Doe appears to attempt to correct the interviewing agent" in the interview when the interviewing agent "suggests that it was part of John Doe's questioning of his own sexuality." Objections at 3. The United States responds by noting that John Doe acknowledged in his interview with law enforcement that he was questioning his sexuality at the same time that he and Streett were communicating. See Response at 7. The United States argues, however, that, although John Doe did not use the word "threat" or the word "threatened" in his interview, "it is clear that John Doe is describing a threat" that Streett made. Response at 7. The USPO states that the information about Streett threatening to out John Doe if he did not send Streett explicit photographs "was derived from a statement provided by the victim of the defendant's actions." Third Addendum at 2.

In the interview, John Doe tells the interviewer that he has never felt threatened online. John Doe Interview at 10:54. A few minutes later, however, John Doe states: "I questioned my sexuality. And [Streett] knew that, and he said if I didn't send [the photo] he would out me on Twitter." John Doe Interview at 21:18. John Doe also says that Streett "knew he didn't feel comfortable with it [sending photos]." John Doe Interview at 21:49. Streett objects only to the word "threat" and does not offer any alternative interpretation of John Doe's statements. See

Objections at 3.  Because John Doe states that Streett used John Doe's questioning of his sexuality to leverage him for explicit photographs, the Court concludes by a preponderance of the evidence that Streett threatened John Doe.  The Court, therefore, will overrule Streett's Fifth Objection.

## VI.   PSR ¶¶ 27 AND 28, AT 8, ARE NOT REPETETIVE, BECAUSE THEY DESCRIBE SEPARATE INCIDENTS.

Streett contends that PSR ¶¶ 27 and 28, at 8, are "unnecessarily repetitive," because both paragraphs "contain reference to a request for a photograph of fingers post-masturbation." Objections at 3-4.  Streett does not explain why it would be problematic if these paragraphs were repetitive.  The United States alleges that these paragraphs are not repetitive, because they "are referencing different communications on the same day."  Response at 8.  According to the United States, these paragraphs are "'repetitive' only in the sense that [Streett] repeated his request to Jane Doe 3."  Response at 8.  The USPO similarly states that PSR ¶¶ 27 and 28, at 8, describe events that "occurred on separate occasions" and the "date of the occurrences are separate."  Third Addendum at 2.  After describing one instance of Streett asking Jane Doe 3 to "masturbate and take a photo of her fingers that she used to penetrate herself" in PSR ¶ 27, at 8, the PSR states: "Later that same day Streett again asked Jane Doe 3, age 14 to send a photograph of her fingers after she masturbated," PSR ¶ 28, at 8.  Streett offers no reason to doubt the accuracy of the PSR's description of Streett asking Jane Doe 3 to send explicit photographs on two separate occasions. The Court on its own finds no sound reason to doubt the PSR's accuracy.  The Court, therefore, will overrule Streett's Sixth Objection.

## VII.   STREETT HAS 127 IMAGES ON HIS COMPUTER DEPICTING POSSIBLE CHILD PORNOGRAPHY, AT LEAST TEN OF WHICH DEPICT CHILDREN ENGAGED IN SEXUALLY EXPLICIT CONDUCT.

Streett argues that the PSR inaccurately states the number of images depicting children engaged in sexually explicit conduct.  See Objections at 4.  According to Streett, the report on which the PSR relies states only that "127 files were 'Bookmarked[13] . . . "as possible child pornography images."'"  Objections at 4 (no citation for quotation).  The United States contends that Streett's Objection is "premised on a misunderstanding of the investigative process involving images of child sexual abuse material," because what the material depicts "is for the judge and/or the jury."  Response at 8.  According to the United States, law enforcement found 127 files that it believes to be child sexual abuse material, so it uses the label "possible child pornography."  Response at 8.  Similarly, the USPO notes that the case agent believes there to be 127 images of child sexual abuse material, but that there may be fewer, depending what a factfinder decides.  See Third Addendum at 2.  In response to Streett's Objection, the USPO amends the PSR to remedy the ambiguity: "During the investigation, law enforcement bookmarked 127 images as depicting 'possible child pornography,' [which indicates that] the investigator -- based on his/her training and experience -- identified 127 images which depict minors engaged in sexually explicit conduct."  Third Addendum at 2.  The Court agrees with Streett to the extent that Streett argues that the PSR's language is ambiguous.  The Court sees no sound reason to doubt the accuracy of the USPO's PSR amendment, however.  Neither the United States nor Streett provides the images, so the Court cannot verify whether all 127 images depict child sexual abuse material.  Nevertheless, the Court agrees with the USPO that law enforcement found 127 images on Streett's

---

[13]Because Streett does not provide a citation for this quotation, the Court cannot verify what the report says or determine what "bookmarked" means in this context.  See Objections at 4.

computer that depict possible child pornography.  Further, for the reasons stated in footnote 9, supra, the Court concludes that Streett possesses at least ten images depicting children engaged in sexually explicit conduct.  The Court, therefore, will sustain Streett's Seventh Objection to the extent it objects to the PSR's imprecision, but will overrule Streett's Seventh Objection to the extent it takes issue with what law enforcement found on his computer.

## VIII.  STREETT ASKED FOR NUDE PHOTOGRAPHS FROM THE "GIRL IN MINNESOTA" WHILE KNOWING THAT SHE WAS A MINOR.

Streett objects to PSR ¶ 33, at 10, which states that Streett "admitted there was another girl in Minnesota that he asked for naked pictures of."  PSR ¶ 33, at 10.  See Objections at 4.  Streett argues that he "does not believe that he asked her for naked pictures," but that he "may have asked her for a nude picture."  Objections at 4.  Streett is also "adamant he did not realize she was a minor."  Objections at 4.  The United States alleges that Streett knew that she was a minor, because "the content of his messages with the 'girl in Minnesota' -- recovered from [Streett's] phone -- indicated he knew" she was a minor.  Response at 9.  Similarly, the USPO states that it is "apparent" from the messages exchanged between Streett and the "girl in Minnesota" that Streett knew she was a minor.  Third Addendum at 3.  On October 21, 2013, Streett texted "the girl in Minnesota":

> Well, if I asked you for a nude (remember you're too young to send those me lol ! 😉) but I would just be honest about it.  Now I think you know I would never complain if you DID send me a nude . . . and I WOULD totes appreciate and cherish it, but I'm not asking . . . K?

