**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                          No. CR 14-3609 JB

BENTLEY A. STREETT,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before Court on the Defendant's First Motion to Withdraw Plea, and/or, in the Alternative, For Rejection of Plea Agreement, filed January 22, 2021 (Doc. 239)("Motion"). The Court held a hearing on May 12, 2021. See Clerk's Minutes, filed May 12, 2021 (Doc. 256). The primary issue is whether Defendant Bentley Streett can withdraw from his Conditional Plea Agreement, filed December 7, 2018 (Doc. 184)("Plea Agreement"), because there is not a sufficient basis to support that Streett knowingly possessed material depicting prepubescent minors engaged in sexually explicit conduct, as opposed to minors engaged in sexually explicit conduct. The Court concludes that Streett does not show a fair and just reason to withdraw from his Plea Agreement, because, although the Plea Agreement does not state explicitly that Count 11 includes "prepubescent" minors, there is a sufficient factual basis for the Plea Agreement, because the Plea Agreement incorporates facts alleged in the Second Superseding Indictment at 1, filed December 17, 2015 (Doc. 32)("Indictment"). Accordingly, the Court will deny the Motion.

**FACTUAL BACKGROUND**

Rule 12(d) of the Federal Rules of Criminal Procedure requires the Court to state its

essential findings on the record when deciding a motion that involves factual issues.  See Fed. R. Crim. P. 12(d) ("When factual issues are involved in deciding a motion, the court must state its essential findings on the record.").  Here, the Court provides these facts for background, however, and not to satisfy rule 12(d).  These facts are provided for background only, and do not affect the Court's resolution of Streett's Motion.  The Court takes these facts, edited for brevity, from its Memorandum Opinion and Order, filed November 9, 2021 (Doc. 271)("Objections MOO"), which presents factual findings.  The Objections MOO takes its facts from the Presentence Investigation Report, filed February 14, 2019 (Doc. 188)("First PSR"), the Second Presentence Investigation Report, filed October 25, 2019 (Doc. 198)("PSR"), the Defendant's Objections to the Presentence Report, filed July 2, 2021 (Doc. 257)("Objections), the Addendum to the Presentence Investigation Report, filed October 29, 2020 (Doc. 231)("First Addendum"), the Second Addendum to the Presentence Investigation Report, filed November 4, 2020 (Doc. 233)("Second Addendum"), the United States' Response to Defendant's Objections to the Presentence Report, filed July 26, 2021 (Doc. 257)("Response"), and the Third Addendum to the Presentence Investigation Report, filed August 3, 2021 (Doc. 260)("Third Addendum"), and the Plea Agreement.  See Objections MOO at 5.

In May, 2013, Jane Doe 1, a fourteen-year-old girl in the eighth grade, was dating an unidentified man.  See PSR ¶ 21, at 7.  The unidentified man introduced Jane Doe 1 to Streett in May, 2013, via Twitter.  See PSR ¶ 21, at 7.  Between about May 20, 2013, and September 15, 2013, Streett communicated with Jane Doe 1 via Twitter and text messages.  See PSR ¶ 17, at 6.  Streett initially told Jane Doe 1 that he was a teenager, but continued to increase his age until he finally admitted that he was in his thirties.  See PSR ¶ 21, at 7.  Streett pressured Jane Doe 1 to send him nude photographs of her.  See PSR ¶¶ 17, 21, at 6-7.  Streett sent Jane Doe 1 nude

photographs of himself, including "some from the waist down when he was in the shower."  PSR ¶ 21, at 7.  Jane Doe 1 sent Streett a photograph of her wearing a bra.  See PSR ¶ 17, at 6.  Jane Doe 1 sent Streett a photograph of her breasts.  See PSR ¶ 21, at 7.  Streett knew that Jane Doe 1 was fourteen years old.  See PSR ¶ 21, at 7.

On July 11, 2013, Streett traveled from Albuquerque, New Mexico, to Sycamore, Illinois, at least in part for the purpose of engaging in sex acts with Jane Doe 1.  See PSR ¶ 18, at 6; Response at 5-6; Third Addendum at 1.  Streett picked up Jane Doe 1 on the morning of July 12, 2013, and brought her to a hotel room at a Quality Inn that he had rented in Sycamore.  See PSR ¶¶ 18-20, at 6.  In the hotel room, Streett performed oral sex on Jane Doe 1, penetrated Jane Doe 1's vagina with his fingers, and "had Jane Doe 1 touch his penis with her hand and masturbate him."  PSR ¶ 18, at 6.  Streett flew back to Albuquerque on July 13, 2013.  See PSR ¶ 18, at 6.  On or about July 31, 2013, to August 3, 2013, Streett again traveled to Sycamore for the purpose of engaging in sex acts with Jane Doe 1.  See PSR ¶¶ 18-20, at 6.  Streett again reserved a room at the Quality Inn, and Streett again performed sex acts on Jane Doe 1.  See PSR ¶¶ 18-20, at 6.  During at least one of the trips to Sycamore, Streett removed all his clothing and tried to get on top of Jane Doe 1.  See PSR ¶ 20, at 7.

On or about September 15, 2013, Streett began to communicate with Jane Doe 2 on Twitter and via text messaging.  See PSR ¶ 25, at 8.  Streett knew that Jane Doe 2 was sixteen years old.  See PSR ¶ 25, at 8.  Streett asked Jane Doe 2 to "send images of genitals."  PSR ¶ 25, at 8.  Streett persuaded Jane Doe 2 "to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct."  PSR ¶ 25, at 8.  Streett and Jane Doe 2 stopped communicating on December 24, 2013.  See PSR ¶ 25, at 8.  On October 31, 2013, a confidential informant alerted

the National Center for Missing and Exploited Children[1] that Streett solicited a nude photograph

of Jane Doe 1 online.  See PSR ¶ 15, at 6.  "The tip was forwarded to the New Mexico Attorney

General's Internet Crimes Against Children Task Force and a subpoena was issued for" Streett's

T-Mobile phone number.  PSR ¶ 15, at 6.

  A search warrant "was executed on [Streett's T-Mobile account] which revealed there were

136 text messages between Streett and Jane Doe 1."  PSR ¶ 15, at 6.  For several days beginning

on or around November 13, 2013, Streett communicated via Twitter, Skype, and text messages

with John Doe.  See PSR ¶ 22, at 7.  Streett knew that John Doe was fourteen years old.  See PSR

¶ 23, at 7.  Streett persuaded John Doe to "engage in sexually explicit conduct for the purpose of

producing a visual depiction of such conduct."  PSR ¶ 22, at 7.  "Streett asked John Doe to send

[Streett] a photograph of [John Doe's] penis after he masturbated, which he did."  PSR ¶ 22, at 7.

Streett sent nude photographs of himself to John Doe.  See PSR ¶ 23, at 7.  Streett threatened to

out John Doe on Twitter "as being gay if he did not send pictures."  PSR ¶ 23, at 7.  Streett gave

John Doe a "'bad vibe.'"  PSR ¶ 23, at 7 (no citation for quotation).  John Doe sent Streett "nude

pictures of himself."  PSR ¶ 23, at 7.

  On or about December 6, 2013, Streett met Jane Doe 4 through Twitter, when Streett

followed her Twitter account.  See PSR ¶ 24, at 7.  Jane Doe 4 was seventeen years old.  See PSR

¶ 24, at 7.  Streett knew that Jane Doe 4 was seventeen years old.  See PSR ¶ 24, at 7.  Until about

---

[1]The National Center for Missing & Exploited Children is a non-profit 501(c)(3) corporation "whose mission is to help finding missing children, reduce child sexual exploitation, and prevent child victimization.  NMEC works with families, victims, private industry, law enforcement, and the public to assist with preventing child abductions, recovering missing children, and providing services to deter and combat child sexual exploitation."  About Us, National Center for Missing & Exploited Children, https://www.missingkids.org/footer/about (last visited Nov. 1, 2021).

January 12, 2014, Jane Doe 4 communicated with Streett through Twitter, Skype, Kik,[2] and text messages.  See PSR ¶ 24, at 7.  Streett "communicated with Jane Doe 4 about sex and asked her to send nude photos of herself."  PSR ¶ 24, at 7.  Street asked Jane Doe 4 to send him nude photographs of her, "would not leave her alone," and was "sexually aggressive towards her."  PSR ¶ 24, at 7.  Streett persuaded Jane Doe 4 to "engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct."  PSR ¶ 24, at 7.  Jane Doe 4 sent Streett photographs "depicting a close-up view of her genitals."  PSR ¶ 24, at 7.  Jane Doe 4 never met Streett in person.  See PSR ¶ 24, at 7.  Streett sent Jane Doe 4 "an International Balloon Fiesta calendar and a silver necklace with her initials."  PSR ¶ 24, at 7.  Jane Doe 4 still has both the calendar and the silver necklace.  See PSR ¶ 24, at 8.

Beginning November 4, 2013, Streett began to exchange text messages with Jane Doe 3, who was listed as "Micky14 El Paso" in Streett's phone.  PSR ¶ 26, at 8.  Streett sent a text message to Jane Doe 3 that says: "Asking 14 year old girls for nekky pics (naked pictures)???"  PSR ¶ 26, at 8.  Streett described to Jane Doe 3 a photograph that she previously had sent to him "of her in a red bra on the bed and asked if she had kept" the photographs.  PSR ¶ 26, at 8.  Streett texted Jane Doe 3 that he remembers the photo and that she sent it "'on the day you sent me the pics of that boy's penis!!'"  PSR ¶ 26, at 8 (no citation for quotation).  Jane Doe 3 was either fourteen or fifteen years old at the time.  See PSR ¶¶ 26-28 at 8.  Streett also communicated with Jane Doe 3 through Twitter.  See PSR ¶ 27, at 8.  Streett asked Jane Doe 3 to "masturbate and take a photo of her fingers that she used to penetrate herself and to take a picture of her vagina as well, if she wants to."  PSR ¶ 27, at 8.  "On November 9, 2013, Streett sent [Jane Doe 3] a photo showing her what

_____

[2]Kik is a freeware instant messaging mobile app.  See Kik, About, www.kik.com/about (last visited February 28, 2022).

he wanted her to do, which was to digitally penetrate herself and take a photo of the fingers after with the genitalia in the background."  PSR ¶ 27, at 8.

After Jane Doe 3 went shopping for basketball shoes on November 9, 2013, Streett asked her to take a photograph of herself while wearing the basketball shoes.  See PSR ¶ 27, at 8.  Jane Doe 3 asked Streett how she should pose in the photograph.  See PSR ¶ 27, at 8.  Streett said to Jane Doe 3: "'You would be totally nekky with your shoes on and sitting on the floor in front of the mirror with the bottoms of your shoes against the glass and your knees bent.'"  PSR ¶ 27, at 8 (no citation for quotation).  Later that same day, Streett "again asked Jane Doe 3 . . . to send a photograph of her fingers after she masturbated" and sent her a photograph "of how he wanted the photograph to look."  PSR ¶ 27, at 8.  "On November 30, 2013, Streett sent Jane Doe 3 a photograph depicting a close up of two fingers spreading a vagina."  PSR ¶ 28, at 8.  When Jane Doe 3 asked Streett the age of the girl in the photograph, Streett stated that she was fifteen years old.  See PSR ¶ 28, at 8.  Streett told Jane Doe 3 that "the girl in the photograph had shaved and took the picture especially for him for his birthday."  PSR ¶ 28, at 8.  Streett told Jane Doe 3 that "only girls under 18 send him pictures."  PSR ¶ 28, at 8.

On January 20, 2014, Streett used a Nokia Lumia 920 cellular telephone to send to Jane Doe 3 a set of photographs "depicting nude female and male bodies," including "close up photographs of vaginas, close up photographs of fingers spreading vaginas, close up photos of penises, bare breasts, and photographs of young girls who appear to be under the age of 18."  PSR ¶ 28, at 8.  One of the files containing "images depicting minors engaged in sexually explicit conduct" that Streett sent to Jane Doe 3 "was titled wp_ss_20140120_0002.png" and includes at least one photograph of a "minor engaged in sexually explicit conduct."  PSR ¶ 30, at 9.  "In total, [Streett] possessed a color gallery with 20 image thumbnails," several of which "depicted close up

views of genitalia and breasts." PSR ¶ 30, at 9. Several of the photographs that Streett sent to Jane Doe 4 "were pictures of Jane Doe 4 and R.L." PSR ¶ 28, at 8. "One of the images was a sexually explicit image of Jane Doe 4, a minor." PSR ¶ 30, at 9. Streett stopped communicating with Jane Doe 3 on January 29, 2014. See PSR ¶ 26, at 8.

On February 14, 2014, the Federal Bureau of Investigation contacted Jane Doe 3 about her contact with Streett. See PSR ¶ 28, at 8. Between approximately June 26, 2013, and February 25, 2014, Streett had an Apple Macbook Pro laptop with 127 saved images depicting "'possible child pornography,' [which indicates that] the investigator -- based on his training and experience -- identified 127 images that depicted minors engaged in sexually explicit conduct." Third Addendum at 2. See PSR ¶ 31, at 9. Streett's MacBook Pro "contained numerous images of child pornography, which Streett obtained online and from minors," including one file titled BXGk-u-IIAAx3ZX.jpg, which depicts a "prepubescent female" "using her hands to spread her labia and the focus of the image is the lascivious exhibition of the child's genitals." PSR ¶ 31 at 9. Streett possessed at least 10, but fewer than 127, images of child pornography. See Objections MOO at 15. Streett had a "very organized filing system on his computer," which included folders that "identified the minor victim by name, age, or Twitter handle." PSR ¶ 32, at 9. There were photographs of Jane Doe 4 and John Doe on Streett's MacBook Pro. See PSR ¶ 32, at 9. There were photographs of Jane Doe 4 and John Doe on Streett's Yellow Nokia Lumia cellular telephone. See PSR ¶ 32, at 9.