Text Message Contacts with M.Y. at 6, sent 1:17:48 a.m. on October 21, 2013, filed July 26, 2021 (Doc. 259-1)("Minnesota Texts").  Because the text exchange between Streett and "the girl in Minnesota" makes it apparent that Streett knew she was a minor, and because Streett states that

the girl in Minnesota was too young to send him nude photographs, the Court concludes by a preponderance of the evidence that Streett knew that she was a minor.  See Minnesota Texts at 6. Accordingly, the Court will overrule Streett's Eighth Objection.

## IX.   STREETT COOPERATED WITH LAW ENFORCEMENT AND ACCEPTS RESPONSIBILITY FOR HIS ACTION.

Streett contends that the PSR omits important information about his cooperation with law enforcement and his acceptance of responsibility.  See Objections at 4-5.  Streett alleges that he "accepted responsibility *and* extricated himself from the activity subject to this case immediately after the February intervention and before the October arrest."  Objections at 5 (emphasis in original).  In response, the United States takes no issue with the "inclusion of information" noting that Streett " was 'cooperative' in the sense he agreed to speak with law enforcement and consented to searched of his property."  Response at 9 (no citation for quotation).  The USPO agrees with Streett that information about his cooperation and acceptance of responsibility should be in the PSR.  See Third Addendum at 3.  The Court, therefore, at the USPO's recommendation, adopts Streett's proposed language and agrees that

> Streett was extremely cooperative with law enforcement, consented to searches of his property and electronics and also sat for extended interviews with law enforcement in which he explained where to find photographs he kept (and offered to directly show law enforcement where it was located).  Following Street's initial contact with law enforcement in February, he deleted his social media accounts, cut off contact with others, and ceased the activity which had led to law enforcement contacting him.  Street accepted responsibility for his actions and was glad law enforcement intervened.

Third Addendum at 3.  Accordingly, the Court will sustain Streett's Ninth Objection and includes this information in its Findings of Fact, supra.

## X.   PSR ¶¶ 37, AT 10, IS NOT UNNECESSARILY REPETETIVE AND CORRECTLY

**STATES THAT STREETT USED A COMPUTER, BECAUSE A CELLULAR TELEPHONE IS A "COMPUTER" UNDER U.S.S.G. § 2G2.1.**

Streett objects to the PSR's summary ¶ 37, at 10-11, alleging that it is "unnecessary and repetitive," and that it incorrectly states that Streett used a computer to communicate with, and solicit explicit images from, children, because he communicated "exclusively via telephone message." Objections at 5. In its Response, the United States notes that "the PSR typically includes a summary paragraph (or two) at the end of the Offense Conduct section to summarize the evidence and highlight salient facts relevant to guideline enhancement." Response at 9-10. Next, the United States argues that Streett is incorrect, because, in this case, a cellular telephone is a "computer" within U.S.S.G. § 2G2.1's definition. Response at 9-10. The USPO makes the same two arguments that the United States makes. See Third Addendum.

First, the Court has read many PSRs over the years. In the Court's experience, the USPO frequently includes a summary paragraph or two at the end of the Offense Conduct section. Moreover, here, the summary begins: "In summary . . . ." PSR ¶ 37, at 10. The USPO does not need to change its longstanding, helpful practice of including summaries because Streett believes summaries to be objectionably duplicative. Provided the USPO continues to label its summaries as summaries, and not a different set of facts, the risk the someone will misread a PSR does not warrant striking summaries from presentence reports. See United States v. Cleveland, No. CR 17-0965 JB, 2021 WL 2634667, at *2 n. 1 (D.N.M. June 25, 2021)(Browning, J.)(suggesting that a defendant's objection to a PSR's summary paragraphs are unrelated to deciding what conduct is relevant for sentencing). The Court, therefore, will not omit the PSR's summary paragraphs. See PSR ¶¶ 37-38, at 10-11.

Second, U.S.S.G. § 2G2.1 adopts 18 U.S.C. § 1030(e)(1)'s definition of "computer":

an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device, but such term does not include an automated typewriter or typesetter, a portable hand held calculator, or other similar device.

18 U.S.C. § 1030(e)(1).  See U.S.S.G. § 2G2.1 cmt. 1.  A cellular telephone or smartphone is a "computer" as U.S.S.G. § 2G2.1 defines the term.  United States v. Mathis, 767 F.3d 1264, 1283 (11th Cir. 2014), abrogated on other grounds by Lochhart v. United States, 577 U.S. 347 (2016)(concluding that the "defendant's use of a cell phone to call and send text messages constitutes the use of a computer, as that term is defined in 18 U.S.C. § 1030(e)(1), and warrants imposition of an enhancement under U.S.S.G. § 2G2.1(b)(6)(B)"); United States v. Shamsud-Din, 580 F. App'x 468, 472 (7th Cir. 2014)("We have said in another context that [18 U.S.C. § 1030(e)(1)'s] very, very broad definition could encompass a cell phone."); United States v. Kramer, 631 F.3d 900, 902-03 (8th Cir. 2011)(concluding that a cellular phone or smartphone is a "computer" within 18 U.S.C. § 1030(e)(1)'s definition).  Because, therefore, a cellular telephone or smartphone is, therefore, a "computer" under U.S.S.G. § 2G2.1, the Court cannot conclude soundly that, by using a cellular telephone to communicate, Streett did not use a computer.  The Court, therefore, will overrule Streett's Tenth Objection.

## XI.   PSR ¶¶ 38, AT 10, IS NOT UNNECESSARILY REPETETIVE AND DOES NOT INCLUDE INCORRECT INFORMATION.

Streett again objects to the PSR's summary as "unnecessary and repetitive."  Objections at 6.  Additionally, Streett repeats his Objection that the PSR ¶ 38, at 10, includes "objectionable information," because it notes that Streett threatened to out John Doe as gay.  Objections at 6.

Streett again contends that he did not threaten to out John Doe as gay, because he did not plead guilty to doing so, even though his Plea Agreement "included an admission to persuasion" and "persuasion can take many forms." Objections at 6. First, for the reasons stated above, the Court will not disturb the USPO's longstanding practice of including summary paragraphs merely because they summarize. Second, for the reasons stated above, the Court concludes by a preponderance of the evidence that Streett threatened to out John Doe as gay. The Court, therefore, will overrule Streett's Eleventh Objection.