Streett has two Twitter accounts: one for personal use and one for work. See PSR ¶ 32, at 9. Streett's work Twitter account is @captainbentleys; Streett's personal Twitter account is @thebigguy69. See PSR ¶ 32, at 9. Streett "uses his personal Twitter account to meet and interact with women and girls." PSR ¶ 32, at 9. Streett asks his Twitter followers "to be at least 18 years

of age." PSR ¶ 32, at 9. Streett uses Twitter to send telephone numbers and text "to some of the girls he meets on his cellular telephone." PSR ¶ 32, at 9. Streett interacted with "a couple of users that he knew were under 19 years of age, one being the name 'McKayla' or 'McKayla-Jane.'" PSR ¶ 33, at 10. Despite these users' ages, Streett "'got close' to some of them and continued to stay in contact with them over the phone," and "asked some of the girls under age 18 for nude photographs of themselves." PSR ¶ 33, at 10. Streett communicated with M.Y., another minor girl in Minnesota, and asked her to send him nude photographs of her. See PSR ¶ 33, at 10. On February 25, 2013, Officers from the Bernalillo County Sheriff's Office ("BCSO") executed a search warrant on Streett's house. See PSR ¶¶ 32, 34 at 9, 10. Streett answered the door. See PSR ¶ 32, at 9. BSCO officers escorted Streett "un-handcuffed to an unmarked vehicle." PSR ¶ 32, at 9. Streett cooperated with law enforcement, "consented to searches of his property and electronics and also sat for extended interviews with law enforcement in which he explained where to find photographs he kept." Third Addendum at 3.

After Streett's first contact with law enforcement, he "deleted his social media accounts, cut off contact with others, and ceased the activity which had led to law enforcement contacting him." Third Addendum at 3. "Streett accepted responsibility for his actions and was glad law enforcement intervened." Third Addendum at 3. On February 24, 2014, Streett was charged in the Bernalillo County Metropolitan Court, State of New Mexico, with Solicitation of a Minor by a Communication Device, but was released on a $1,000.00 bond on the same day; the charge was dismissed on September 5, 2014. See PSR ¶ 34, at 10. On September 18, 2014, the BCSO sent a report about Streett to the Federal Bureau of Investigation. See PSR ¶ 16, at 6. The BCSO report indicated that Streett "knowingly had sexually-charged online contact with several minors, including communications with the intent to obtain sexually explicit material from several minors,

and communication with the intent to engage in sexual activity with at least one minor." Third Addendum at 1. Streett was arrested at his house in Albuquerque on October 3, 2014. See PSR ¶ 35, at 10. Streett's girlfriend was Pamela Lesiak. See PSR ¶ 36, at 10. Streett has a "somewhat open relationship with" his girlfriend. PSR ¶ 32, at 9. Lesiak did not know any of the people in the photographs from Streett's cellular telephone that law enforcement showed her. See PSR ¶ 36, at 10.

## **FINDINGS OF FACT**

Rule 12(d) of the Federal Rules of Criminal Procedure requires the Court to state its essential findings on the record when deciding a motion that involves factual issues. See Fed. R. Crim. P. 12(d) ("When factual issues are involved in deciding a motion, the court must state its essential findings on the record."). These findings of fact serve as the Court's essential findings for rule 12(d) purposes.

1.     The Tanner Scale, also known as the Tanner stages or the Sexual Maturity Rating (SMR), is a "scale of physical development in children, adolescents and adults," which "defines physical measurements of development based on external primary and secondary sex characteristics, such as the size of the breasts, genitals, testicular volume and development of pubic hair." Wikipedia, Tanner Scale, https://en.wikipedia.org/wiki/Tanner_scale (last visited March 21, 2022).

2.     There are five Tanner Stages. See University of Cincinnati School of Medicine, Reproductive Physiology, Lecture 3, Tanner Stages, https://med.uc.edu/landing-pages/reproductivephysiology/lecture-3/tanner-stages (last visited March 24, 2022).

3.     Tanner Stage 1 is prepubertal, although it may involve hormonal and psychological developments. See Puberty and the Tanner Stages: Developed by Professor James M. Tanner,

Child Growth Foundation, https://childgrowthfoundation.org/wp-content/uploads/2020/03/Puberty-and-Tanner-Stages_v2.0.pdf; Navigating Puberty: The Tanner Stages, healthline.com, https://www.healthline.com/health/parenting/stages-of-puberty.

4.     Tanner Stage 2 marks the beginning of physical pubertal development, and involves "[s]parse growth of long, slightly pigmented hair, straight or curled, at base of penis or along labia."  Puberty and the Tanner Stages: Developed by Professor James M. Tanner, Child Growth Foundation, https://childgrowthfoundation.org/wp-content/uploads/2020/03/Puberty-and-Tanner-Stages_v2.0.pdf.  See Navigating Puberty: The Tanner Stages, healthline.com, https://www.healthline.com/health/parenting/stages-of-puberty.

5.     During Tanner Stage 3, "[d]arker, coarser and more curled hair [develops] and begins to extend laterally."  Puberty and the Tanner Stages: Developed by Professor James M. Tanner, Child Growth Foundation, https://childgrowthfoundation.org/wp-content/uploads/2020/03/Puberty-and-Tanner-Stages_v2.0.pdf.  See Navigating Puberty: The Tanner Stages, healthline.com, https://www.healthline.com/health/parenting/stages-of-puberty.

6.     During Tanner Stage 4, pubic hair is "adult in type, but cover[s] smaller area than in adult; no spread to medial surface of thighs."  Puberty and the Tanner Stages: Developed by Professor James M. Tanner, Child Growth Foundation, https://childgrowthfoundation.org/wp-content/uploads/2020/03/Puberty-and-Tanner-Stages_v2.0.pdf.  See Navigating Puberty: The Tanner Stages, healthline.com, https://www.healthline.com/health/parenting/stages-of-puberty.

7.     A person reaches Tanner Stage 5 when pubic hair is "[a]dult in type and quantity, with horizontal distribution."  Puberty and the Tanner Stages: Developed by Professor James M. Tanner, Child Growth Foundation, https://childgrowthfoundation.org/wp-content/uploads/2020/03/Puberty-and-Tanner-Stages_v2.0.pdf.  See Navigating Puberty: The Tanner Stages,

healthline.com, https://www.healthline.com/health/parenting/stages-of-puberty.

8.     Before Streett signed the Plea Agreement, the United States Probation Office ("USPO") prepared a pre-plea PSR.  See Pre-Plea Presentence Investigation Report, filed April 5, 2017 (Doc. 70)(text-only entry).

9.     Plea negotiations began prior to January 4, 2017.  See Unopposed Motion for Form 13 Pre-Plea Presentence Investigation Report at 1, filed January 4, 2017 (Doc. 64)("Form 13 Motion").

10.     Streett waived his right to a speedy trial "so that he may have the benefits of a Form 13 presentence investigation report."  Form 13 Motion at 2.

11.     Streett first saw the final Plea Agreement in its entirety on December 7, 2018, the same day that he signed it.  See Draft Transcript of May 12, 2021, Hearing at 34:20-23 (taken May 12, 2021)(Streett)("Tr.").[3]

12.     Streett "had a chance to thoroughly read" the Plea Agreement before signing it.  Tr. at 34:20-23 (Streett).

13.     On December 7, 2018, Streett pled guilty to: (i) one count of travel to engage in illicit sexual conduct, in violation of 18 U.S.C. § 2423(b); (ii) two counts of production of a visual depiction of a minor engaging in sexually explicit conduct, in violation of 18 U.S.C. § 2251(a); (iii) three counts of attempted production of a visual depiction of a minor engaging in sexually explicit conduct, in violation of 18 U.S.C. § 2251(a); (iv) one count of distribution of visual depictions of minors engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(2);

---

[3]The Court's citations to the draft transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

and (v) one count of possession of visual depictions of minors engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252A(a)(5)(B).  See Plea Agreement ¶ 6, at 5-6.

14.     The Honorable Karen B. Molzen, United States Magistrate Judge for the United States District Court for the District of New Mexico, conducted a plea colloquy with Streett on December 7, 2018.  See Clerk's Minutes, filed December 7, 2018 (Doc. 185).

15.     At the plea colloquy, Magistrate Judge Molzen asked Streett what he did that makes him guilty of the Plea Agreement's Count 11.  See Transcript of Audio-Recorded Hearing at 38:14-16, taken December 7, 2018, filed February 12, 2021 (Doc. 241-1)("December 7 Tr.").

16.     At the plea colloquy, Streett told Magistrate Judge Molzen that he "was in possession of all the aforementioned images and the accounts which were on my computer, my MacBook."  December 7 Tr. at 38:17-18 (Streett).

17.     Streett's reference at the plea colloquy to the "aforementioned images" is a reference to the images listed in the Plea Agreement's Count 8, which Streett admits to possessing. December 7 Tr.at 38:18 (Streett).  See December 7 Tr.at 37:17-38:13 (M.J. Molzen, Streett, Lopez, Mease).

18.     The "aforementioned images" include "lots of different thumbnails, and at least one of those thumbnails contains child pornography."  December 7 Tr. at 38:6-8 (Mease).

19.     At the plea colloquy, Streett admits "all the facts that are set forth in [the Plea Agreement's] Count XI admission of facts," because they are "all . . . true."  December 7 Tr. at 38:24-39:1 (M.J. Molzen).  See December 7 Tr. at 39:2 (Streett).

20.     Streett and the United States viewed BXGk-u-IIAAx3ZX.jpg, the image that the Plea Agreement's Count 11 references, and agree that it depicts child pornography.  See December 7 Tr. at 39:19-40:10 (Mease, M.J. Molzen, Lopez, Streett).

21.     Streett saw and possessed BXGk-u-IIAAx3ZX.jpg.  See December 7 Tr. at 39:24-40:10 (Lopez, M.J. Molzen, Streett).

22.     Streett's attorney saw BXGk-u-IIAAx3ZX.jpg.  See December 7 Tr. at 40:1 (Lopez).

23.     At the plea hearing, the United States stated that the maximum penalty for violating the Plea Agreement's Count 11 is twenty years, and indicated that the Count deals with producing a visual depiction of "a prepubescent minor engaged in sexually explicit conduct."  December 7 Tr. at 16:4-5 (Mease).

24.     The subject in BXGk-u-IIAAx3ZX.jpg. has no pubic hair, no pubic development -- the "labia is not developed" and there is "no clitoral hood" -- and the subject's hands "are not developed," meaning that the subject is at Tanner Stage 1.  Tr. at 49:11-16 (Mease).

25.     The subject in BXGk-u-IIAAx3ZX.jpg. is prepubescent.

## PROCEDURAL BACKGROUND

On October 2, 2014, Plaintiff the United States of America asserted in a criminal complaint that Streett: (i) coerced and enticed a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b); (ii) transferred obscene material to minors, in violation of 18 U.S.C. § 1470; and (iii) exploited children sexually, in violation of 18 U.S.C. § 2251(a) and (b).  See Criminal Complaint at 1, filed October 2, 2014 (Doc. 1).  On December 17, 2015, a federal grand jury charged Streett with: (i) two counts of travel to engage in illicit sexual conduct, in violation of 18 U.S.C. § 2423(b); (ii) two counts of production of a visual depiction of a minor engaging in sexually explicit conduct, in violation of 18 U.S.C. § 2251(a); (iii) three counts of attempted production of a visual depiction of a minor engaging in sexually explicit conduct, in violation of 18 U.S.C. § 2251(a) and (e); (iv) one count of distribution of visual depiction of minors engaged

in sexually explicit conduct, in violation of 18 U.S.C. §§ 2252(a)(2), (b)(1), and 2256; (v) two

counts of transfer of obscene material to minors, in violation of 18 U.S.C. § 1470; and (vi) two

counts of possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B), (b)(2),

and 2256.  See Indictment at 1.

### 1.    **The Plea Agreement.**

On December 7, 2018, Streett pled guilty to: (i) one count of travel to engage in illicit

sexual conduct, in violation of 18 U.S.C. § 2423(b); (ii) two counts of production of a visual

depiction of a minor engaging in sexually explicit conduct, in violation of 18 U.S.C. § 2251(a);

(iii) three counts of attempted production of a visual depiction of a minor engaging in sexually

explicit conduct, in violation of 18 U.S.C. § 2251(a); (iv) one count of distribution of visual

depictions of minors engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(2);

and (v) one count of possession of visual depictions of minors engaged in sexually explicit

conduct, in violation of 18 U.S.C. § 2252A(a)(5)(B).  See Plea Agreement ¶ 6, at 5-6.  In the Plea

Agreement, Streett acknowledges that, "if I chose to go to trial instead of entering this Plea, the

United States could prove facts sufficient to establish my guilt of the offense(s) to which I am

pleading guilty beyond a reasonable doubt, including any facts alleged in the [Indictment] that

increase the statutory minimum or maximum penalties."  Plea Agreement at 7.  Moreover, Streett

admits to the following facts, which, because they are at issue, the Court quotes in their entirety:

> Count 2:    From on or about July 31, 2013, and continuing to on or about
> August 4, 2013, I, Bentley Streett, traveled from Albuquerque, New
> Mexico, to Sycamore, Illinois, for the purpose of engaging in illicit
> sexual conduct with A.O. (Jane Doe 1).  Specifically, I flew on
> Southwest Airlines from Albuquerque to Sycamore, where I picked
> up A.O. and brought her to a hotel room I rented in Sycamore in my
> name.  Once in the hotel room, I performed oral sex on A.O. and
> penetrated her vagina with my fingers.  I also had A.O. touch my
> penis with her hand.  I knew A.O. was 14 years old at the time of

this offense.