## XII.   THE   COURT   WILL   APPLY   U.S.S.G.   § 2G1.3(b)(2)(B)'S   2-LEVEL ENHANCEMENT.

Streett objects to the application of U.S.S.G. § 2G1.3(b)(2)(B)'s 2-level sentencing enhancement, because, according to Streett, Jane Doe 1 "voluntarily engaged in communication with Mr. Streett and had a habit of formulating relationships with men in distant locations online." Objections at 6. Streett argues that Jane Doe 1 was "predisposed to engage in relationship building through electronic formats, including telephone messaging as here." Objections at 6. Streett alleges that the Court cannot apply U.S.S.G. § 2G1.3(b)(2)(B)'s 2-level enhancement for undue influence, notwithstanding that there is a rebuttable presumption of undue influence, because Streett was more than ten years older than Jane Doe 1, see U.S.S.G. § 2G1.3 cmt. 3(B), because Jane Doe 1 told law enforcement that "she was not subject to such influence that she was not able to deny specific advances of Mr. Streett," Objections at 7. Moreover, Streett contends that he did not unduly influence Jane Doe 1, who was fourteen years old at the time, because she "considered [them] to be a romantic couple" and later "terminated the relationship of her own volition." Objections at 7.

- 49 -

In response, the United States contends that Streett's evidence that he did not unduly influence Jane Doe 1 actually demonstrates "Jane Doe 1's vulnerability and increased susceptibility to" Streett's influence.  Response at 11.  The United States notes that a fourteen-year-old child "cannot 'voluntarily' engage in sexual communications with a man over twice her age."  Response at 11 (no citation for quotation).  Similarly, the USPO maintains that U.S.S.G. § 2G1.3(b)(2)(B)'s 2-level enhancement applies, because Streett "initially identified himself as a teen on Twitter," but continued to increase his age until finally admitting that he was in this thirties, he rented a hotel room for the two to meet and provided travel, and Jane Doe 1 "stated [that] she felt pressured to send him a picture of herself, which she eventually did (the picture of was of her breasts)."  Third Addendum at 4.

U.S.S.G. § 2G1.3(b)(2)(B) instructs courts to apply a 2-level enhancement if "a participant otherwise unduly influenced a minor to engage in prohibited sexual conduct."   U.S.S.G. § 2G1.3(b)(2)(B).   When deciding whether to apply U.S.S.G. § 2G1.3(b)(2)(B)'s 2-level enhancement, a court "should closely consider the facts of the case to determine whether a participant's influence over the minor compromised the voluntariness of the minor's behavior," and that the minor's behavior may be compromised "without prohibited sexual contact occurring." U.S.S.G. § 2G1.3(b)(2)(B) cmt. 3(B).   In addition, there is a "rebuttable presumption" that U.S.S.G. § 2G1.3(b)(2)(B)'s 2-level enhancement applies when "a participant is at least 10 years older than the minor," because "some degree of undue influence can be presumed because of the substantial difference in age between the participant and the minor."  U.S.S.G. § 2G1.3(b)(2)(B) cmt. 3(B).  This rebuttable presumption does not, of course, overcome the United States' ultimate burden to prove that the sentencing enhancement is warranted.  See United States v. Castellon, 213

F. App'x 732, 737 (10th Cir. 2007)(unpublished).

Here, Streett is twenty-three years older than Jane Doe 1, who was fourteen years old at the time she and Streett were communicating.  See Third Addendum at 3.  The age gap is great enough that Streett "could be the age of her father."  United States v. Castellon, 213 F. App'x at 737.  See also United States v. Christy. 888 F. Supp. 2d 1107, 1148 (D.N.M. August 2, 2012)(Browning, J.)(concluding that U.S.S.G. § 2G1.3(b)(2)(B)'s 2-level enhancement applies when the defendants was "in his late fifties" and the victim was sixteen).  Streett's contention that Jane Doe 1's relationship with Streett was voluntary does not overcome the presumption of undue influence.  Streett submits that he did not unduly influence Jane Doe 1, because she "had a habit of formulating relationships with men in distant locations online," Objections at 6, and had a "high amount of agency in the relationship," Objections at 7.  Streett finds it "difficult to imagine" that Jane Doe 1 was unduly influenced, given that Jane Doe 1 "arrange[d] meetings, more than once, and then '[broke] up' just because she wanted to be single."  Objections at 7.  According to the United States Court of Appeals for the Ninth Circuit, however, a minor victim's willingness to engage in sexual activity is "irrelevant" to the § 2G1.3(b)(2)(B) inquiry, "'in much the same way that a minor's consent to sexual activity does not mitigate the offense of statutory rape or child molestation.'"  United States v. Brooks, 610 F.3d 1186, 1199 (9th Cir. 2010)(quoting United States v. Dhingra, 371 F.3d 557, 567-68 (9th Cir. 2004)).

The Tenth Circuit has upheld U.S.S.G. § 2G1.3(b)(2)(B)'s 2-level enhancement when the defendant picked up the victim, twenty-six years his junior, "in the middle of the night for sexual liaisons at hotels he paid for" and "drove her all the way from Albuquerque to Mexico for further such liaisons, all while she had no money and no identification."  United States v. Castellon, 213

F. App'x at 737.  The Tenth Circuit also relied on the "*substantial*" age difference between the forty-one-year-old defendant and the fifteen-year-old victim.  United States v. Castellon, 213 F. App'x at 737 (emphasis in original).  Here, Streett initially lied to Jane Doe 1 about his age, "led her to believe that they were in a 'relationship,'" took Jane Doe "from her home to a hotel she selected," and "continued to request photographs of her, to the point she felt pressured to comply." Third Addendum at 4 (no citation for quotation).  That Streett traveled to Jane Doe 1 rather than driving her away from her home, like the defendant in United States v. Castellon, 213 F. App'x at 737, does not suggest that Streett did not unduly influence Jane Doe 1.  The Court, therefore, concludes by a preponderance of the evidence that Streett unduly influenced Jane Doe 1 to engage in prohibited sexual conduct.  Accordingly, the Court will overrule Streett's Twelfth Objection and will apply U.S.S.G. § 2G1.3(b)(2)(B)'s 2-level sentencing enhancement.