Count 3:       For several days on or about November 13, 2013, in Bernalillo
               County, New Mexico, I, Bentley Streett, did knowingly persuade
               N.M. (John Doe) to engage in sexually explicit conduct for the
               purpose of producing a visual depiction that would be transmitted to
               me in interstate commerce.  Specifically, I communicated with N.M.
               on Twitter, Skype, and text messaging.  I communicated with N.M.
               about sex and asked him to send me images of his penis after he
               masturbated.  N.M. sent me sexually explicit images of his nude
               penis, which I saved on my yellow Nokia Lumia 920 cellular phone.
               I knew that N.M. was 14 at the time of this offense.

Count 4:       From on or about December 6, 2013, and continuing to on or about
               January 12, 2014, in Bernalillo County, New Mexico, I, Bentley
               Streett, did knowingly persuade M.S. (Jane Doe 4) to engage is [sic]
               sexually explicit conduct for the purpose of producing a visual
               depiction that would be transmitted to me in interstate commerce.
               Specifically, I communicated with M.S. on Twitter, Skype, Kik, and
               text messaging.  I communicated with M.S. about sex and asked her
               to send me nude images of herself.  M.S. sent me sexually explicit
               images of her genitals, which I saved on my Macintosh Macbook
               Pro laptop and yellow Lumia 920 cellular phone.  I knew that M.S.
               was 17 at the time of the offense.

Count 5:       From on or about May 20, 2013, and continuing to on or about
               September 15, 2013, in Bernalillo County, New Mexico, I attempted
               to persuade A.O. to engage in sexually explicit conduct for the
               purpose of producing a visual depiction that would be transmitted to
               me in interstate commerce.  Specifically, I communicated with A.P.
               on both Twitter and through text messaging.  I communicated with
               A.O. about sex and asked for images of her genitals.  A.O. sent me
               non-explicit images of herself, which I saved onto my Macintosh
               Macbook Pro laptop.  I knew A.O. was 14 years old at the time of
               this offense.

Count 6:       From on or about September 15, 2013, and continuing to on or about
               December 24, 2013, in Bernalillo County, New Mexico, I attempted
               to persuade J.S. (Jane Doe 2) to engage in sexually explicit conduct
               for the purpose of producing a visual depiction that would be
               transmitted to me in interstate commerce.   Specifically, I
               communicated with J.S. on both Twitter and through text
               messaging.  I communicated with J.S. about sex and asked for
               images of her genitals.  J.S. sent me non-explicit images of herself,
               which I saved onto my Macintosh Macbook Pro laptop.  I knew J.S.

was 16 years old at the time of this offense.

Count 7:    From on or about November 4, 2013, and continuing to on or about January 29, 2014, in Bernalillo County, New Mexico, I attempted to persuade M.J. (Jane Doe 3) to engage in sexually explicit conduct for the purpose of producing a visual depiction that would be transmitted to me in interstate commerce. Specifically, I communicated with M.J. on both Twitter and through text messaging. I communicated with M.J. about sex and asked for images of her genitals. I sent M.J. sexually explicit images of another minor in an attempt to persuade her. M.J. sent me non-explicit images of herself, which I saved onto my Macintosh Macbook Pro laptop and yellow Nokia Lumia 920 cellular phone. I knew that M.J. was 15 at the time of this offense.

Count 8:    On or about January 20, 2014, in Bernalillo County, New Mexico, I Bentley Streett, did knowingly distribute visual depictions of minors engaged in sexually explicit conduct, which is child pornography. Specifically, using my yellow Nokia Lumia 920 cellular phone, I knowingly sent two galleries of images depicting minors engaged in sexually explicit conduct to M.J. One of these galleries of images I sent was titled "wp_ss_20140120_0002.png" and depicted at least one minor engaged in sexually explicit conduct.

Count 11:   From on or about June 26, 2013, and continuing to on or about February 25, 2014, in Bernalillo County, New Mexico, I, Bentley Streett, knowingly possessed a Macintosh Macbook Pro laptop, serial number 730197WDATM that contained visual depictions of minors engaged in sexually explicit conduct, which is child pornography. This device contains numerous images of child pornography, which I obtained online and from minors, as described above. I saved the images on my Macbook. One of the images I possessed on this device was titled "BXGk-u-IIAAx3ZX.jpg" and depicted a minor engaged in sexually explicit conduct.

With respect to Counts 3-8, and 11, I now know that my Macintosh Macbook Pro laptop hard drive and my Nokia Lumia 920 cellular phone were manufactured overseas, in Thailand and China, respectively. Therefore, the devices traveled in foreign and interstate commerce before reaching New Mexico. I understand that the use of these devices and the use of the Internet in the commission of these offenses affected interstate or foreign commerce.

Plea Agreement ¶ 7, at 7-9.

In the Plea Agreement, the United States and Streett agree, pursuant to rule 11(c)(1)(B) of

the Federal Rules of Criminal Procedure, that the United States recommends "a sentence within Defendant's final guideline range as calculated by the district court," as well as a 2-level sentencing reduction pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 3E1.1(a), "so long as the Defendant continues to accept responsibility for the criminal conduct," Plea Agreement ¶ 9, at 9, and an additional 1-level sentencing reduction under U.S.S.G. § 3E1.1(b) "if applicable," Plea Agreement ¶ 9, at 10.  Moreover, in the Plea Agreement, Streett agrees that

> the facts that the Defendant has admitted under this plea agreement as set forth above, as well as any facts to which the Defendant admits in open court at the Defendant's plea hearing, shall be admissible against the Defendant under Federal Rules of Evidence 801(d)(2)(A) in any subsequent proceeding, including criminal trial, and the Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 with regard to the Facts the Defendant admits in conjunction with this plea agreement.

Plea Agreement ¶ 13, at 11.  Streett also agrees to waive

> the right to withdraw the defendant's plea of guilty pursuant to Federal Rule of Criminal Procedure 11(d) unless (1) the court rejects the plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(5) or (2) the defendant can show a fair and just reason as those terms are used in Rule 11(d)(2)(B) for requesting the withdrawal.

Plea Agreement ¶ 13, at 11.  Magistrate Judge Molzen took Streett's plea on December 7, 2018.  See Plea Minute Sheet at 1, filed December 7 2018 (Doc. 185).

### 2.     **The Motion.**

Streett asks to withdraw from his Plea Agreement or, in the alternative, for the Court to reject the Plea Agreement "due to lack of independent factual basis."  Motion at 1.  Streett notes that the Indictment's Count 11 "specifically charged possession of child pornography 'that involved a prepubescent minor.'"  Motion at 2.  Streett asserts that this fact is "crucial," because, under 18 U.S.C. § 2252A(b)(2), "possession of child pornography involving prepubescent minors carries a maximum penalty of 20 years imprisonment, while possession of child pornography

involving postpubescent minors carries a maximum penalty of half that (10 years)."  Motion at 2.

According to Streett, therefore, the Indictment's Count 11 and the Plea Agreement "necessarily

required the establishment of an independent factual basis that the pornographic material possessed

involved a prepubescent minor."  Motion at 3-4.  Streett asserts, however, that there is not a

sufficient independent factual basis that he possessed pornographic material involving a

prepubescent minor, because both the Plea Agreement and the plea colloquy discuss only child

pornography and make no mention of prepubescent minors.  See Motion at 4-5.

      Street makes three arguments.  See Motion at 6-11.  First, Streett contends that there is a

lack of independent factual basis for his Plea Agreement's Count 11, and, therefore, that the Plea

Agreement violates rule 11(b)(3) of the Federal Rules of Criminal Procedure, which "requires the

Court to determine the existence of an independent factual basis for a plea of guilty."  Motion at

6.  According to Streett, the Complaint and the Indictment do not "provide sufficient evidence to

support a finding of possession of prepubescent child pornography."  Motion at 7.  Moreover,

Streett contends that neither the Plea Agreement nor the plea colloquy with Magistrate Judge

Molzen on December 7, 2018, contains any admission or evidence of prepubescent child

pornography.  See Motion at 7-8.  Streett alleges that there is "no evidence to support any finding

of the necessary independent factual basis as to that specific required element."  Motion at 8.

      Second, Street argues that the Plea Agreement is tainted, because of Count 11's inadequate

independent factual basis, so the entire Plea Agreement is invalid.  See Motion at 8.  Streett alleges

that his plea to Count 11 was "part and parcel of an encompassing Conditional Plea Agreement,"

and that the "noted penalties of up to 20 years imprisonment . . . was a necessary part of the

bargain."  Motion at 9.  According to Streett, the Court "should not parse the counts in the plea

when considering withdrawal because to do so would 'ignore[] the fact that the guilty plea was

entered as part of an agreement involving all of the counts . . . .'"  Motion at 9 (quoting United States v. Benard, 680 F.3d 1206, 1214 (10th Cir. 2012)).  Streett alleges that it is "impossible" to determine if he would have signed the Plea Agreement "if he understood there was an insufficient factual basis for Count 11," so he should be permitted to withdraw from the entire Plea Agreement. Motion at 9.

Third, Streett argues in the alternative that the Court should reject the entire Plea Agreement pursuant to rule 11(c)(5) of the Federal Rules of Criminal Procedure for the same reasons that he should be able to withdraw, namely, because there was "a crucial error in the plea proceeding in that one of the necessary counts is not support by an independent factual basis." Motion at 10-11.  Streett states that the asserted error resulted in him being misinformed about his maximum possible sentence.  See Motion at 11.  Streett contends that excluding Count 11 reduces his maximum possible penalty from 190 years to 170 years.  See Motion at 11.

### 3.    The United States' Response.

The United States responds to Streett's Motion, opposing Streett's objective to withdraw from his Plea Agreement and arguing that the Court should not reject the entire Plea Agreement. See United States' Response in Opposition to Defendant's Motion to Withdrawn Guilty Plea or Reject Plea Agreement at 1, filed February 5, 2021 (Doc. 240)("Response").  The United States "urges" the Court to deny the Motion, because Streett "entered a knowing and voluntary plea, which, pursuant to the terms of the plea agreement, included admissions to all facts contained in the indictment."  Response at 1.  The United States asserts that, even if the omission of the word "prepubescent" in the Plea Agreement is an error, the error does not prejudice Streett, because it would reduce only his maximum statutory penalty.  Response at 1.

The United States makes three arguments.  See Response at 5-16.  First, the United States

asserts that Streett's guilty plea includes admissions to the Indictment and has a sufficient factual basis, because, in his written Plea Agreement, Streett "expressly admitted guilt, beyond a reasonable doubt, to the facts in the indictment, including 'any facts alleged in the indictment that increase the statutory minimum or maximum penalties.'"  Response at 5 (quoting Plea Agreement ¶ 7, at 7-9).  According to the United States, "by pleading guilty to Count 11 of the indictment, Defendant admitted that Count 11 involved material depicting a prepubescent minor" and that the "fact that the written admission of facts contained in the plea agreement is less specific than the charging language does not, in any way, undermine Defendant's guilty plea to the language in the indictment."  Response at 6-7.  Moreover, the United States contends that, even if the Plea Agreement has an insufficient factual basis under rule 11, the Court should deny Streett's Motion, because the error is "harmless."  Response at 7.  According to the United States, the purported error is harmless, because the word "prepubescent" is in the Indictment's Count 11, as well as in "all references to the penalties, the elements of the offense detailed in the plea agreement, and the United States' presentation at the plea colloquy," and because excluding the term "prepubescent" benefits Streett by reducing his total sentencing maximum on Count 11 from twenty years to ten years.  Response at 7.

Second, the United States asserts that Streett cannot establish a fair-and-just reason to withdraw his guilty plea.  See Response at 8.  The United States alleges that the Court should look to United States v. Black, 201 F.3d 1296, 1299-1300 (10th Cir. 2000), to determine whether rule 11 permits Streett to withdraw from his Plea Agreement.  See Response at 8.  According to the United States, under United States v. Black, 201 F.3d at 1299-1300, Streett cannot make a credible claim of innocence, Streett's guilty plea was knowing and voluntary, Streett received quality assistance from an attorney, and Streett's withdrawal from the Plea Agreement would prejudice

the United States and waste the Court's resources.  See Response at 9-15.

Third, the United States argues that the Court should rule on Streett's Motion without an evidentiary hearing, because the record contradicts Streett's allegations.  See Response at 15.  The United States contends that Streett's guilty plea "is supported by a well-developed record, including a written plea agreement and thorough plea colloquy."  Response at 16.  According to the United States, the Court does not need to hold an evidentiary hearing, because the "record demonstrates that any claims Defendant attempts to assert in an effort to negate the guilty plea he entered under solemn oath, 'merely contradict the record, are inherently incredible, or are simply conclusory.'"  Response at 16 (quoting United States v. Hernandez, 277 F. App'x 775, 777 (10th Cir. 2008)(unpublished)[4]).