## XIII.  THE COURT WILL APPLY U.S.S.G. § 2G1.3(b)(3)'S 2-LEVEL SENTENCING ENHANCEMENT.

Streett objects to PSR ¶ 46, at 11, for improperly applying U.S.S.G. § 2G1.3(b)(3)(B)'s 2-level sentencing enhancement, because Streett used a cellular telephone, and not an "interactive computer service" to communicate with Jane Doe 1.  Objections at 7.  According to Streett, "the pair were communicating exclusively via phone message and had been for quite some time," but never used "any social media network" or "interactive computer service."  Objections at 6-7.  The United States argues that Streett misreads U.S.S.G. § 2G1.3(b)(3)(B), because U.S.S.G. § 2G1.3(b)(3)(B) also applies to computers, and a cellular phone is a computer as U.S.S.G. § 2G1.3 defines the term.  See Response at 11.  The USPO notes that Streett met Jane Doe 1 on Twitter, which "is accessed through computer services, which includes cellular telephones."   Third

Addendum at 4.

U.S.S.G. § 2G1.3(b)(3)(B) instructs a court to apply a 2-level sentencing enhancement if the offense "involved the use of a computer or an interactive computer service to (A) persuade, induce, entice, coerce, or facilitate the travel of, the minor to engage in prohibited sexual conduct; or (B) entice, encourage, offer, or solicit a person to engage in prohibited sexual conduct with the minor." U.S.S.G. § 2G1.3(b)(3)(B). U.S.S.G. § 2G1.3(b)(3)(B) applies only "to the use of a computer or an interactive computer service to communicate directly with a minor or a person who exercises custody, care, or supervisory control of the minor," and not the use of a computer or interactive computer service to make travel arrangements to see or transport a minor. U.S.S.G. § 2G1.3 cmt. 4. U.S.S.G. § 2G1.3 adopts 18 U.S.C. § 1030(e)(1)'s definition of "computer":

> an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device, but such term does not include an automated typewriter or typesetter, a portable hand held calculator, or other similar device.

18 U.S.C. § 1030(e)(1). See U.S.S.G. § 2G1.3 cmt. 1. A cellular telephone or smartphone is a "computer" as U.S.S.G. § 2G2.1 defines the term. See Analysis, § X, supra.

Streett misreads U.S.S.G. § 2G1.3(b)(3)(B) and omits relevant facts. Streett contends that he communicated with Jane Doe 1 exclusively via "phone message" so U.S.S.G. § 2G1.3(b)(3)(B)'s 2-level enhancement does not apply, because it applies to social networks and interactive computer systems. Objections at 7. Streett is not correct. U.S.S.G. § 2G1.3(b)(3)(B)'s 2-level enhancement applies if the offense involved "the use of a computer." U.S.S.G. § 2G1.3(b)(3)(B). A cellular telephone is a computer under U.S.S.G. § 2G1.3(b)(3)(B). See U.S.S.G. § 2G1.3(b)(3)(B). Moreover, Streett met and communicated with Jane Doe 1 on Twitter,

a social networking website.  See Findings of Fact ¶¶ 2-3, supra.  Because Streett admits that he

communicated with Jane Doe 1 "via phone message," and because a cellular telephone is a

computer under U.S.S.G. § 2G1.3, the Court concludes by a preponderance of the evidence that

Streett's offense involved the use of a computer.  Objections at 7.  The Court, therefore, will

overrule Streett's Thirteenth Objection and will apply U.S.S.G. § 2G1.3(b)(3)(B)'s 2-level

sentencing enhancement.

### XIV.   PSR ¶ 51, AT 12, CORRECTLY STATES STREETT'S ADJUSTED OFFENSE LEVEL.

Streett contends that PSR ¶ 51, at 12, incorrectly states his adjusted offense level, because

his earlier Objections affect the sentencing calculation.  See Objections at 8.  Streett argues that

his adjusted offense level is 26, and not 30 as PSR ¶ 51, at 12, notes.  The United States asks the

Court to overrule this Objection.  See Response at 11.  The USPO states that PSR ¶ 51, at 12,

correctly states Streett's adjusted offense level as 30.  See Third Addendum at 4.  Because the

Court overrules Streett's Objections that would affect his adjusted offense level, the Court will

overrule Streett's Fourteenth Objection.  See Analysis § XII-XIII, supra.

### XV.   THE PSR GROUPS PROPERLY COUNT 8 AND COUNT 11.

Streett argues that the PSR groups improperly Counts 8 and 11, because they are "separate

offenses, separated in time and even medium (Count 8 via telephone, Count 11 via computer)."

Objections at 8-9.  Streett asserts that the PSR relies improperly on U.S.S.G. § 3D1.2(d), because

the PSR suggests that "the 'measure of aggregate harm' is a number of images."  Objections at 8

(no citation for quotation).  In addition, Streett asserts that his Plea Agreement does not "include

a specific number of images as to either count (except for one specifically titled image for each

count).” Objections at 9.  Finally, Streett contends that, “even if grouping were appropriate,” the PSR errs by “combining the two offenses into a single calculation, unreasonably enhancing the Guideline that otherwise would be appropriate by several levels.”  Objections at 9.  The United States responds that Counts 8 and 11 are “properly grouped pursuant to” U.S.S.G. § 3D1.2(d), which “expressly lists offenses covered by U.S.S.G. § 2G2.2 as subject to grouping.”  Response at 11-12.  Moreover, the United States notes that this grouping “only operates to [Streett’s] benefit.”  Response at 12.  The USPO maintains that the PSR groups properly Count 8 and Count 11, because they “cover conduct based on the total amount of harm, loss or other aggregate measurable harm.”  Third Addendum at 4.

U.S.S.G. § 3D1.2 instructs courts that counts “involving substantially the same harm shall be grouped together into a single Group.”  U.S.S.G. § 3D1.2.  One of the four ways to determine whether counts involve “substantially the same harm” is to ask if “the offense level is determined largely on the basis of the total amount of harm or loss.”  U.S.S.G. § 3D1.2(d).  U.S.S.G. § 3D1.2 states that offenses covered by §§ 2G2.2 and 2G3.1 “are to be grouped.”  U.S.S.G. § 3D1.2.

U.S.S.G. § 2G2.2 covers both Count 8 and Count 11.  Streett’s Count 8 is a violation of 18 U.S.C. § 2252(a)(2).  See Plea Agreement at 6.  Count 11 is a violation of 18 U.S.C. § 2252A(a)(5)(B).  See Plea Agreement at 6.  Count 8 and Count 11 therefore, are “to be grouped” together, pursuant to U.S.S.G. § 3D1.2.  See U.S.S.G. § 2G2.2. cmt. 1.  The Court, therefore, will overrule Streett’s Fifteenth Objection.