### 4.    The United States' Addendum.

On February 12, 2021, the United States filed an addendum to the Response.   See Addendum to United States' Response in Opposition to Defendant's Motion to Withdraw Guilty

---

[4]United States v. Hernandez is an unpublished opinion, but the Court can rely on a United States Court of Appeals for Tenth Circuit unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A)("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court concludes that United States v. Hernandez, United States v. Wright, 392 F. App'x 623 (10th Cir. 2010)(unpublished); United States v. Griffin, 191 F. App'x 699 (10th Cir. 2006)(unpublished); United States v. Sandoval, 427 F. App'x 621 (10th Cir. 2011)(unpublished), have persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

Plea (Exhibit 1), filed February 12, 2021 (Doc. 241)("Addendum").  In the Addendum, the United

States notes that, in its Response, it references an exhibit that it fails to attach to the Response.  See

Addendum at 1.  The United States attaches the exhibit in question -- the transcript of the plea

hearing in front of Magistrate Judge Molzen -- to the Addendum.  See December 7 Tr.

> **5.**      **The Reply**.

Streett replies to the United States.  See Reply in Support of First Motion to Withdraw Plea

and/or, in the Alternative, for Rejection of Plea Agreement, filed March 24, 2021 (Doc.

244)("Reply").  In the Reply, Streett contends that the United States' Response "focuses on the

plea agreement itself, but fails to address the fact that the plea colloquy also failed to contain

sufficient facts," and that the United States "incorrectly claims, in essence, 'no harm, no foul.'"

Reply at 1 (no citation for quotation).  Streett argues that there "certainly is harm," including harm

"to the procedural requirements of Rule 11," harm to Streett's rights, and "harm to the basic

concept of fundamental fairness."  Reply at 1.

In the Reply, Streett makes four arguments.  See Reply at 2-11.  First, Streett contends that

the Criminal Complaint and Indictment do not provide a sufficient rule 11(b)(3) factual basis,

because the United States' argument is "that if the indictment includes rote recitation of the

elements of an offense, any plea will necessarily be supported by a sufficient factual basis."  Reply

at 2.  Streett reiterates his contention that that the Criminal Complaint and the Indictment do not

contain a sufficient factual basis that Streett possessed prepubescent child pornography.  See Reply

at 2.  Streett alleges that the United States argues that the Indictment's factual basis is sufficient,

and maintains that, if the United States' argument were correct, then rule 11(b)(3) "would *always*

be met and thus would be completely superfluous."  Reply at 3 (emphasis in original).  Streett

contends that the United States requested additional factual record to satisfy rule 11(b)(3) for the

Indictment's Counts 5, 6, and 7, and that, consequently, there is insufficient basis for Count 11. See Reply at 5.

Second, Streett argues that the record does not contain a sufficient independent factual basis to support the Indictment's Count 11.  See Reply at 5.  Streett contends that the Plea Agreement "contained a very specific factual basis purportedly as to" Count 11, notably a reference to a very specific image of a minor allegedly engaging in sexually explicit conduct, but, Streett alleges, the image's description does not state that the minor is prepubescent.  Reply at 5. Streett notes that, at the plea hearing, Magistrate Judge Molzen "directed specific inquiry to Mr. Streett as to the factual basis for each count included within" his Plea Agreement, and that the United States represented only that one image depicts child pornography, and not prepubescent child pornography.  See Reply at 6.  Streett contends that, when he was asked about the image, he "expressed that he had no reason to doubt that it depicted a minor in sexually explicit conduct" and that he "had no specific familiarity with the image in question."  Reply at 6.  Consequently, Streett asserts that this one image is the sole basis for the Indictment's Count 11, and that this basis is not sufficient to satisfy rule 11(b)(3).

Third, Streett argues that there is sufficient justification to withdraw from the Plea Agreement or for the Court to reject the Plea Agreement.  See Reply at 6.  Streett notes that he has "not located a Tenth Circuit opinion that specifically addresses whether a failure of sufficient factual basis under Rule 11(b)(3) is a 'fair and just' reason for withdrawal under Rule 11(d)," but that rule 11(b)(3)'s "plain language" indicates that failing to comply with rule 11(b)(3) "necessitates withdrawal and/or rejection of a plea, and other circuits that have addressed the argument have found that a violation of rule 11(b)(3) is a 'fair and just' reason for withdrawal." Reply at 6 (no citation for quotation).  Streett offers United States v. Prillman, 312 F. App'x 561,

562 (4th Cir. 2009), United States v. Lambey, 974 F.2d 1389, 1394 (4th Cir. 1992)(en banc), United States v. Van Doren, 800 F.3d 998, 1001 (8th Cir. 2015), and United States v. Heid, 651 F.3d 850, 856 (8th Cir. 2011), as examples of other United States Courts of Appeals concluding that an inadequate factual basis under rule 11 constitutes a fair-and-just reason to withdraw from a plea agreement. See Reply at 7. Moreover, Streett asserts that, although the Court need not examine the factors in United States v. Black, 201 F.3d at 1299-1300, those factors support Streett's contention that he is permitted to withdraw from his Plea Agreement, because Streett never admitted that he possessed prepubescent child pornography, his plea was neither knowing nor voluntary, he "misapprehended the plea itself despite any efforts of counsel," and prejudice to the United States is minimal. Reply at 7-8.

Fourth, Streett argues that the Indictment's Count 11 cannot be separated from the Plea Agreement as a whole. See Reply at 10. Streett alleges that the United States' argument that "any error as to Count XI should be brushed aside by the Court because . . . it would benefit the Defendant if the total exposure were lower" "fails to recognize the reality of the factors that go into any defendant's decision to enter into a plea agreement." Reply at 10. Streett asserts that, under these "unique circumstances," it is "not appropriate to parse out a single count, or to alter a count within the plea agreement, as the Government seems to suggest," because doing so would "entirely change the deal." Reply at 10. According to Streett, there is "no way of knowing whether those altered pressures would have resulted in an amended bargain," and that the Court "should not make such conjecture." Reply at 10. Consequently, Streett maintains that the Court should permit him to withdraw from his Plea Agreement. See Reply at 10-11.

### 6. **The Hearing.**

The Court held a hearing on May 12, 2021. See Clerk's Minutes, filed May 12, 2021 (Doc.

256).  The hearing began with the Court asking whether Streett waives his attorney-client privilege, because Streett filed a Second Motion to Withdraw Plea, and/or, in the Alternative, for Rejection of Plea Agreement, filed April 2, 2021 (Doc. 247).[5]  See Tr. at 3:16-20 (Court).  Streett indicated that waiver may be necessary "if we do get to the second motion," but the Court told Streett not to "play games with me," so Streett stated that he waives attorney-client privilege for his claims.  Tr. at 3:22-4:4 (Linnenburger, Court, Streett).  The United States noted that Streett's verbal waiver satisfies the United States.  See Tr. at 4:7-10 (Mease).  The Court asked Streett whether he understands that, by waiving attorney-client privilege, there "will be no limitations on the Government's cross-examination of you."  Tr. at 4:11-15 (Court).  Streett stated that he understood.  See Tr. at 4:16 (Streett).  The Court asked Streett about his waiver of rule 410 of the Federal Rules of Evidence, observing that Streett likely read carefully everything in his Plea Agreement before signing it.  See Tr. at 4:17-22 (Court).  Streett stated that he did not see the Plea Agreement before the morning when he signed it and that he does not know what a "410 waiver" is.  Tr. at 5:2 (Streett).  The Court then explained what the 410 waiver is, noting that Streett waived his protection against having his statements made in a plea colloquy and in his Plea Agreement against him.  See Tr. at 5:8-16 (Court).  The Court told Streett that, "if you withdraw from this plea agreement, if I let you withdraw from this plea agreement, that jury is going to hear everything that you said to the magistrate judge that you put in your plea agreement."  Tr. at 5:16-20 (Court).  The Court asked Streett if he understands what it means "to have the defendant's statements at the plea colloquy and in the plea agreement used against you."  Tr. at 5:20-23 (Court).  Streett stated

---

[5]Streett has since decided to withdraw his Second Motion to Withdraw Plea, and/or, in the Alternative, for Rejection of Plea Agreement, filed April 2, 2021 (Doc. 247), so the Court does not consider it.  See Clerk's Minutes at 1, filed May 12, 2021 (Doc. 256).

that he has "never experienced that before" and that "I'm guessing [the jury] will consider [the statements]." Tr. at 5:24-6:7 (Court). The Court stated that the "jury is going to hear those statements," and asked Streett whether he understands that if "you withdraw from the plea and go to trial they're going to hear everything you said to the magistrate judge and everything you agreed to in the plea agreement." Tr. at 6:18-23 (Court). Streett stated "yes," but that he still wants to withdraw from his plea agreement. Tr. at 6:24-7:15 (Court, Streett).

The Court asked Streett why he wants to withdraw from his Plea Agreement, see Tr. at 7:16 (Court), noting that Streett's Plea Agreement "had some things that are favorable to you" and that it might be "pretty ugly if you're convicted," because "all the charges are back in place," Tr. at 8:1-8 (Court). Streett responded that the "Form 13 that was presented in advance of the plea was [for] all 12 charges [and they stay] in place, no reduction for acceptance of responsibility, at a level 43," but that he "took responsibility and entered into a plea that level went up to a 50 with the 3 point reduction . . . for acceptance of responsibility, and no charges removed." Tr. at 8:12-18 (Streett). According to Streett, the Plea Agreement "put me in what seems like a worse position than I was with all 12 charges in place at a level 43." Tr. at 8:18-20 (Streett). The Court noted that "a Form 13 doesn't bind anybody" and that "[w]hat binds everybody is the PSR." Tr. at 8:21-24 (Court). The Court asked the United States and Streett if there is "[a]nything else you want me to say or anything else as far as a colloquy you want either on the scope of cross-examination, which Mr. Streett said would be unlimited, or [on] the 410 issue." Tr. at 9:22-10:1 (Court). Neither the United States nor Streett had anything to add. See Tr. at 10:2-14 (Mease, Court, Linnenburger).

Streett noted that he has not raised a factual innocence claim beyond the "very specific element within count 11, which was the inclusion of [prepubescence]." Tr. at 10:23-11:1 (Linnenburger). Streett stated that he is arguing that, although he "spent the first few years of this

case attempting to assert his innocence through legal means," Streett is not asserting that he is innocent factually except regarding Count 11's specific allegations.   Tr. at 11:23-24 (Linnenburger).  Streett indicated that he argues that, in fact, he never looked at photographs of children under the age of twelve.  See Tr. at 12:2-8 (Court, Linnenburger).  The Court asked how this assertion could be true, given that he "pled guilty to count 11 because he was in fact guilty." Tr. at 12:12-13 (Court).  Streett argued that "it was a misunderstanding as to what it was that would qualify for a conviction [under] count 11."  Tr. at 12:18 (Linnenburger).

The Court noted the difficulty with Streett's position, observing that Streett took his Plea Agreement knowingly in front of Magistrate Judge Molzen, and that "it's a little hard [for] right at the moment to say yes, I'll limit the cross-examination because he's now raising an in fact not guilty, an innocence defense."   Tr. at 13:12-15 (Court).   The Court observed that, if cross-examination is limited to "whatever he said to his counsel and what his counsel said to him," then "that's wide open."  Tr. at 14:6-10 (Court).  Streett argued that he is "not saying that we are not making a factual innocence claim as to the other counts" in the Plea Agreement.  Tr. at 15:1-3 (Linnenburger).  Streett stated that he should be permitted to withdraw from the Plea Agreement, or that the Court should reject the entire Plea Agreement, because "there is not [a] mechanism to . . . remove a count from a plea agreement."  Tr. at 15:14-16 (Linnenburger).  Streett contended that it is impossible to know whether Streett would have accepted the Plea Agreement without Count 11, or whether the United States would have made a different offer at the time.  See Tr. at 16:1-6 (Linnenburger).

The Court suggested that it "see how it goes," because it does not yet know "if the Government is really going to want to get into the innocence or other things as to other counts," and that, if the United States is "going to try to use cross-examination to establish the factual basis

of those other counts then it's more of a [live] issue." Tr. at 16:7-16 (Court).  The United States

argued that it is "entitled to go into the additional counts if Mr. Streett elects to take the stand."

Tr. at 16:17-19 (Mease).  The United States proposed that the inquiry begin with "trying to figure

out whether there will be a presentation of evidence and then we can discuss the scope of cross-

examination." Tr. at 17:16-19 (Mease).  The United States contended that Streett has "raised this

sort of novel legal innocence claim as to the entire case because he suggested that his efforts to

litigate both the constitutional claim and suppression issues are efforts to assert his legal

[innocence]," Tr. at 18:16-20 (Mease), and that, as a result of this argument, if Street testifies, he

will be "subject to [a] fairly robust cross," Tr. at 19:5-7 (Mease).  The Court stated the issue: Streett

is "not raising an innocence defense," and that Streett wants to limit potential cross-examination

"to pretty much can they ask any question on count 11, [because] that's the one he's claiming

innocence on," but that, as to the other counts, Streett argues that "he should not be cross-examined

on the actual guilt or innocence of those because he's not contesting those."  Tr. at 20:16-21:4

(Court).  The Court concluded that its "preliminary ruling" is that "[e]ven if I don't use 104 I still

have discretion to limit" the cross-examination, and that, "as long as he takes the position that he's

not changing his view on or position on guilt or innocence as to the other counts, I can . . . limit it

and will so that the Government can only inquire without restrictions in cross-examination on

count 11." Tr. at 22:5-12 (Court).  Both the United States and Streett noted that they understand

the Court's ruling.  See Tr. at 22:18-23:17 (Mease, Court, Linnenburger).