## XVI.   THE PSR CALCULATES PROPERLY COUNT 8’S OFFENSE LEVEL.

Streett contends that the PSR mistakenly calculates the adjusted offense level for Count 8.  See Objections at 9-11.  According to Streett, his adjusted offense level should be 27 and not 40,

as the PSR states.  See Objections at 11.  Streett's Sixteenth Objection is premised on his Fifteenth

Objection, that the PSR groups improperly Count 8 and Count 11.  See Objections at 9.  Because

the Court overrules Streett's Fifteenth Objection, the Court will overrule Streett's Sixteenth

Objection.

### A.    THE COURT WILL APPLY U.S.S.G. § 2G2.2(b)(2)'S 2-LEVEL ENHANCEMENT.

First, Streett argues that the PSR mistakenly applies U.S.S.G. § 2G2.2(b)(2)'s 2-level

sentencing enhancement for material involving a prepubescent minor, because Streett's Plea

Agreement does not include information about sexually explicit images of prepubescent minors.

See Objections at 9-10.  Streett alleges that the "factual basis supporting the plea also specifically

and purposefully excluded 'prepubescent.'"  Objections at 9-10 (no citation for quotation; citing

Plea Agreement at 8).  The United States responds that Streett correctly surmises that Count 8's

factual basis does not include material depicting prepubescent minors, but Count 11's factual basis

does include such material.  See Response at 12.  Because the United States contends that the PSR

groups properly Count 8 with Count 11, it argues that the PSR properly applies U.S.S.G.

§ 2G2.2(b)(2)'s 2-level enhancement.  See Response at 12.  The USPO makes the same argument

that the United States makes.  See Third Addendum at 5.

U.S.S.G. § 2G2.2(b)(2) instructs a court to apply a 2-level enhancement if "the material

involved a prepubescent minor or a minor who had not attained the age of 12 years."  U.S.S.G.

§ 2G2.2(b)(2).  Here, Count 8's material does not include prepubescent minors.  See Third

Addendum at 5.  Count 11 "involves material depicting prepubescent minors."  Third Addendum

at 5.  Count 8 is grouped properly with Count 11.  See Analysis § XV, supra.  The Court, therefore,

- 56 -

concludes that the PSR applies correctly U.S.S.G. § 2G2.2(b)(2)'s 2-level sentencing enhancement. The Court, therefore, will overrule Streett's Objection number 16.1

**B.    THE COURT WILL APPLY U.S.S.G. § 2G2.2(b)(3)(E)'S 7-LEVEL ENHANCEMENT.**

Second, Streett contends that the PSR mistakenly applies U.S.S.G. § 2G2.2(b)(3)(E)'s 7-level sentencing enhancement, because, although Streett "did request photos from the minor that received the images in relation to Count 8," there is "not a direct a connection between those requests and his providing the images." Objections at 10. Streett argues that U.S.S.G. § 2G2.2(b)(5)'s 5-level enhancement applies instead. See Objection at 10. The United States does not respond to this Objection other than to note that Streett benefits from Count 8 being grouped with Count 11. See Response at 11-14. The USPO also does not respond. See Third Addendum at 5.

U.S.S.G. § 2G2.2(b)(3)(E) instructs a court to apply a 7-level enhancement if "the offense involved distribution to a minor that was intended to persuade, induce, entice, coerce, or facilitate the travel of, the minor to engage in prohibited sexual conduct." U.S.S.G. § 2G2.2(b)(3)(E). Streett contends that "a review of the text conversation in which the images were shared shows that there was not a direct connection between those requests and his providing the images." Objections at 10. Streett does not supply the text conversation or indicate where the Court can find it. See Objections at 10. It is not the Court's job to dig through the record to find the conversation, if it has been filed at all. See United States v. Guerrero, 488 F.3d 1313, 1316 (10th Cir. 2007)(noting that even the liberal pro se standard does not require a court "to dig through the record, like a hound to a truffle, in search of a claim"); Adler v. Wal-Mart Stores, Inc., 144 F.3d

664, 672 (10th Cir. 1998)("[A]lthough this court has discretion to more broadly review the record on appeal, we, like the district courts, have a limited and neutral role in the adversarial process, and are wary of becoming advocates who comb the record of previously available evidence and make a party's case for it.").  Instead, Streett asserts that the minor's decision to send explicit photographs either was entirely of the minor's own doing or was a coincidence.  Streett asks the Court to conclude that Streett's request for explicit photographs from the minor had no effect on the minor's actions -- in other words, that Streett need not have asked for photographs in the first place.  Streett's proposed interpretation of the situation is not the most logical one.  Moreover, U.S.S.G. § 2G2.2(b)(3)(E) instructs courts to apply the 7-level enhancement if the distribution was "intended" to persuade a minor to engage in prohibited sexual conduct.   U.S.S.G. § 2G2.2(b)(3)(E).  Streett nowhere alleges that he did not have the requisite intent.  Because the only reason the Court has to doubt the USPO's version of events is Streett's contention that his own request in no way affected the minor's actions, and because Streett does not dispute that he had the requisite intent, the Court will overrule Streett's Objection number 16.2.

### C.   THE COURT WILL APPLY U.S.S.G. § 2G2.2(b)(5)'S 5-LEVEL ENHANCEMENT.

Third, Streett contends that the PSR mistakenly applies U.S.S.G. § 2G2.2(b)(5)'s 5-level sentencing enhancement, because, if Count 8 is not grouped with Count 11, then there is no "pattern of activity involving the sexual abuse or exploitation of a minor in connection with the offense." U.S.S.G. § 2G2.2(b)(5).  See Objections at 10.  Streett also asserts that applying this enhancement "results in double-counting because the conduct apparently relied upon is subject to its own Guideline application."  Objections at 10.  Neither the United States nor the USPO

responds.  See Response at 11-14; Third Addendum at 5.

U.S.S.G. § 2G2.2(b)(5) instructs a court to apply a 5-level enhancement if the defendant "engaged in a pattern of activity involving the sexual abuse or exploitation of a minor."  U.S.S.G. § 2G2.2(b)(5).  "Pattern of activity involving the sexual abuse or exploitation of a minor" means

> any combination of two or more separate instances of the sexual abuse or sexual exploitation of a minor by the defendant, whether or not the abuse or exploitation (A) occurred during the course of the offense; (B) involved the same minor; or (C) resulted in a conviction for such conduct.