The hearing then turned to the Motion.  See Tr. at 24:8 (Linnenburger).  Streett argued that

the United States' response is "overcomplicating things," so he wants to "boil [it down]" to three

issues. Tr. at 24:13 (Linnenburger).  First, Streett argued that the presence of an image containing

a minor who appears to be prepubescent engaged in illicit activity is a necessary element of proof

to support a factual basis under rule 11.  <u>See</u> Tr. at 24:14-24 (Linnenburger).  Second, Streett contended that there must be a sufficient "factual basis on the record to show that the particular image contained within the plea agreement and orally . . . involved a prepubescent minor."  Tr. at 25:1-4 (Linnenburger).  Third, Streett asserted that, if "we get past one and two," then the question is "does that then taint the entire" Plea Agreement?  Tr. at 25:4-6 (Linnenburger).

Streett contended that the United States has conceded that "prepubescent was what I would call a necessary element of the offense such that it would require" an independent factual basis to satisfy rule 11.  Tr. at 25:9-10 (Linnenburger).  According to Streett, on page six of the United States' Response, the United States concedes that "the record must support a factual basis for the depiction of prepubescent minor."  Tr. at 25:24-25 (Linnenburger).  Streett argued that it cannot be the case that, by taking a plea agreement and engaging in a plea colloquy, a defendant is "accepting the charges within the charging document," which "satisfies the Rule 11 requirement for a factual basis," because, if that were correct, "the requirement for a factual basis to find that a defendant actually committed an offense would be superfluous."  Tr. at 26:23-27:4 (Linnenburger).  Streett contended that this case "really drives that point home" and that "this is one of those instances that require that there be a factual basis to ensure that a defendant has actually committed the offense."  Tr. at 27:13-15 (Linnenburger).  According to Streett, there is not a sufficient independent factual basis to support the contention that he possessed prepubescent child pornography.  <u>See</u> Tr. at 27:18-28:10 (Linnenburger).  Streett asserted that, although the Plea Agreement states that it "contains the language transferred over from the indictment as to count 11," which "contains the word" prepubescent, it "does not specify an image" and is just "a rote recitation of the elements of the offense which is the same as what indictment contains."  Tr. at 28:7-12 (Linnenburger).  Streett noted that the Plea Agreement "does indicate a very specific

image," but argued that it "does not indicate that the image involved a prepubescent minor."  Tr. at 28:15-17 (Linnenburger).  According to Streett, during his plea colloquy, Streett "mentioned that while he was unfamiliar with the title of that image, that he had no [reason] to doubt that it contained child pornography."  Tr. at 28:22-25 (Linnenburger).  Streett asserted that the United States "viewed the image" and that, according to the United States, the image "appear[s] to contain child pornography," but that there is "no mention of the age of the individual outside of use of the term minor."  Tr. at 29:1-8 (Linnenburger).  Moreover, Streett contended that "at a different section of the factual basis there was a clarification to remove the term prepubescent from the factual basis," and that it "appears from the plea agreement itself that that was done in open Court because it is crossed out and initialed."  Tr. at 29:8-13 (Linnenburger).  Streett argued that, "under the circumstances[,] there does not appear to be anything on the record indicating that the . . . specific image identified in the plea agreement and/or any image contained or address a prepubescent" minor.  Tr. at 29:13-17 (Linnenburger).

Streett asserted that "the magistrate did not conduct an inquiry as to prepubescent."  Tr. at 29:24-25 (Linnenburger).  Streett noted that "the magistrate judge did ask specifically if Mr. [Streett] agreed with . . . all facts that are set forth in the count 11 admission of facts," and that "while he did admit to the bolded portion, . . . those facts do not support a finding that the image" is of a prepubescent minor.  Tr. at 30:6-12 (Linnenburger).  Streett contended that the "only place where the word 'prepubescent' appears is "within the indictment itself and then transferred into the plea agreement which the charges in the indictment."  Tr. at 30:16-19 (Linnenburger).  According to Streett, the United States had ample opportunities to ensure there was a record to support a rule 11 finding to support Count 11, but the United States never did so.  See Tr. at 30:21-32:4 (Linnenburger).  Streett argued that the United States never "clarified" whether "there was

any involvement of any individual who was under the age of 12 and or [was] prepubescent." Tr. at 31:23-32:2 (Linnenburger). Streett contended that, instead, the United States focuses on "the no harm no foul argument." Tr. at 32:4-6 (Linneburger). According to Streett, there is an insufficient independent factual basis for Count 11, and, because the Court and parties cannot know whether the Plea Agreement would have been offered or accepted without Count 11, the Court must either permit Streett to withdraw from the Plea Agreement or reject the Plea Agreement. See Tr. at 32:6-34:14 (Linnenburger).

The Court then gave Streett a chance to speak. See Tr. at 34:16-18 (Court). Streett stated that he "had a chance to thoroughly read" the Plea Agreement, but that he "never saw that before the morning it was hand[ed to] me in Court." Tr. at 34:20-23 (Streett). The United States interjected to request that Streett be sworn in before stating his recollection of the plea hearing." Tr. at 34:24-35:4 (Mease). The Court did not put Streett under oath, noting that it understands the United States' position, but that Streett should finish his statement before "I can figure out what to do with it." Tr. at 35:7-8 (Court). Streett clarified that he "never saw the entire plea itself until the morning I signed it." Tr. at 35:15-16 (Streett).

The Court asked Streett what would have caused Streett to hesitate signing the Plea Agreement had he seen it earlier. See Tr. at 35:21-23 (Court). Streett stated that he is "not sure" why he signed the Plea Agreement and proceeded with the plea colloquy. Tr. at 36:4 (Streett). Streett stated that, if he "had a chance to look at it and sleep . . . on it," he would have asked his attorney to "clarify some things" and "ask possibly for some changes," because what he admitted to Magistrate Judge Molzen, and what is alleged in the Indictment and incorporated into the Plea Agreement, is "not me from my perspective stating that's what I did." Tr. at 36:21-3 (Streett). Streett asserted that the plea process was "rushed through very quickly." Tr. at 37: 13-14 (Streett).

The Court stated that it is "not sure I understand that," because "you've got a counsel that's parsing the language of this plea agreement, [but] you're saying you didn't even read it." Tr. at 37:16-22 (Court). Streett responded that he "read it that morning in about a 20 minute period," and that, when the Plea Agreement was "placed in front of me[,] the attorney said read it[,] he had me sign page 18 acknowledging that I read[,] it discussed it with him[,] and signed it and that's what he asked me to do[,] that's what I did." Tr. at 37:24-38:2. The Court observed that "now you say you read it," and again asked Streett "what would have caused you to say no, I don't want [to] plead guilty," and that "I don't want to sign this." Tr. at 38:3-5 (Court). Streett stated that what would have caused him not to sign the Plea Agreement was "some of the things included in there I stated from the . . . beginning some of the charges I absolutely did not do [and] absolutely did not want to plead guilty to." Tr. at 38:6-9 (Streett).

The Court then asked the United States if its appellate attorneys are "ready to defend the plea agreement, the plea colloquy and not [get to] the Tenth Circuit and confess error on any aspect of that." Tr. at 38:15-28 (Court). The United States indicated that it is ready to defend the Plea Agreement in the United States Court of Appeals for the Tenth Circuit, if necessary. See Tr. at 28:29-15 (Mease). The Court then asked the United States to clarify a point in the plea colloquy transcript when "prepubescent was . . . crossed." Tr. at 40:12 (Court). The United States noted that the Court is referring to Count 8, the factual basis for which "does not relate to" Count 11's factual basis. Tr. at 40:16 (Court). The Court then asked the United States what its strongest argument is that Streett pled to "the images being of children less than 12" years old. Tr. at 41:7-8 (Court). The United States responded that it "can't really point the Court to a single argument because there are several factors," but that there are three "main areas to reach the conclusion that a sufficient factual basis" exists for Count 11. Tr. at 41:11-15 (Mease). The United States noted,

first, that the Indictment contains all the necessary elements, of which the existence of photographs of prepubescent minors is one.  See Tr. at 41:15-42:5 (Mease).  The United States noted, second, that, during the plea colloquy, Magistrate Judge Molzen covered "both the elements and the penalties" of all the Plea Agreement's counts, and that, at the plea colloquy, the United States "specifically said that production of such visual depiction involved a [prepubescent] minor engaged in sexually explicit conduct," and described "the maximum penalties," including the twenty-year imprisonment term, which is triggered when the images are of prepubescent minors. Tr. at 42:14-25 (Mease).  The United States argued that, at the bottom of page sixteen of the plea colloquy hearing transcript, Magistrate Judge Molzen asked Streett if he understands Count 11's elements, and "Mr. Streett said yes."  Tr. at 54:5 (Mease).  The United States then made its third point -- the "overlap between the plea agreement and the plea colloquy."  Tr. at 43:8-9 (Mease). The United States contended that the contents on the Plea Agreement's eighth and ninth pages discuss a Macbook laptop, which is at issue in Count 11, contains child pornography, but that "there is a specific image" at issue.  Tr. at 43:25 (Mease).  The United States contended that this image is one of the files that Streett reviewed in August, 2015, with the Federal Bureau of Investigation, and that Streett "admits to previously seeing that image."  Tr. at 44:11-12 (Mease). Moreover, the United States argued that, in the Plea Agreement, Streett admits that the United States can prove "facts sufficient to establish my guilt of the offenses to which I am pleading guilty beyond a reasonable doubt that would include count 11," and, specifically, "including any facts alleged in the superseding indictment that increase the statutory minimum or maximum penalties." Tr. at 45:4-10 (Mease).  The United States noted that it brought a copy of the image at issue to the hearing and that it can present it to the Court, contending that it is "clearly a prepubescent minor and that I can get into the specifics about factually why it is a prepubescent minor."  Tr. at 45:19-

21 (Mease).   The United States reiterated that "this is an image Mr. Street viewed [and] acknowledged on page [eight and nine] of the plea agreement that he had looked at."  Tr. at 45:21-24 (Mease).

The United States contended that, on page thirty-eight of the plea colloquy's transcript, Magistrate Judge Molzen "turned to count 11 and said what makes you guilty of this crime," to which Streett responded: "I was in possession of all of the [aforementioned] images, and the [images] which were on my computer[,] my [Macbook]."  Tr. at 46:13-17 (Mease).   The Court asked to what Streett was referring when he says "aforementioned images."  Tr. at 46:25 (Court). The United States stated that Streett was "referring to the discussion that was had moments before," on page thirty-nine of the transcript, which shows that Streett viewed the specific image at issue. Tr. at 47:3-4 (Court).  According to the United States, the Court must "look at all three" statements together, including "statements made throughout this hearing, both in acknowledgment to the United States . . . that this computer dealt with prepubescent minors, the fact that the defendant acknowledged possessing the [aforementioned] image on his [Macbook] and acknowledged seeing that image, and his attorney had seen that image just before" Streett signed the Plea Agreement, meaning that Streett's attorney "was therefore able to advise him on that."  Tr. at 47:23-48:5 (Mease).   The United States argued that, when viewed together, these factors "absolutely [establish] a sufficient factual basis that count 11 was dealing with prepubescent minors."  Tr. at 48:6-8 (Mease).

The United States provided the image to the Court, noting that "I don't know that the Court even need[s] to look at" it, because Streett "acknowledged under oath that he had seen that image although it had been many years at that point [since] he's seen it."  Tr. at 48:19-23 (Court).  The Court accepted the image.  See Tr. at 48:24-25 (Court).  The United States then described the

image for the record, noting that "I don't want to be too graphic." Tr. at 49:1-2 (Mease). The United States stated that "what you're going to see is a brief file log at the top of the page which identifies the file name which you can reference as part of the plea," and that there "is a file path, which indicates that this was on the desktop of the [Macbook] under the mirror selfies . . . folder created by Mr. Streett." Tr. at 49:5-11 (Mease). The United States noted that it does not know whether the Court "is familiar with the Tanner stages[,[6] but the child has absolutely no pubic development," noting that the child's "labia is not developed and there is no clitoral hood and her hands are not developed and it is clear in the image that it's . . . a prepubescent image." Tr. at 49:11-16 (Mease). The United States offered to show the image to Streett's attorney before giving it to the Court. See Tr. at 49:16-18 (Mease). The Court noted that will take possession of the photograph, noting that "there will be copies, it will stay in the file and I'll return it to" the United States "at some point." Tr. at 50:5-6 (Court). The parties chose to mark the image as Exhibit 1 for the hearing. See Tr. at 50:14-51:2 (Court, Mease, Linnenburger). The United States concluded its remarks, asserting that "what's happening here is the defendant is attempting to gloss over his own sworn statements." Tr. at 51:11-12 (Mease). The United States asserted that Streett "is not a shy man," observing that "we've seen him contradict the United States," as well as his own attorney and the Court, during hearings. Tr. at 52:3-4 (Mease). According to the United States, there is "just no evidence here to suggest that Mr. Streett when presented with . . . this plea agreement and this very solemn hearing in federal court would not let the Court know if there were

---

[6]The Tanner Scale, also known as the Tanner stages or the Sexual Maturity Rating (SMR), is a "scale of physical development in children, adolescents and adults," which "defines physical measurements of development based on extern primary and secondary sex characteristics, such as the size of the breasts, genitals, testicular volume and development of pubic hair." Wikipedia, Tanner Scale, https://en.wikipedia.org/wiki/Tanner_scale (last visited March 21, 2022).

an issue." Tr. at 52:6-9 (Mease). The United States reiterated that there is "no reason" for the Court to invalidate the entire Plea Agreement "when we're talking about a secret world of evidence here that defendant admitted to seeing, counsel admitted to seeing, the court now has before it and the defendant made the admissions through the plea hearing that he admitted to [possessing] the image." Tr. at 52:24-53:4 (Mease).