U.S.S.G. § 2G2.2(b)(5) cmt. 1.  "Sexual abuse or exploitation" does not include "possession, accessing with the intent to view, receipt, or trafficking in material relating to the sexual abuse or exploitation of a minor."  U.S.S.G. § 2G2.2(b)(5) cmt. 1.  It is not clear what, exactly, Streett objects to, because he does not explain whether his double-counting Objection relies merely on his argument that Count 8 and Count 11 are not grouped properly -- because there is no pattern in Count 8 by itself -- or whether Streett also objects to double counting if Counts 8 and Count 11 are grouped properly together, but that the enhancement double counts conduct that overlaps with other Counts.  See Objections at 10.  Because, however, Streett states that "the following Objections," which includes Objection 16.4, will address Count 8 separately from Count 11, the Court concludes that Streett objects to Count 8 for double-counting conduct that is also included if Count 11 is considered separately.  Objections at 9.  Here, as the Court has explained, Count 8 is properly grouped with Count 11.  See Analysis § XV, supra.  Moreover, under U.S.S.G. § 2G2.2(b)(5), the "pattern" can be established by other conduct, even if the conduct "resulted in a conviction for such conduct."  U.S.S.G. § 2G2.2(b)(5) cmt. 1.  There are numerous examples of Streett engaging in sexual abuse or exploitation of a minor.  See PSR ¶¶ 37-38, at 10-11.  The

Court, therefore, concludes by a preponderance of the evidence that Streett engaged in a "pattern of activity involving the sexual abuse or exploitation of a minor." U.S.S.G. § 2G2.2(b)(5). The Court will overrule Streett's Objection number 16.3 and will apply U.S.S.G. § 2G2.2(b)(5)'s 5-level sentencing enhancement.

### D.   THE COURT WILL APPLY U.S.S.G. § 2G2.2(b)(6)'S 2-LEVEL ENHANCEMENT.

Fourth, Streett contends that the PSR mistakenly applies U.S.S.G. § 2G2.2(b)(6)'s 2-level sentencing enhancement for using a computer or interactive computer service, because he used a cellular telephone. See Objections at 10-11. Again, neither the United States nor the USPO responds. See Response at 11-14; Third Addendum at 5. U.S.S.G. § 2G2.2(b)(6) instructs a court to apply a 2-level enhancement if the offense "involved the use of a computer or an interactive computer service for the possession, transmission, receipt, or distribution of the material, or for accessing with intent to view the material." U.S.S.G. § 2G2.2(b)(6). A cellular telephone or smartphone is a "computer" as U.S.S.G. § 2G2.2 defines the term. Analysis § X, supra. The Court, therefore, will overrule Streett's Objection number 16.4.

### E.   THE COURT WILL APPLY U.S.S.G. § 2G2.2(b)(7)(A)'S 2-LEVEL ENHANCEMENT.

Fifth, Streett contends that the PSR incorrectly applies U.S.S.G. § 2G2.2(b)(7)(A)'s 2-level enhancement, because "there is not evidence that the distribution included ten or more images of child pornography." Objections at 11. The United States contends that Streett "possessed at least 10 images, but fewer than 150 images, which triggers" U.S.S.G. § 2G2.2(b)(7)(A)'s 2-level enhancement. Response at 12. The United States notes that it is "prepared to submit all 127 images for the Court's consideration, or present testimony of a qualified law enforcement agent to

provide a description of at least 10 images."  Response at 12.  The USPO does not respond to Streett's Objection.  See Third Addendum at 5-6.

U.S.S.G. § 2G2.2(b)(7)(A) instructs a court to apply a 2-level enhancement if the offense "involved at least 10 images, but fewer than 150."  U.S.S.G. § 2G2.2(b)(7)(A).  "Images" means "any visual depiction, as defined in 18 U.S.C. § 2256(5), that constitutes child pornography, as defined in 18 U.S.C. § 2256(8)."  18 U.S.C. § 2256(8) defines "child pornography" as

> any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where--
>
> (A)    the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct;
>
> (B)    such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or
>
> (C)    such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct.

18 U.S.C. § 2256(8).

There is no dispute that Streett had fewer than 150 images.  Because Streett possessed 127 images that law enforcement believes depict "minors engaged in sexually explicit conduct," Third Addendum at 2, and because Streett's MacBook Pro "contained numerous images of child pornography, which Streett obtained online and from minors," including one file titled BXGk-u-IIAAx3ZX.jpg, which depicts a "prepubescent female" "using her hands to spread her labia and the focus of the image is the lascivious exhibition of the child's genitals,"  PSR ¶ 31 at 9, the Court concludes, by a preponderance of the evidence, that Streett possessed more than ten images featuring child pornography, see Findings of Fact n. 9, supra.  The Court, therefore, will overrule

Streett's Objection number 16.5.

### F.     PSR ¶ 96, AT 15, CORRECTLY STATES COUNT 8'S ADJUSTED OFFENSE LEVEL.

Sixth, Streett argues that, based on his earlier objections, PSR ¶ 96, at 15, states incorrectly Streett's adjusted offense level as 40, because it should be 27.  See Objections at 11.  Neither the United States nor the USPO responds to this Objection beyond their earlier responses about Count 8 being grouped properly with Count 11.  See Response at 11-14; Third Addendum at 5.  Because the Court overrules Streett's earlier Objections, the Court concludes that PSR ¶ 96, at 15, states correctly Streett's adjusted offense level as 40.  The Court, therefore, will overrule Streett's Objection number 16.6.

## XVII.  THE PSR CALCULATES PROPERLY COUNT 11'S OFFENSE LEVEL.

Streett contends that the PSR mistakenly calculates the adjusted offense level for Count 11.  See Objections at 11-12.  According to Streett, his adjusted offense level should be 27 and not 40, as the PSR states.  See Objections at 11.  Streett's Seventeenth Objection is premised primarily on his Fifteenth Objection that the PSR groups improperly Count 8 and Count 11.  See Objections at 9.  Because the Court overrules Streett's Fifteenth Objection and Sixteenth Objection, the Court will overrule Streett's Seventeenth Objection.

### A.     THE PSR STATES CORRECTLY COUNT 11'S BASE-OFFENSE LEVEL.

First, Streett asserts that the PSR states incorrectly Count 11's base offense level, because "it fails to consider Count 11 independently."  Objections at 11.  Neither the United States nor the USPO responds to this Objection beyond their earlier responses about Count 8 being properly grouped with Count 11.  See Response at 11-14; Third Addendum at 5.  Because the Court

concludes that Count 8 is grouped properly with Count 11, the Court will overrule Streett's Objection number 17.1.  See Analysis § XV, supra.