The Court asked the United States what the "real world impact" is of the debate about whether Count 11 properly includes prepubescent child pornography. Tr. at 53:11 (Court). The United States argued that Count 11 "groups with the other offenses so it's a complete wash as far as the guidelines analysis is concerned," and that the "only thing it would do is impact the statutory maximum for count 11, which is 20 years with prepubescent and 10 years without." Tr. at 53:20-22 (Mease). The Court asked "what happened between the Form 13 and the PSR" to give rise to a different calculation under the United States Sentencing Guidelines. Tr. at 53:23-24 (Court). The United States contended that there was "confusion between the interplay between the guidelines at that point [and] the statutory maximum because he's off the charts as far as his offense level," and posited that "at first probation was trying to calculate the number of months without properly factoring in the statutory maximum if everything was imposed consecutively." Tr. at 54:5-11 (Mease). The United States stated that Streett's guideline range decreased from the Form 13 to the PSR, because "the Form 13 was just this astronomical number of months that everyone sort of was a little confused about how that number was reached." Tr. at 54:24-55:1 (Mease). The Court observed that the "bottom line is the [Form] 13 was estimating a much higher guideline range than the statutory maximum and what the PSR ended up doing." Tr. at 55:12-15 (Court). The United States agreed and argued that we "don't know what his analysis would be for a plea for all of the counts identified in the second superseding indictment." Tr. at 55:24-56:1 (Mease).

Streett then declined an opportunity to address the Court again, so Streett's lawyer responded. See Tr. at 56:9-16 (Court, Streett). Streett noted that he does not object to the United States' request to enter Exhibit 1 into the record, but argued that the Court "need not and it cannot be part of the consideration as to whether or not Rule 11 was satisfied in this case." Tr. at 56:21-23 (Linneburger). Streett then argued that, to make a rule 11 determination, the Court can consider only information to determine "'whether a factual basis for the plea continues to exist.'" Tr. at 57:6-7 (Linnenburger)(quoting United States v. Landeros-Lopez, 615 F.3d 1260, 1263-64 (10th Cir. 2010)). Moreover, Streett contended that United States v. Landeros-Lopez "makes a distinction between a plea that has been accepted already, which in this case it was." Tr. at 57:8-10 (Linneburger). According to Streett, the "key factor that this Court need[s] to look [at is] was there a sufficient factual basis as of the [plea] hearing" and that the plea hearing's discussion "does not include reference to prepubescent minors." Tr. at 57:17-58:1 (Linnenburger). Streett asserted that United States v. Landeros-Lopez requires the Court not to consider the image entered as Exhibit 1, because the "contents of the image itself do not change the analysis that is relevant to the questions we are examining today." Tr. at 58:12-14 (Linnenburger). Streett concluded his argument by noting that the Form 13 is not relevant, because "what matters under Rule 11 is the statutory penalties," and that, at the plea hearing, he "did not . . . specifically admit to in his own words possession of prepubescent child pornography, which carries a maximum of 20 years." Tr. at 58:24-59:7 (Linnenburger). Streett asserted that "it really boils down to [whether the Court] accept[s] the rote recitation of the elements [of] an offense in an indictment [is] sufficient to satisfy Rule 11" and that, "if it is, then the plea colloquy does that" and "the plea agreement does contain that." Tr. at 59:13-17 (Linnenburger). Streett argued that "under Rule 11 we require that there be some sort of factual basis to support that outside of just recitation of the elements of an offense

within the indictment."  Tr. at 59:20-23 (Linnenburger).

The Court stated that it had a similar situation in a different case, when a plea colloquy never mentioned that, by pleading guilty, a defendant waived his jury-trial rights, but the defendant believed that he could plead guilty and still have a jury trial.  See Tr. at 59:25-60:9 (Court).  The Court noted that the Tenth Circuit had no issue with that situation and that "we're kind of at the same situation," observing that there is an "indictment [which links to] the plea agreement [and] there is enough [linking to] . . . the plea colloquy to the indictment."  Tr. at 60:11-14 (Court).  The Court stated that the "elements that are there. . . put the defendant on notice that he was pleading to the indictment and to the elements that were listed there, and then specifically the factual basis linked specifically to a picture," whose possession "Streett plead guilty to."  Tr. at 60:15-20 (Court).  The Court stated: "I think there is enough factual basis," and "I think there was enough of a colloquy, enough in the plea agreement to put him on notice that . . . what was occurring [was that] he was pleading to these pictures as part of count 11."  Tr. at 60:24-25 (Court).  The Court stated that "I'm going to deny the first motion to allow him to withdraw," noting that "there is enough here to put him on notice so I'll deny the motion."  Tr. at 60:24-61:6 (Court).

After a lunch break, Streett stated that he does not want to pursue his Second Motion to Withdraw Plea, and/or, in the Alternative, for Rejection of Plea Agreement, filed April 2, 2021 (Doc. 247).  See Tr. at 63:15-9 (Linnenburger).  After discussing scheduling and sentencing, see Tr. at 63:4-67:24 (Court, Mease, Linnenburger), Streett stated that he wants to restore his attorney-client privilege, See Tr. at 68:6-9 (Streett).  The United States stated that, if Streett is not testifying and is withdrawing his Second Motion to Withdraw Plea, and/or, in the Alternative, for Rejection of Plea Agreement, filed April 2, 2021 (Doc. 247), it does not "see any need for the waiver to continue," Tr. at 68:18-18 (Mease).  The Court noted that it likely will make no difference, because

there are "some things in the briefing that somebody might argue you waived just by simply filing this motions and some of the things you've said in there and otherwise," that it "won't force the Government to make that decision right this minute," and that "I'm hard pressed to figure out how anybody would have any interest in using anything."  Tr. at 68:22-69:4 (Court).

The United States then stated that it sees "value in the waiver continuing at least for the duration until sentencing at least," because, should Streett choose to send a letter to the Court to otherwise make statements that "could be contradicted by prior counsel, I don't want to be limited in my ability to communicate with counsel [in] an effort to understand any allegations that are made." Tr. at 69:10-16 (Mease).  The Court stated that it would "leave it where it is," but reminded Streett that he should be cautious "about talking to me, sending me pro se letters, sending pro se briefs, because you know, you run a risk of waiving."  Tr. at 69:17-22 (Court).  The Court noted that Streett may have waived some of his attorney-client privilege, but cautioned Streett not to "open the door" or to "give them some reason to drive a truck [through] it."  Tr. at 69:3-4 (Court).  Streett then stated that he understands "that the statements that I have made here in Court are not privileged so I understand that those can be discussed."  Tr. at 69:16-18 (Streett).  Before the hearing concluded, Streett acknowledged that the United States returned the exhibits that Streett had used for his Second Motion to Withdraw Plea, and/or, in the Alternative, for Rejection of Plea Agreement, filed April 2, 2021 (Doc. 247), and thanked the United States for not reviewing them, see Tr. at 71:7-11 (Linnenburger).

## LAW REGARDING WITHDRAWAL OF GUILTY PLEAS

Rule 11(d)(2)(B) of the Federal Rules of Criminal Procedure governs a motion to withdraw a guilty plea before the imposition of a sentence.  See Fed. R. Crim. P. 11(d)(2)(B).  Rule 11(d)(2)(B) provides that a defendant may withdraw a plea if "the defendant can show a fair and

just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B).  Defendants do not have

an absolute right to withdraw a guilty plea.  See United States v. Siedlik, 231 F.3d 744, 748 (10th

Cir. 2000).  District courts have broad discretion in determining whether to grant motions to

withdraw pleas.    See   United States v. Wright, 392 F. App'x 623, 627 (10th Cir.

2010)(unpublished)("We review the district court's denial of a motion to withdraw a guilty plea

for an abuse of discretion."); United States v. Garcia, 577 F.3d 1271, 1274 (10th Cir.

2009)("Although a motion to withdraw a plea prior to sentencing should be freely allowed, we

will not reverse unless the defendant can show that the court acted unjustly or unfairly.").  The

Tenth Circuit has repeatedly held that, when a defendant moves to withdraw a guilty plea before

sentencing, the court must assess whether there is a fair and just reason for withdrawal based on

the following factors:

> "(1) whether the defendant has asserted his innocence, (2) whether withdrawal
> would prejudice the government, (3) whether the defendant delayed in filing his
> motion, and, if so, the reason for the delay, (4) whether withdrawal would
> substantially inconvenience the court, (5) whether close assistance of counsel was
> available to the defendant, (6) whether the plea was knowing and voluntary; and
> (7) whether the withdrawal would waste judicial resources."

United States v. Hamilton, 510 F.3d 1209, 1214 (10th Cir. 2007)(quoting United States v. Gordon,

4 F.3d 1567, 1572 (10th Cir. 1993)).  While treated sometimes as an eighth factor, a district court

may properly consider "the likelihood of conviction" when assessing whether to permit withdrawal

of a guilty plea.  United States v. Carr, 80 F.3d 413, 421 n.5 (10th Cir. 1996)(recognizing that the

Tenth Circuit has "suggested an additional factor to consider: the likelihood of conviction")(citing

United States v. Glover, 911 F.2d 419, 421 (10th Cir. 1990)).  Accord United States v. Begaye,

No. CR 10-0456 JB, 2012 WL 119602, at *10 (D.N.M. Jan. 3, 2012)(Browning, J.)("The Court

believes the consideration of likelihood of conviction is relevant here, either in the context of the

two factors of whether withdrawal would substantially inconvenience the Court or waste judicial resources, or as an additional factor.").

The defendant bears the burden of demonstrating a "fair and just reason" for withdrawal of the plea. United States v. Griffin, 191 F. App'x 699, 701 (10th Cir. 2006)(unpublished). In assessing a motion to withdraw a guilty plea, courts should give particular weight to knowing and voluntary statements that the defendant made under oath at the plea hearing. See United States v. Messino, 55 F.3d 1241, 1248 (7th Cir. 1995). In reaching its decision, courts should also remember that "[t]he plea of guilty is a solemn act not to be disregarded because of belated misgivings about [its] wisdom." United States v. Morrison, 967 F.2d 264, 268 (8th Cir. 1992). While the right to withdraw a guilty plea before sentencing, therefore, is not absolute, the court should allow relief when the defendant can show a fair and just reason for withdrawal. See United States v. Jim, No. CR 10-2653 JB, 2011 WL 6013093, at *6-7 (D.N.M. Nov. 22, 2011)(Browning, J.).

In United States v. Harmon, 871 F. Supp. 2d 1125 (D.N.M. 2012)(Browning, J.), the Court determined that a defendant had not shown a fair and just reason for withdrawing his guilty plea. See 871 F. Supp. 2d at 1176. The defendant did not assert his innocence, but, rather, asserted that the evidence against him should have been suppressed. See 871 F. Supp. 2d at 1138-39. The defendant requested that the Court reconsider its previous decision to admit the evidence against him. See 871 F. Supp. 2d at 1138-39. The Court denied the request for reconsideration, and determined, therefore, that the defendant had not presented a fair and just reason for withdrawing his guilty plea, as the United States possessed the same evidence to convict him as it did when the defendant pleaded guilty. See 871 F. Supp. 2d at 1171-75. In United States v. Begaye, the Court applied the Tenth Circuit's seven factors, and determined that the defendant failed to present a fair and just reason for withdrawing his guilty plea. See United States v. Begaye, 2012 WL 119602,

at *8-12.  The defendant asserted that he might have a self-defense argument, but the Court found

that he had not made a credible assertion of innocence, and determined that a slim possibility of

acquittal was not a fair and just reason for allowing the defendant to withdraw his plea.  See 2012

WL 119602, at *8-12.  In United States v. Jim, the Court permitted a defendant to withdraw his

plea of guilty, because the defendant expressed that he did not understand that he waived his right

to proceed to trial by entering into a plea agreement, and Magistrate Judge Puglisi did not use the

word "trial" during the plea colloquy.  2011 WL 6013093, at *13.  The Court allowed Jim to

withdraw his plea, even though the plea agreement included a waiver of Jim's right "to have a trial

by jury."  Plea Agreement ¶¶ 2(c), 3, at 1-2, filed in Case No. CR 10-2653 JB on February 28,

2011 (Doc. 25).

## LAW REGARDING THE KNOWING-AND-VOLUNTARY STANDARD FOR GUILTY PLEAS

A defendant's guilty plea must be knowing and voluntary.  See United States v. Libretti,

38 F.3d 523, 529 (10th Cir. 1994).  To enter a plea that is knowing and voluntary, a defendant

must have "a full understanding of what the plea connotes and of its consequence."  Boykin v.

Alabama, 395 U.S. 238, 244 (1969).  A defendant must understand the "direct consequences" of

his plea, United States v. Hurlich, 293 F.3d 1223, 1230 (10th Cir. 2002), and whether the plea

carries a risk of deportation, see Padilla v. Kentucky, 559 U.S. 356, 374 (2010).  If a guilty plea is

not knowing and voluntary, it is void, and any additional waivers in the plea agreement generally

are unenforceable.  See United States v. Mitchell, 633 F.3d 997, 1001 (10th Cir. 2011)(citing

United States v. Gigley, 213 F.3d 509, 516 (10th Cir. 2000)).  The Tenth Circuit has analyzed the

knowing and voluntary nature of a waiver of rights in the context of a waiver of appellate rights,

explaining that "[a] waiver of appellate rights will be enforced if: (1) the disputed appeal falls

within the scope of the waiver of appellate rights; (2) the defendant knowingly and voluntarily waived his appellate rights; and (3) enforcing the waiver would not results in a miscarriage of justice." United States v. Vidal, 561 F.3d 1113, 1118 (10th Cir. 2009)(alteration omitted)(internal quotation marks omitted).  See United States v. Wilken, 498 F.3d 1160, 1167 (10th Cir. 2007); United States v. Sandoval, 427 F. App'x 621, 623 (10th Cir. 2011)(unpublished).