### B. THE COURT WILL APPLY U.S.S.G. § 2G2.2(b)(2)'S 2-LEVEL ENHANCEMENT.

Second, Streett again objects to the PSR's application of U.S.S.G. § 2G2.2(b)(2)'s 2-level sentencing enhancement for material involving a prepubescent minor.  See Objections at 11.  Neither the United States nor the USPO responds to this Objection beyond their earlier responses about Count 8 being grouped properly with Count 11.  See Response at 11-14; Third Addendum at 5.  The PSR notes that Count 11 "involves material depicting prepubescent minors."  Third Addendum at 5.  For that reason, and the reasons stated in Analysis § XVI(A), supra, the Court will overrule Streett's Objection number 17.2

### C. THE COURT WILL APPLY U.S.S.G. § 2G2.2(b)(5)'S 5-LEVEL ENHANCEMENT.

Third, Streett again contends that the PSR mistakenly applies U.S.S.G. § 2G2.2(b)(5)'s 5-level sentencing enhancement, because, if Count 8 is not grouped with Count 11, then there is no "pattern of activity involving the sexual abuse or exploitation of a minor in connection with the offense."  U.S.S.G. § 2G2.2(b)(5).  See Objections at 11-12.  Neither the United States nor the USPO responds to this Objection beyond their earlier responses about Count 8 being properly grouped with Count 11.  See Response at 11-14; Third Addendum at 5.  For the reasons stated in Analysis § XVI(C), supra, the Court will overrule Streett's Objection number 17.3.

### D. THE COURT WILL APPLY U.S.S.G. § 2G2.2(b)(7)(A)'S 2-LEVEL ENHANCEMENT.

Fourth, Streett again argues that the PSR mistakenly applies U.S.S.G. § 2G2.2(b)(7)(A)'s 2-level enhancement, because there is "not a specific number of images contained on the laptop which are verified child pornography beyond that admitted in the plea agreement."  Objections at 12.  Neither the United States nor the USPO responds to this Objection beyond their earlier responses about Count 8 being properly grouped with Count 11.  See Response at 11-14; Third Addendum at 5.  For the reasons stated in Analysis § XVI(E), supra, the Court will overrule Streett's Objection number 17.4.

     **E.**    **PSR ¶ 96, AT 15, STATES CORRECTLY COUNT 11'S ADJUSTED OFEFNSE LEVEL.**

Fifth, Streett again objects to PSR ¶ 96, at 15, arguing that it states incorrectly Streett's adjusted offense level as 40, because it should be 27.  See Objections at 12.  Neither the United States nor the USPO responds to this Objection beyond their earlier responses about Count 8 being properly grouped with Count 11.  See Response at 11-14; Third Addendum at 5.  Because the Court overrules Streett's earlier Objections, the Court concludes that PSR ¶ 96, at 15, states correctly Streett's adjusted offense as 40.  The Court, therefore, will overrule Streett's Objection number 17.5.

**XVIII. PSR ¶ 97, AT 15-16, STATES CORRECTLY THE COMBINED OFFENSE LEVEL'S NUMBER OF UNITS.**

Street contends that PSR ¶ 97, at 15-16, states the incorrect number of units for his combined offense level "to the extent it disagrees with the above objections," because Count 8 is not grouped properly with Count 11.  Objections at 12.  Streett also contends that, even if Count 8 is grouped properly with Count 11, that the combined offense level should be 5.0, and not 5.5 as the PSR states.  See Objections at 12-13.  The United States responds only to note that grouping

Count 8 with Count 11 results in a lower guideline calculation than if Count 8 and Count 11 are calculated separately.  See Response at 13.  The USPO does not respond to this Objection.  See Third Addendum at 5.  Count 8 is properly grouped with Count 11.  See Analysis § XV supra. The Court, therefore, will overrule Streett's Objection Eighteenth Objection.

## XIX.   **STREETT'S GREATEST ADJUSTED OFFENSE LEVEL IS 40.**

Streett argues that his greatest adjusted offense level is not 40, as PSR ¶ 98, at 16, states, but is 36.  Neither the United States nor the USPO responds to this Objection beyond their earlier responses about Count 8 being properly grouped with Count 11.  See Response at 11-14; Third Addendum at 5.  Because PSR ¶ 96, at 15, states correctly Streett's adjusted offense as 40, the PSR ¶ 98, at 16, states Streett's greatest adjusted offense level as 40.  The Court, therefore, will overrule Streett's Nineteenth Objection.

## XX.    **STREETT'S TOTAL OFFENSE LEVEL IS 43.**

Streett argues that PSR ¶ 100, 101, and 104, at 16, misstate Streett's Combined Adjusted Offense levels, Chapter Four enhancement, and total offense level, because his greatest offense level is 36, and the Chapter Four Enhancement is "improperly inflated," so the total offense level stated in PSR ¶ 104, at 16, should be 42 and not 43.  Objections at 13.  Neither the United States nor the USPO responds to this Objection beyond their earlier responses about Count 8 being properly grouped with Count 11.  See Response at 11-14; Third Addendum at 5.  Because the Court overrules all of Streett's objections that affect these calculations, the Court will overrule Streett's Twentieth Objection.

## XXI.   **STREETT'S U.S.S.G. RANGE IS 2,640 MONTHS.**

Streett argues that PSR ¶ 143, at 23, incorrectly states his U.S.S.G. range to be 2,640

months, because his actual U.S.S.G. range is 360 months.  See Objections at 13.  Streett contends

that the USPO's U.S.S.G. calculation is "unreasonable, unjust and inappropriate," but does not

explain why.  Objections at 13.  Neither the United States nor the USPO responds to this Objection

beyond their earlier responses about Count 8 being properly grouped with Count 11.  See Response

at 11-14; Third Addendum at 5.

> PSR ¶ 143, at 23, states:

> > Based upon a total offense level of 43 and a criminal history category of I
> > the guideline imprisonment range is life. However, the statutorily authorized
> > maximum sentences are less than the maximum of the applicable guideline range;
> > therefore, the guideline range is 2,640 months. U.S.S.G. §§ 5G1.2(b) and (d).