The defendant in United States v. Mitchell argued that the district court's statements that his counsel may have exerted "undue influence" over him rendered his plea involuntary.  633 F.3d at 1001.  The Tenth Circuit holds that the fact that his counsel used "colorful language" -- telling the defendant "'you would be a fool not to take this plea offer!'" -- does not approach a constitutionally suspect level of coercion.  633 F.3d at 1002 (no citation for quotation).  The Tenth Circuit states that, even when pressure from counsel may be "palpable," and a defendant alleges he was "hounded, browbeaten, and yelled at," such pressures do not "vitiate the voluntariness of his plea."  633 F.3d at 1002 (citing United States v. Carr, 80 F.3d at 417 (analyzing voluntariness where counsel called the defendant "stupid" and "a f***ing idiot")).  The defendant in United States v. Mitchell also pointed to the breakdown in communication between himself and his attorney to establish that his plea was not knowing and involuntary.  See 633 F.3d at 1001.  The Tenth Circuit finds this argument similarly unavailing, and concludes that the guilty plea and accompanying plea agreement were knowing and voluntary.  See 633 F.3d at 1002.

In the United States District Court for the District of New Mexico, if a defendant consents to plead guilty before a United States Magistrate Judge, then the Magistrate Judge will conduct the plea colloquy and accept the plea.  See United States v. Ciapponi, 77 F.3d 1247, 1349-50 (10th Cir. 1996)).  "With a defendant's express consent, the broad residuary 'additional duties' clause of the Magistrate Act authorizes a magistrate judge to conduct a Rule 11 felony plea proceeding,

and such does not violate the defendant's constitutional rights." United States v. Ciapponi, 77 F.3d at 1251.  In other words, the Magistrate Judge routinely accepts the guilty plea, because he or she is the one who can visually and audibly determine whether the plea is voluntary, but the Magistrate Judge does not accept the plea agreement, if any.  See United States v. Salas-Garcia, 698 F.3d 1242, 1253 (10th Cir. 2012)(stating that magistrate judges "have the authority to conduct plea hearings and accept guilty pleas," and that, "even if the magistrate judge had deferred acceptance of the plea agreement itself, the magistrate judge accepted [the defendant's] plea for the purposes of Rule 11").  Under the local rules, the "Court will defer a decision on the acceptance or rejection of the plea agreement until the Court has reviewed the presentence report, even in instances where the Court has accepted the guilty plea." D.N.M.LR-Cr. 11.2.  A district judge will sentence the defendant, and, at that time, will accept or reject any plea agreement.

## ANALYSIS

Streett seeks to withdraw from his Plea Agreement, arguing that there is an insufficient independent factual basis for Count 11's requirement that the child pornography is prepubescent child pornography, or, in the alternative, requests that the Court reject the Plea Agreement for the same reason.  See Motion at 1-2.  If a court has accepted a guilty plea, a defendant still may withdraw from their guilty plea if: (i) the court rejects the plea agreement under rule 11(c)(5); or (ii) the defendant demonstrates a fair-and-just reason for requesting the withdrawal.  See Fed. R. Crim. P. 11(d)(2).  There is a sufficient independent factual basis for Streett's Plea Agreement, including Count 11's requirement that the child pornography at issue be prepubescent child pornography, because, in the Plea Agreement, Streett pleads guilty to the facts alleged in the Indictment, and because Streett admits to having viewed and possessed an image that depicts prepubescent child pornography.  Accordingly, the Court will not reject the Plea Agreement under

rule 11(c)(5), and the Court will not permit Streett to withdraw from his Plea Agreement, because Streett does not demonstrate a fair-and-just reason for requesting withdrawal. The Court, therefore, denies the Motion.

## I.   STREETT DOES NOT DEMONSTRATE A FAIR-AND-JUST REASON TO WITHDRAW FROM HIS PLEA AGREEMENT.

First, Streett does not demonstrate a fair-and-just reason to withdraw from his Plea Agreement. If a court has accepted a guilty plea, a defendant still may withdraw from his or her guilty plea if the defendant demonstrates a "fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). Because Streett's reason for requesting withdrawal is that there is not a sufficient independent factual basis to support the Plea Agreement's Count 11, despite Streett pleading guilty to all the facts in the Indictment, and despite Streett admitting, in the plea colloquy, that he possessed an image depicting prepubescent child pornography, Streett does not demonstrate a fair-and-just reason to withdraw from his Plea Agreement.

A defendant requesting withdrawal from his or her plea agreement bears the burden of establishing a "fair and just reason" for requesting withdrawal. Fed. R. Crim. P. 11(d)(2)(B). See United States v. Marceleno, 819 F.3d 1267, 1272 (10th Cir. 2016). In determining whether a defendant presents a fair-and-just reason for withdrawal, courts consider: (i) whether the defendant has asserted his innocence; (ii) whether withdrawal would prejudice the United States; (iii) whether the defendant delayed in filing his motion, and, if so, the reason for the delay; (iv) whether withdrawal would substantially inconvenience the court; (v) whether close assistance of counsel was available to the defendant; (vi) whether the plea was knowing and voluntary; and (vii) whether the withdrawal would waste judicial resources. See United States v. Dominguez, 998 F.3d 1094, 1103 (10th Cir. 2021); United States v. Yazzie, 407 F.3d 1139, 1142 (10th Cir.

2005)(en banc).   Courts should freely allow motions to withdraw a plea agreement before

sentencing.  See United States v. Garcia, 577 F.3d 1271, 1274 (10th Cir. 2009).

Streett argues that the Court should reject his Plea Agreement, because "the factual basis

provided in" his Plea Agreement "and during the plea hearing does not establish possession of

pornographic material involving a 'prepubescent minor' as required by" rule 11.  Motion at 4 (no

citation for quotation).   Streett admits that there is a factual basis that he possessed child

pornography, but argues that there is not a sufficient factual basis that the child pornography

depicts prepubescent minors.  See Motion at 4; Tr. at 28:15-25 (Linnenburger).  According to

Streett, the Court does not need to consider the Tenth Circuit's factors for establishing whether

there is a fair-and-just reason for withdrawing from a plea, because rule 11(b)(3)'s "plain

language" indicates that failing to comply with rule 11(b)(3) establishes a fair-and-just reason for

withdrawal.  Reply at 6.  Streett asserts, however, that, even if the Court considers the Tenth Circuit

factors, Streett still must be permitted to withdraw from his Plea Agreement, because his plea was

not knowing or voluntary "despite any efforts of counsel," and because there is minimal prejudice

to the United States.  Reply at 7-8.

### A.   STREETT DOES NOT ESTABLISH A FAIR-AND-JUST REASON UNDER THE TENTH CIRCUIT'S FACTORS.

Because Tenth Circuit precedent binds the Court, the Court will analyze whether Streett

establishes a fair-and-just reason to withdraw from his Plea Agreement by using the seven factors

laid out in United States v. Dominguez, 998 F.3d at 1103, United States v. Yazzie, 407 F.3d at

1142, United States v. Black, 201 F.3d at 1299-1300, and elsewhere.  Streett does not assert that

he is innocent.  See Reply at 8.  Rather, Streett asserts that he never admits to possessing

prepubescent child pornography.  See Reply at 8-9.  Specifically, Streett contends that he was

"adamant" at his February, 2014, interview and at his October, 2014, interview, that he did not possess prepubescent child pornography. Reply at 8. Streett's contention is confused. According to Streett, although he does not assert his innocence as to the Plea Agreement's other Counts, and does not dispute that he lawfully admitted to possessing child pornography in his Plea Agreement and at the plea colloquy, his statements that he never possessed prepubescent child pornography are accurate, even though he asserted at the same interviews that he never possessed child pornography. See Reply at 8 n.4. In other words, Streett argues that, although he was not truthful about possessing child pornography, the Court should treat his denials that the child pornography was of prepubescent minors differently. Streett offers no justification why the Court should parse out his various statements' veracity, or why the Court should do this parsing in his favor despite Streett's admission at the plea colloquy that he possessed the image that the Plea Agreement specifies, which depicts prepubescent child pornography. See December 7 Tr. at 38:14-40:14 (M.J. Molzen, Streett, Mease, Lopez). Streett's excruciatingly narrow innocence assertion, therefore, does not support permitting him to withdraw from his Plea Agreement.

Streett admits that withdrawal would prejudice the United States and would use judicial resources, because it would require conducting a trial. See Reply at 10-11. Nevertheless, Streett asserts that the Court should afford little weight to these considerations, because there would have been a trial if Streett had never entered into the Plea Agreement. See Reply at 10. Streett's contentions are unavailing, because the United States has expended resources in plea negotiations and in responding to this Motion, and the Court has expended its resources hearing Streett's Motion, taking Streett's plea, and preparing to sentence Streett before he filed his Motion. See Clerk's Minutes, filed November 9, 2021 (Doc. 278). Although the risk of prejudice and expending judicial resources, on their own, should not overcome a showing of a fair-and-just

reason to withdraw -- and are not dispositive here -- they do not weigh in Streett's favor.

Streett contends that his Plea Agreement was not knowing and voluntary, because the facts "as he understood them were not sufficient to support a conviction as charged." Reply at 9. Streett states that he "did not understand the nature of the charge to which he was pleading." Reply at 9. In other words, Streett asserts that he understood to be pleading only to possessing child pornography and not to possessing prepubescent child pornography. See Reply at 9. Streett's argument contradicts his other arguments. For Streett not to have pled knowingly and voluntarily to possessing prepubescent child pornography, he would have to have pled unknowingly or involuntarily to possessing prepubescent child pornography. According to Streett, however, he never pled to possessing prepubescent child pornography -- knowingly, voluntarily, or otherwise. See Motion at 4-10; Reply at 2-11. Moreover, Streett's contention that he understood to be pleading only to possessing child pornography begs the question, because Streett would have to have pled knowingly and voluntarily to all the other counts, and have pled knowingly only to something to which he knowingly pleaded. Streett's argument that he did not plead knowingly and voluntarily to possessing prepubescent child pornography, therefore, does help to establish a fair-and-just reason for withdrawal.

Next, Streett argues that the Court should afford "minimal weight" to the assistance-of-counsel factor. Reply at 9. Streett contends that, while he "had the assistance of counsel and expressed that he had no complaint therewith," Streett nevertheless did not understand to what he was pleading guilty. Reply at 9. Streett stated that he "misapprehended the plea itself despite any effort of counsel." Reply at 9. The Tenth Circuit instructs courts to assess whether "close assistance of counsel was available to the defendant" during their plea process. United States v. Yazzie, 407 F.3d at 1142. Streett does not dispute that he had the close assistance of counsel. See

Reply at 9. This factor does not help to establish, therefore, a fair-and-just reason for withdrawal.

Streett does not address the two remaining factors -- delay in asking to withdraw and inconvenience to the court. See United States v. Yazzie, 407 F.3d at 1142. Streett pled guilty on December 7, 2018. See Plea Agreement ¶ 31, at 17. Streett filed his Motion on January 22, 2021, more than two years after he signed the Plea Agreement. See Motion at 1. Streett does not explain the delay. While the unexplained two-year delay, by itself, is not dispositive, it does not weigh in Streett's favor. Finally, in part because of the unexplained delay, Streett's Motion inconveniences the Court. The Court has sentenced Streett since he filed his Motion. See Clerk's Minutes, filed November 9, 2021 (Doc. 278). Although the Court does not impose ex-post inconvenience from the fact that the Court already has sentenced Streett, the Court was well on its way towards preparing to sentence Streett before he filed his Motion asking to withdraw. The USPO filed the first Presentence Investigation Report on February 14, 2019. See Presentence Investigation Report, filed February 14, 2019 (Doc. 188). The USPO filed the second PSR over eight months later, on October 25, 2019. See Second Presentence Investigation Report, filed October 25, 2019 (Doc. 198). On January 21, 2020, the Court entered a Sentencing Pleadings Scheduling Order noting that PSR objections are due February 14, 2020, any response to PSR objections are due February 28, 2020, a sentencing memorandum is due March 13, 2020, any responses to the sentencing memorandum are due March 27, 2020, and Street's sentencing would take place on April 14, 2020. See Sentencing Pleadings Scheduling Order at 1, filed January 21, 2020 (Doc. 208). The United States Probation Office amended the PSR on October 29, 2020, see Addendum to Presentence Investigation Report, filed October 29, 2020 (Doc. 231), and again on November 4, 2020, see Second Addendum to Presentence Investigation Report, filed November 4, 2020 (Doc. 233). Streett asked to withdraw from his Plea Agreement over two months later, on January 22,

2021.  See Motion at 1.  Inconvenience to the Court should not, and does not, override an otherwise justifiable reason to withdraw from a plea agreement, but Streett's long delay would mean undoing substantial work, and, therefore, the court inconvenience factor does not weigh in Streett's favor.

Under the Tenth Circuit's factors, as articulated in United States v. Dominguez, 998 F.3d at 1103, United States v. Yazzie, 407 F.3d at 1142, United States v. Black, 201 F.3d at 1299-1300, and elsewhere, Streett does not establish a fair-and-just reason to withdraw from his Plea Agreement.  No factor weighs in Streett's favor.  Under the Tenth Circuit's binding standard, therefore, the Court should not allow Streett to withdraw from his Plea Agreement.