PSR ¶ 143, at 23.  Because the combination of the statutory maximum sentences for Streett's eight

Counts is 2,640 months, the maximum statutory penalty the Court can impose for Streett's counts

is 2,640 months.  See U.S.S.G. §§ 5G1.2(b) and (d); PSR ¶ 142, at 22.  Later in the PSR, the USPO

states, however, that a sentence of 2,640 months is "not reasonable and is greater than necessary

to achieve the goals of sentencing."  PSR ¶ 162, at 27.  As a result, it is not clear why Streett objects

to the USPO showing its work in PSR ¶ 143, at 23.  The Court, therefore, will overrule Streett's

Twenty-First Objection.

## XXII. THE COURT WILL NOT DEPART DOWNWARD BASED ON STREETT'S CRIMINAL HISTORY, CHILDHOOD STRUGGLES, COMMUNITY TIES, POST-OFFENSE REHABILITATION, OR ANY OVERLAPPING ENHANCEMENTS.

Streett contends that the PSR does not account adequately for "significant departure issues

present in this case."  Objections at 13.  Streett argues that the Court should depart downward

based on Streett's criminal history, childhood struggles, community ties, post-offense

rehabilitation, or U.S.S.G.'s overlapping enhancements.  See Objections at 13-18.  In its Response,

the United States urges the Court not to depart downward on any of these grounds.  See Response at 14-15.  First, the United States alleges that Streett's lack of criminal history "does not present an 'exceptional case' warranting departure."  Response at 14 (quoting U.S.S.G. § 5K2.0(a)(3)).  Second, the United States notes that it is "unable to locate guideline departures that would apply to" Streett's childhood sexual abuse and post-offense rehabilitation.  Response at 14.  Third, the United States argues that the "guidelines expressly prohibit application of [the community-ties departure] for offenses involving a minor victim, or under Chapter 110 or 117."  Response at 14 (citing U.S.S.G. § 5H1.6).  Fourth, the United States argues that Streett does not meet U.S.S.G. § 5K2.0(c)'s criteria for departing downward for overlapping enhancements.  See Response at 15.  The USPO states, first, that departures "below the lower limit of the guideline range for Criminal History Category I is prohibited," so it does not recommend a departure based on Streett's criminal history.  Third Addendum at 6.  Second, the USPO states that "when sentencing a defendant convicted of an offense involving a minor victim," the "departure pursuant to Family Ties and Responsibility is not ordinarily relevant."  Third Addendum at 6.  Third, the USPO notes that it sees no "characteristics or combination of characteristics which would provide justification of a departure" based on U.S.S.G. § 5K2.0(c).  Third Addendum at 6.  Fourth, the USPO states that the Court may consider these factors pursuant to 18 U.S.C. § 3553(a).  See Third Addendum at 6.

First, the Court will not depart downward based on Streett's criminal history.  Streett's criminal history score is zero, which means his criminal history category is I.  See Third Addendum at 6.  U.S.S.G. § 4A1.3(b)(2)(A) prohibits a departure "below the lower limit of the applicable guideline range for Criminal History Category I."  U.S.S.G. § 4A1.3(b)(2)(A).  The Court, therefore, will not depart below the lower limit of the guideline range.

- 67 -

Second, the Court will not depart downward for Streett's childhood struggles.  Although the Court sympathizes with Streett's traumatic childhood, see PSR ¶¶ 114-19, at 18-19; id. at ¶¶ 128-30, at 20, Streett does not point to a U.S.S.G. provision that justifies this departure, see Objections at 17.  The Court on its own cannot locate a relevant U.S.S.G. provision that warrants such a departure.  The Court, therefore, will not depart downward based on Streett's childhood struggles.

Third, the Court will not depart downward for Streett's alleged post-offense rehabilitation.  Again, although the Court notes that Streett argues that he "extricated himself from the circumstances that facilitated the offenses," "expressed gratitude for the intervention[,] and worked to rehabilitate himself," Objections at 18, and that he "accepted responsibility for his actions and was glad law enforcement intervened," Third Addendum at 3, Streett does not point to a U.S.S.G. provision that justifies this departure, see Objections at 18.  Again, the Court on its own cannot locate a U.S.S.G. provision that justifies this departure -- particularly considering that the USPO already recommends a 2-level reduction pursuant to U.S.S.G. § 3E1.1(a) for Streett's acceptance of responsibility, see PSR ¶ 102, at 16.  The Court, therefore, will not depart downward based on Streett's post-offense rehabilitation.

Fourth, the Court will not depart downward based on Streett's community ties.  U.S.S.G. § 5H1.6 states that when sentencing a defendant "convicted of an offense involving a minor victim under . . . title 18, United States Code, family ties and responsibility ties and community ties are not relevant in determining whether a sentence should be below the applicable guideline range." U.S.S.G. § 5H1.6.  In the only case that Streett cites in support of his proposition that involves a minor victim, the Honorable Lynn Adelman, United States District Judge for the United States

District Court for the Eastern District of Wisconsin, cited the "strong family support [that the] defendant enjoyed, which would aid in his rehabilitation and re-integration into the community" as a factor warranting a downward departure.  United States v. Wachowiak, 412 F. Supp. 2d 958, 964 (E.D. Wisc. 2006)(Adelman, J.).   In United States v. Wachowiak, the defendant's only conviction was for receiving child pornography, a violation of 18 U.S.C. § 2252(a)(2).  See 412 F.Supp. 2d at 959.  Here, Streett has multiple and more serious violations.  The Court, therefore, sees no sound reason to depart from U.S.S.G. § 5H1.6's clear statement.   Finally, the USPO recommends already a downward departure, because a 2,640 months' imprisonment is "not reasonable and is greater than necessary to achieve the goals of sentencing."   PSR ¶ 162, at 27. Because there is no sound reason to depart downward beyond what the USPO recommends already, the Court will overrule Streett's Twenty-Second Objection.  The Court's conclusion does not, however, impact Streett's ability to raise the same concerns under 18 U.S.C. § 3553(a).

IT IS ORDERED that the Defendant's Objections to the Presentence Report, filed July 2, 2021 (Doc. 257), is sustained in part as to Objections 1, 7, and 9, and overruled as to the rest of the Objections.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Fred J. Federici
   Acting United States Attorney
Alexander Mamoru Max Uballez

- 69 -

Nicholas Jon Ganjei
Sarah Jane Mease
  Assistant United States Attorneys
United State Attorney's Office
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Paul M. Linnenburger
Lane, Linnenburger, and Lane, LLP
Albuquerque, New Mexico

    *Attorney for the Defendant*