**B.  THERE IS NO RULE 11 VIOLATION, SO STREETT DOES NOT ESTABLISH A FAIR-AND-JUST REASON FOR WITHDRAWAL.**

Streett urges the Court to adopt a different standard to assess whether he may withdraw from his Plea Agreement.  See Motion at 4; Reply at 6.  Streett admits that he has "not located a Tenth Circuit opinion that specifically addresses whether a failure of sufficient factual basis under Rule 11(b)(3) is a 'fair and just' reason for withdrawal under Rule 11(d)," but that a rule 11(b)(3) violation plainly constitutes a fair-and-just reason for withdrawal.  Reply at 6 (no citation for quotation).  Streett offers United States v. Prillman, 312 F. App'x 561, 562 (4th Cir. 2009), United States v. Lambey, 974 F.2d 1389, 1394 (4th Cir. 1992)(en banc), United States v. Van Doren, 800 F.3d 998, 1001 (8th Cir. 2015), and United States v. Heid, 651 F.3d 850, 856 (8th Cir. 2011), as examples of other United States Courts of Appeals concluding that an inadequate factual basis under rule 11 constitutes a fair-and-just reason to withdraw from a plea agreement.  See Reply at 7.  If the Court disregarded the Tenth Circuit's standard to assess whether a defendant establishes a fair-and-just reason to withdraw from his or her plea agreement, and instead used Streett's preferred standard, Streett still would not establish a fair-and-just reason for withdrawal.

Streett's citations to United States v. Prillman, 312 F. App'x at 562, and United States v. Lambey, 974 F.2d at 1394, do not support his argument.  In United States v. Prillman, 312 F. App'x at 562, the United States Court of Appeals for the Fourth Circuit noted that a fair-and-just reason under Rule 11 is "'one that essentially challenges . . . the fairness of the Rule 11 proceeding.'" United States v. Prillman, 312 F. App'x at 562 (quoting United States v. Lambey, 974 F.2d at 1394)(alterations in United States v. Prillman).  The Fourth Circuit then goes on to state that, when considering whether to permit a defendant to withdraw a guilty plea, a district court must consider six enumerated factors;  with the exception of combining the court inconvenience factor and judicial resources factor into one factor, the Fourth Circuit's six factors track the Tenth Circuit's seven factors.  See United States v. Prillman, 312 F. App'x at 562 (quoting United States v. Ubakanma, 215 F.3d 421, 424 (4th Cir. 2000)).  Moreover, the Fourth Circuit states that an "appropriate conducted Rule 11 proceeding 'raise[s] a strong presumption that the plea is final and binding.'"  United States v. Prillman, 312 F. App'x at 562 (quoting United States v. Lambey, 974 F.2d at 1394).  The Fourth Circuit concludes that the district court "properly considered" the six considerations when it concluded that the defendant "had not offered credible evidence that his plea was not knowing or voluntary or that he was legally innocent, that the delay between the plea and the motion was substantial," that the defendant "had close assistance of competent counsel, and that withdrawal of his plea would prejudice the Government and waste judicial resources." United States v. Prillman, 312 F. App'x at 562.  The Fourth Circuit notes that the defendant's argument for withdrawing his guilty plea "essentially reflected his dissatisfaction with the sentence he received, rather than a legitimate contention that his guilty plea was not knowing and voluntary." United States v. Prillman, 312 F. App'x at 562.  Although Streett correctly notes that the Fourth Circuit states that establishing a fair-and-just reason under rule 11 means challenging

the rule 11 proceeding's fairness, there is no indication that the Fourth Circuit's standard diverges in any meaningful way from the Tenth Circuit's standard.

Similarly, in United States v. Lambey, 974 F.2d at 1394, the Fourth Circuit states the importance of finality in rule 11 proceedings. See United States v. Lambey, 974 F.2d at 1394. The Fourth Circuit acknowledges that a fair-and-just reason for withdrawing a guilty plea is "one that essentially challenges either the fairness of the Rule 11 proceeding wherein the defendant tenders, and the court accepted, the plea or the fulfillment of a promise or condition emanating from the proceeding." United States v. Lambey, 974 F.2d at 1394. Next, the Fourth Circuit notes, that, if,

> at the Rule 11 hearing, the court specifically warns the defendant of possible results different from those he anticipated because of the prior event or advice, then the defendant bears a heavy burden when attempting to demonstrate that the prior event or advice should form the basis of a fair and just reason for a later withdrawal of his plea.

United States v. Lambey, 974 F.2d at 1394. According to the Fourth Circuit, for an appropriately conducted rule 11 to serve a "meaningful function," it "must be recognized to raise a strong presumption that the plea is final and binding." United States v. Lambey, 974 F.2d at 1394. In other words, the Fourth Circuit's reasoning suggests that if a plea colloquy occurs that "specifically warns the defendant of possible results different from those he anticipated because of the prior event or advice," then there is heavy burden against permitting a defendant to withdraw a guilty plea. United States v. Lambey, 974 F.2d at 1394.

Streett's citations to United States v. Van Doren, 800 F.3d at 1001, and United States v. Heid, 651 F.3d at 856, are more helpful to Streett. In United States v. Van Doren, the United States Court of Appeals for the Eighth Circuit, citing United States v. Heid, 651 F.3d at 856, states that a defendant "may establish a fair and just reason for withdrawing his guilty plea by demonstrating

that his plea is not supported by an adequate factual basis." United States v. Van Doren, 800 F.3d at 1001.  In United States v. Van Doren, the Eighth Circuit concludes that there is a sufficient factual basis in the plea agreement to satisfy rule 11, because "the factual basis of Van Doren's plea suffices to establish the offense charged." United States v. Van Doren, 800 F.3d at 1001.  In United States v. Heid, the Eighth Circuit concludes that the defendant establishes a fair-and-just reason to withdraw from her plea agreement, because "the record contains no basis to reasonably determine that she" had done to what she pled guilty -- a single count of conspiracy to launder money.  651 F.3d at 855.  In reaching that conclusion, the Eighth Circuit examines the record as a whole, including the district court's findings and the presentence investigation report.  See 651 F.3d at 855-56.  To the extent that United States v. Heid, 651 F.3d at 856, supports Streett's argument, it establishes that there can be a rule 11 violation when the record is devoid of factual support for an element of the offense at issue.

Streett's arguments do not persuade the Court.  There is no rule 11 violation, because there is a sufficient independent factual basis to support the Plea Agreement's Count 11.  "To determine whether a factual basis exists for the defendant's plea, the district must compare the conduct admitted or conceded by the defendant with the elements of the charged offense to ensure the admissions are factually sufficient to constitute the charged crime." United States v. Carillo, 860 F.3d 1293, 1305 (10th Cir. 2017).  The plea's factual basis "need not come solely from the defendant's statements at the plea hearing." United States v. Moran, 452 F.3d 1167, 1172 (10th Cir. 2006).  Rather, a district court "'may look to answers provided by counsel for the defense and government, presentence report, "or . . . whatever means is appropriate in a specific case" -- so long as the factual basis is put on the record.'" United States v. Moran, 452 F.3d at 1172 (quoting United States v. Smith, 160 F.3d 117, 121 (2d Cir. 1998)(quoting United States v. Maher, 108 F.3d

1513, 1524-25 (2d Cir. 1997))).  The sufficient factual basis must exist "at the time the plea is made."  United States v. Landeros-Lopez, 615 F.3d 1260 at 1264.

Here, there is a sufficient factual basis to support Streett's plea to the Plea Agreement's Count 11, for possessing prepubescent child pornography.  Streett's strongest argument -- and the one on which he relies -- is his correct observation that the Plea Agreement, in stating Count 11's factual basis, does not state that he possessed prepubescent child pornography.  Rather, the Plea Agreement states only that Streett possessed "numerous images of child pornography," including an image titled BXGk-u-IIAAx3ZX.jpg.  Plea Agreement ¶ 7, at 8.  Elsewhere, however, the Plea Agreement states that Streett pleads guilty to "any facts alleged in the second superseding indictment that increase the statutory minimum or maximum penalty."  Plea Agreement ¶ 7, at 7. Possessing prepubescent child pornography, as opposed to child pornography generally, increases the statutory maximum penalty from ten to twenty years.  See 18 U.S.C. § 2252A(b).  The Indictment alleges that Streett's MacBook -- the same MacBook discussed in the Plea Agreement and at the hearing -- contains "child pornography, that involved prepubescent minors."  Indictment at 6.  Moreover, at the plea colloquy, Streett admits that, for Count 11, he faces "up to a term of 20 years['] incarceration" for producing a "visual depiction [that] involve[s] a prepubescent minor engaged in sexually explicit conduct."  December 7 Tr. at 16:4-9 (Mease).  Streett admits that he possessed and saw the image referenced in the Plea Agreement, BXGk-u-IIAAx3ZX.jpg., the same image given to the Court at the hearing.  See December 7 Tr. at 38:14-40:25 (M.J. Molzen, Streett, Lopez, Mease).  The image depicts prepubescent child pornography.  See FOF 24-25, supra at 13. Moreover, the PSR states that the image depicts "a prepubescent female engaged in sexually explicit conduct."  PSR ¶ 31, at 9.

While the Court is not an expert in puberty or female genital development, the Court

concludes that the victim in BXGk-u-IIAAx3ZX.jpg. is a prepubescent girl.  The Court does not

see any pubic hair.  Even if the Court is in error in its factfinding, however, this imprecision in

cases is the very reason that parties settle -- to avoid the risk of what may come absent a plea

agreement or settlement.  Settlement prevents the parties from having to bring in experts to opine

and show the picture to a jury.  Streett should not raise this issue on a motion to withdraw, where

the Court does not have the required expertise or others on whom to rely. Raising this issue in a

motion to withdraw asks the Court to engage in the factfinding that settlement is designed to avoid.

If Streett wanted to contest this picture's contents over the last seven years, he had ample

opportunity to do so, and he has not been shy about contesting many issues.  Streett should at least

have raised the issue at his plea hearing, rather than in this Motion to withdraw.

Streett argues that it cannot be the case that, by taking a plea agreement and plea colloquy,

a defendant is "accepting the charges within the charging document," which "satisfies the Rule 11

requirement for a factual basis," because, if that were correct, "the requirement for a factual basis

to find that a defendant actually committed an offense would be superfluous."  Tr. at 26:23-27:4

(Linnenburger).  Streett is correct to observe that accepting wholesale the facts alleged in a

charging document could render the rule 11 inquiry at times redundant.  But, pleading guilty to all

the facts alleged in a charging document is sufficient to satisfy rule 11.  Even if, however, pleading

guilty wholesale to a charging document's facts is not necessarily sufficient to satisfy rule 11, it

does not follow that such a plea does not help to satisfy the rule 11 standard.  Admissions to a

charging document's facts are part of the record, and the record must provide a sufficient factual

basis.  See United States v. Moran, 452 F.3d at 1172.  Here, however, there is a sufficient factual

basis to support the Plea Agreement's Count 11.  Streett's admissions to the Indictment's

allegations make up part of that basis, but numerous additional admissions and facts elsewhere in

the record, at the plea colloquy, in the PSR, and from the image given to the Court at the hearing, bolster Streett's admissions.  In sum, there is a sufficient factual basis in the Plea Agreement, at the plea colloquy, and in the record as it existed when Streett pled, to support Streett's Plea Agreement under rule 11(d)(2)(B).  See United States v. Landeros-Lopez, 615 F.3d 1264 (stating that rule 11 requires that "a judge's initial determination . . . be based on information in the record at the time the plea is made").  Because Streett does not demonstrate a fair-and-just reason to withdraw from his Plea Agreement, the Court will not permit Streett to withdraw his guilty plea.

## II.   THE COURT WILL NOT REJECT THE PLEA AGREEMENT UNDER RULE 11(c)(5).

Second, the Court will not reject Streett's Plea Agreement under rule 11(c)(5).  If a court has accepted a guilty plea, a defendant still may withdraw from their guilty plea if the court rejects the plea agreement under rule 11(c)(5).  See Fed. R. Crim. P. 11(d)(2)(A).  Rule 11 "vests district courts with the discretion to accept or reject plea agreements," but rule 11 "does not define the criteria to be applied in doing so."  United States v. Robertson, 45 F.3d 1423, 1437 (10th Cir. 1995).  A district court may reject a plea agreement provided that it exercises sound judicial discretion in doing so.  See United States v. Robertson, 45 F.3d at 1437; Santobello v. New York, 404 U.S. 257, 262 (1971).  The Court sees no sound reason to reject Streett's Plea Agreement, so the Court will not reject it under rule 11(c)(5).

Streett argues that the Court "would be justified in using its discretion to reject" the Plea Agreement, because there "was a crucial error in the plea proceedings in that one of the necessary counts is not supported by an independent factual basis."  Motion at 10-11.  As explained above, however, while the omission of the word "prepubescent" in places in the plea proceedings and in the Plea Agreement's specific recitation of Count 11's relevant facts appears to have been an

oversight, there is sufficient independent factual basis to support the Plea Agreement's Count 11.

See Analysis § I(B) supra.  Streett's Plea Agreement is a good one, and it reduces his exposure.  It

would be a train wreck for him if this case went to trial.  Accordingly, the Court sees no sound

reason to reject the Plea Agreement under rule 11(c)(5).

    **IT IS ORDERED** that Defendant Bentley Streett's First Motion to Withdraw Plea, and/or,

in the Alternative, For Rejection of Plea Agreement, filed January 22, 2021 (Doc. 239), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Fred J. Federici
  Acting United States Attorney
Sarah Jane Mease
Alexander Mamoru Max Uballez
  Assistant United States Attorneys
United State Attorney's Office
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Paul M. Linnenburger
Lane, Linnenburger, and Lane, LLP
Albuquerque, New Mexico

    *Attorneys for the Defendant*